No. 25-50130

# In the United States Court of Appeals for the Fifth Circuit

THE LUTHERAN CHURCH—MISSOURI SYNOD, A MISSOURI NONPROFIT CORPORATION,

*Plaintiff-Appellant,*

v.

DONALD CHRISTIAN; CHRISTOPHER BANNWOLF; JOHN DOES 1-12; CONCORDIA UNIVERSITY TEXAS INCORPORATED,

*Defendants-Appellees.*

---

On Appeal from the United States District Court
for the Western District of Texas (Austin)
No. 1:23-cv-01042, Hon. David A. Ezra

---

## APPELLANT'S RECORD EXCERPTS

---

STEVEN C. LEVATINO
LEVATINO ┃ PACE, L.L.P.
1101 S. Capital of Texas Hwy.
Bldg. K, Suite 125
Austin, TX 78746

ANDREW F. MACRAE
MACRAE LAW FIRM, P.L.L.C.
3267 Bee Cave Road
Suite 107, PMB 276
Austin, TX 78746

DANIEL H. BLOMBERG
ANDREA R. BUTLER
ROBERT K ELLIS
THE BECKET FUND FOR
    RELIGIOUS LIBERTY
1919 Pennsylvania Ave. NW
    Suite 400
Washington, D.C. 20006

WALLACE B. JEFFERSON
KEVIN H. DUBOSE
ALEXANDER DUBOSE &
    JEFFERSON, L.L.P.
1844 Harvard Street
Houston, TX 77008

*Counsel for Plaintiff-Appellant*

# TABLE OF CONTENTS

Docket Sheet
  (ROA.1-14) ...................................................................................Tab 1

Constitution of the Lutheran Church—Missouri Synod
(ECF 11-1)
  (ROA.1270-1279) ..........................................................................Tab 2

Excerpts from Bylaws of the Lutheran Church—Missouri
Synod (ECF 11-2)
  (ROA.1280-1461) ..........................................................................Tab 3

Articles of Incorporation of the Lutheran Church—Missouri
Synod (ECF 11-3)
  (ROA.1462-1464) ..........................................................................Tab 4

Resolution of the Lutheran Church—Missouri Synod
in Convention to Call Concordia University Texas
Leadership to Repentance (ECF 11-17)
  (ROA.1614-1616) ..........................................................................Tab 5

Excerpts from Lutheran Church—Missouri Synod
Board of Directors Policy Manual (ECF 13-5)
  (ROA.2023-2144) ..........................................................................Tab 6

First Declaration of Rev. Dr. John W. Sias (ECF 23-1)
  (ROA.2227-2230) ..........................................................................Tab 7

Second Declaration of Rev. Dr. John W. Sias,
attachments omitted (ECF 58)
  (ROA.3223-3226) ..........................................................................Tab 8

Report and Recommendation of the
United States Magistrate Judge (ECF 52)
  (ROA.3081-3099) ..........................................................................Tab 9

Order Adopting Report and Recommendation (ECF 61)
  (ROA.3299-3321) ........................................................................Tab 10

Notice of Appeal (ECF 63)

(ROA.3322-3323) ...........................................................Tab 11

Certificate of Service

# Tab 1

APPEAL,DH

# U.S. District Court [LIVE]
## Western District of Texas (Austin)
## CIVIL DOCKET FOR CASE #: 1:23-cv-01042-DAE

The Lutheran Church - Missouri Synod v. Christian et al
Assigned to: Judge David A. Ezra
Related Case:  1:24-cv-00176-DAE
Case in other court:  USCA 5th Circuit, 25-50130
Cause: 28:1332 Diversity-Breach of Contract

Date Filed: 09/01/2023
Date Terminated: 02/03/2025
Jury Demand: Plaintiff
Nature of Suit: 190 Contract: Other
Jurisdiction: Diversity

**Plaintiff**

**The Lutheran Church - Missouri Synod**
*a Missouri nonprofit corporation*

represented by **Gregg R. Kronenberger**
Kronenberger Law Firm, PLLC
11701 FM 2244 RD
Suite 215-B
Austin, TX 78738
(512) 777-4141
Fax: 512-402-3313
Email: gregg@gkronenberger.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Steven C. Levatino**
Levatinopace LLP
1101 S Capital of Texas Hwy
Building K, Suite 125
Austin, TX 78746
512-637-1581
Fax: 512-637-1583
Email: steven@lpfirm.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kevin H. Dubose**
Alexander Dubose Jefferson & Townsend
LLP
1844 Harvard St.
Houston, TX 77008
713-523-0667
Email: kdubose@adjtlaw.com
*ATTORNEY TO BE NOTICED*

**Andrew F. MacRae**
MacRae Law Firm PLLC
3267 Bee Cave Road
Suite 107, PMB 276
Austin, TX 78746
512-565-7798
Email: andrew@macraelaw.co

*ATTORNEY TO BE NOTICED*

V.

**Defendant**

| | | |
|---|---|---|
| **Donald Christian** | represented by | **Albert A. Carrion , Jr.**<br>Richards Rodriguez & Skeith LLP<br>611 West 15th Street<br>Austin, TX 78701<br>512-476-0005<br>Email: acarrion@rrsfirm.com<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |
| | | **Clark Willis Richards**<br>Richards Rodriguez & Skeith LLP<br>816 Congress Avenue, Suite 1200<br>Austin, TX 78701<br>(512)476-0005<br>Fax: (512)476-1513<br>Email: crichards@rrsfirm.com<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |
| | | **Daniel R. Richards**<br>Richards Rodriguez & Skeith LLP<br>816 Congress Avenue, Suite 1200<br>Austin, TX 78701<br>(512) 476-0005<br>Fax: 512/476-1513<br>Email: drichards@rrsfirm.com<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

**Defendant**

| | | |
|---|---|---|
| **Christopher Bannwolf** | represented by | **Albert A. Carrion , Jr.**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |
| | | **Clark Willis Richards**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |
| | | **Daniel R. Richards**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

**Defendant**

**John Does 1-12**

**Defendant**

**Concordia University Texas, Inc.**           represented by   **Albert A. Carrion , Jr.**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Clark Willis Richards**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Daniel R. Richards**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 09/01/2023 | 1 (p.15) | COMPLAINT ( Filing fee $ 402 receipt number ATXWDC-17838757), filed by The Lutheran Church - Missouri Synod. (Attachments: # 1 (p.15) Appendix, # 2 (p.400) Civil Cover Sheet)(MacRae, Andrew) (Entered: 09/01/2023) |
| 09/01/2023 | 2 (p.400) | REQUEST FOR ISSUANCE OF SUMMONS by The Lutheran Church - Missouri Synod. *as to all Defendants* (MacRae, Andrew) (Entered: 09/01/2023) |
| 09/06/2023 | | Case assigned to Judge Robert Pitman. CM WILL NOW REFLECT THE JUDGE INITIALS AS PART OF THE CASE NUMBER. PLEASE APPEND THESE JUDGE INITIALS TO THE CASE NUMBER ON EACH DOCUMENT THAT YOU FILE IN THIS CASE. (dm) (Entered: 09/06/2023) |
| 09/06/2023 | | If ordered by the court, all referrals and consents in this case will be assigned to Magistrate Judge Howell. (dm) (Entered: 09/06/2023) |
| 09/06/2023 | 3 (p.406) | Summons Issued as to Christopher Bannwolf, Donald Christian, Concordia University Texas, Inc.. (dm) (Entered: 09/06/2023) |
| 09/18/2023 | 4 (p.412) | WAIVER OF SERVICE Returned Executed by The Lutheran Church - Missouri Synod as to Donald Christian. Waiver sent on 9/6/2023, answer due 11/6/2023. (Levatino, Steven) (Entered: 09/18/2023) |
| 09/18/2023 | 5 (p.413) | WAIVER OF SERVICE Returned Executed by The Lutheran Church - Missouri Synod as to Christopher Bannwolf. Waiver sent on 9/6/2023, answer due 11/6/2023. (Levatino, Steven) (Entered: 09/18/2023) |
| 09/18/2023 | 6 (p.414) | WAIVER OF SERVICE Returned Executed by The Lutheran Church - Missouri Synod as to Concordia University Texas, Inc.. |

| | | |
|---|---|---|
| | | Waiver sent on 9/6/2023, answer due 11/6/2023. (Levatino, Steven) (Entered: 09/18/2023) |
| 11/01/2023 | 7 (p.415) | Agreed MOTION for Extension of Time to File Response/Reply as to 1 (p.15) Complaint by Christopher Bannwolf, Donald Christian, Concordia University Texas, Inc.. (Attachments: # 1 (p.15) Proposed Order)(Richards, Daniel) Modified on 11/1/2023 to change filing event to Motion for Extension of Time to File Answer (jv2). (Entered: 11/01/2023) |
| 11/02/2023 | | Text Order GRANTING 7 (p.415) Agreed Motion for Extension of Time to Answer entered by Judge Robert Pitman. IT IS ORDERED that Defendants shall answer or otherwise respond to Plaintiff's complaint on or before January 22, 2024. (This is a text-only entry generated by the court. There is no document associated with this entry.) (jmlc) (Entered: 11/02/2023) |
| 11/02/2023 | | Set/Reset Deadlines: Christopher Bannwolf answer due 1/22/2024; Donald Christian answer due 1/22/2024; Concordia University Texas, Inc. answer due 1/22/2024. (jv2) (Entered: 11/02/2023) |
| 01/22/2024 | 8 (p.420) | Unopposed MOTION for Leave to Exceed Page Limitation by Christopher Bannwolf, Donald Christian, Concordia University Texas, Inc.. (Attachments: # 1 (p.15) Defendants' Motion to Dismiss, # 2 (p.400) Exhibit 1, # 3 (p.406) Exhibit 2, # 4 (p.412) Exhibit 3, # 5 (p.413) Exhibit 4, # 6 (p.414) Exhibit 5, # 7 (p.415) Exhibit 6, # 8 (p.420) Exhibit 7, # 9 (p.826) Exhibit 8, # 10 (p.1228) Exhibit 9, # 11 (p.1233) Exhibit 10, # 12 (p.1796) Proposed Order)(Richards, Daniel) (Entered: 01/22/2024) |
| 01/23/2024 | | Text Order GRANTING 8 (p.420) Unopposed Motion for Leave to File Excess Pages entered by Judge Robert Pitman. For good cause shown, IT IS ORDERED that the Clerk of Court shall file Defendants' Motion to Dismiss, (Dkt. 8-1), and its attached exhibits. (This is a text-only entry generated by the court. There is no document associated with this entry.) (jmlc) (Entered: 01/23/2024) |
| 01/23/2024 | 9 (p.826) | MOTION to Dismiss for Lack of Subject Matter Jurisdiction and Failure to Join Indispensable Parties by Christopher Bannwolf, Donald Christian, Concordia University Texas, Inc. (Attachments: # 1 (p.15) Exhibits 1-10)(jv2) (Entered: 01/24/2024) |
| 01/30/2024 | 10 (p.1228) | Agreed MOTION for Extension of Time to File Response/Reply as to 9 (p.826) MOTION to Dismiss *for Lack of Subject Matter Jurisdiction and Failure to Join Indispensable PArties* by The Lutheran Church - Missouri Synod. (Attachments: # 1 (p.15) Proposed Order)(Levatino, Steven) (Entered: 01/30/2024) |
| 01/31/2024 | | Text Order GRANTING 10 (p.1228) Agreed Motion for Extension of Time to File entered by Judge Robert Pitman. IT IS ORDERED that Plaintiff shall respond to Defendants' Motion and/or file an amended complaint on or before February 29, |

| | | |
|---|---|---|
| | | 2024. (This is a text-only entry generated by the court. There is no document associated with this entry.) (jmlc) (Entered: 01/31/2024) |
| 02/29/2024 | 11 (p.1233) | AMENDED COMPLAINT against All Defendants amending 1 (p.15) Complaint., filed by The Lutheran Church - Missouri Synod. (Attachments: # 1 (p.15) Exhibit, # 2 (p.400) Exhibit, # 3 (p.406) Exhibit, # 4 (p.412) Exhibit, # 5 (p.413) Exhibit, # 6 (p.414) Exhibit, # 7 (p.415) Exhibit, # 8 (p.420) Exhibit, # 9 (p.826) Exhibit, # 10 (p.1228) Exhibit, # 11 (p.1233) Exhibit, # 12 (p.1796) Exhibit, # 13 (p.1800) Exhibit, # 14 (p.2177) Exhibit, # 15 (p.2182) Exhibit, # 16 (p.2183) Exhibit, # 17 (p.2187) Exhibit, # 18 (p.2191) Exhibit)(MacRae, Andrew) (Entered: 02/29/2024) |
| 03/04/2024 | | Text Order MOOTING 9 (p.826) Motion to Dismiss entered by Judge Robert Pitman. In light of Plaintiff's Amended Complaint, (Dkt. 11), this motion is MOOT. (This is a text-only entry generated by the court. There is no document associated with this entry.) (jmlc) (Entered: 03/04/2024) |
| 03/18/2024 | 12 (p.1796) | Unopposed MOTION for Extension of Time to File Response/Reply as to 11 (p.1233) Amended Complaint, by Christopher Bannwolf, Donald Christian, Concordia University Texas, Inc.. (Attachments: # 1 (p.15) Proposed Order)(Richards, Daniel) (Entered: 03/18/2024) |
| 03/19/2024 | | Text Order GRANTING 12 (p.1796) Unopposed Motion for Extension of Time to File entered by Judge Robert Pitman. IT IS ORDERED that Defendants shall answer or otherwise respond to Plaintiff's Amended Complaint on or before April 4, 2024. (This is a text-only entry generated by the court. There is no document associated with this entry.) (jmlc) (Entered: 03/19/2024) |
| 03/19/2024 | | Reset Deadlines: Christopher Bannwolf answer due 4/4/2024; Donald Christian answer due 4/4/2024; Concordia University Texas, Inc. answer due 4/4/2024. (pg) (Entered: 03/19/2024) |
| 04/03/2024 | 13 (p.1800) | MOTION to Dismiss for Lack of Jurisdiction *and Failure to Join Indispensable Parties* by Christopher Bannwolf, Donald Christian, Concordia University Texas, Inc.. (Attachments: # 1 (p.15) Exhibit 1, # 2 (p.400) Exhibit 2, # 3 (p.406) Exhibit 3, # 4 (p.412) Exhibit 4, # 5 (p.413) Exhibit 5, # 6 (p.414) Exhibit 6, # 7 (p.415) Exhibit 7, # 8 (p.420) Proposed Order)(Richards, Daniel) (Entered: 04/03/2024) |
| 04/03/2024 | 14 (p.2177) | Unopposed MOTION to Consolidate Cases by Christopher Bannwolf, Donald Christian, Concordia University Texas, Inc.. (Attachments: # 1 (p.15) Proposed Order)(Richards, Daniel) (Entered: 04/03/2024) |
| 04/09/2024 | 15 (p.2182) | Order for Scheduling Recommendations/Proposed Scheduling Order. Scheduling recommendations/proposed scheduling order due to the Court within sixty (60) days after the appearance of any defendant. Joint Proposed Scheduling Order due by |

| | | |
|---|---|---|
| | | 4/23/2024. Signed by Judge Dustin M. Howell. (pg) (Entered: 04/09/2024) |
| 04/10/2024 | 16 (p.2183) | Unopposed MOTION for Extension of Time to File Response/Reply as to 13 (p.1800) MOTION to Dismiss for Lack of Jurisdiction *and Failure to Join Indispensable Parties* by The Lutheran Church - Missouri Synod. (Attachments: # 1 (p.15) Proposed Order)(MacRae, Andrew) (Entered: 04/10/2024) |
| 04/11/2024 | | Text Order GRANTING 16 (p.2183) Unopposed Motion for Extension of Time to File Response entered by Judge Robert Pitman. IT IS ORDERED that Plaintiff shall file a response to Defendants' Motion to Dismiss or an amended complaint on or before May 10, 2024. (This is a text-only entry generated by the court. There is no document associated with this entry.) (jmlc) (Entered: 04/11/2024) |
| 04/17/2024 | 17 (p.2187) | Proposed Scheduling Order *AGREED* by Christopher Bannwolf, Donald Christian, Concordia University Texas, Inc.. (Richards, Daniel) (Entered: 04/17/2024) |
| 04/17/2024 | 18 (p.2191) | ORDER GRANTING 14 (p.2177) Motion to Consolidate. Signed by Judge Robert Pitman. (pg) (Entered: 04/17/2024) |
| 04/29/2024 | 19 (p.2192) | ORDER Setting Initial Pretrial Conference for 5/6/2024 03:30 PM before Judge Dustin M. Howell. Signed by Judge Dustin M. Howell. (bot1) (Entered: 04/29/2024) |
| 05/06/2024 | 20 | Minute Entry for proceedings held before Judge Dustin M. Howell: Initial Pretrial Conference held by Telephone on 5/6/2024. Written Order Forthcoming. (Minute entry documents are not available electronically.). (Court Reporter AT&T Conf Line.)(pg) (Entered: 05/07/2024) |
| 05/06/2024 | 21 (p.2194) | AGREED SCHEDULING ORDER: Consent to Trial by Magistrate due by 8/26/2024, Jury Trial set for 9/8/2025 09:30 AM before Judge Robert Pitman, ADR Report Deadline due by 8/26/2024, Amended Pleadings due or Joinder of Parties by 9/27/2024, Discovery due by 4/1/2025, Dispositive Motions due by 5/1/2025. Signed by Judge Robert Pitman. (pg) (Entered: 05/07/2024) |
| 05/10/2024 | 22 (p.2198) | NOTICE *of Vacation* by Christopher Bannwolf, Donald Christian, Concordia University Texas, Inc. (Richards, Daniel) (Entered: 05/10/2024) |
| 05/10/2024 | 23 (p.2199) | Response in Opposition to Motion, filed by The Lutheran Church - Missouri Synod, re 13 (p.1800) MOTION to Dismiss for Lack of Jurisdiction *and Failure to Join Indispensable Parties* filed by Defendant Christopher Bannwolf, Defendant Concordia University Texas, Inc., Defendant Donald Christian (Attachments: # 1 (p.15) Exhibit 1- Unworn Declaration of Rev. Sias, # 2 (p.400) Exhibit 2- Constitution, # 3 (p.406) Proposed Order Denying Moton to Dismss)(Levatino, Steven) (Entered: 05/10/2024) |

| | | |
|---|---|---|
| 05/14/2024 | 24 (p.2242) | Unopposed MOTION for Extension of Time to File Response/Reply as to 13 (p.1800) MOTION to Dismiss for Lack of Jurisdiction *and Failure to Join Indispensable Parties*, 23 (p.2199) Response in Opposition to Motion, by Christopher Bannwolf, Donald Christian, Concordia University Texas, Inc.. (Attachments: # 1 (p.15) Proposed Order)(Richards, Daniel) (Entered: 05/14/2024) |
| 05/15/2024 | | Text Order GRANTING 24 (p.2242) Unopposed Motion for Extension of Time to File Reply entered by Judge Robert Pitman. IT IS ORDERED that Defendants shall file their reply on or before May 24, 2024. (This is a text-only entry generated by the court. There is no document associated with this entry.) (jmlc) (Entered: 05/15/2024) |
| 05/23/2024 | 25 (p.2246) | Unopposed MOTION for Leave to Exceed Page Limitation by Christopher Bannwolf, Donald Christian, Concordia University Texas, Inc.. (Attachments: # 1 (p.15) Brief Reply iso Motions to Dismiss and Remand, # 2 (p.400) Proposed Order)(Richards, Daniel) (Entered: 05/23/2024) |
| 05/24/2024 | | Text Order GRANTING 25 (p.2246) Unopposed Motion for Leave to File Excess Pages entered by Judge Robert Pitman. In light of the lack of opposition and for good cause shown, IT IS ORDERED that Defendants' reply may be up to 15 pages. IT IS FURTHER ORDERED that the Clerk of Court shall file Defendants' reply, (Dkt. 25-1). (This is a text-only entry generated by the court. There is no document associated with this entry.) (jmlc) (Entered: 05/24/2024) |
| 05/24/2024 | 26 (p.2267) | DEFENDANTS REPLY IN SUPPORT OF 13 (p.1800) MOTION to Dismiss for Lack of Jurisdiction and Failure to Join Indispensable Parties filed by Defendant Christopher Bannwolf, Defendant Concordia University Texas, Inc., Defendant Donald Christian (pg) (Entered: 05/24/2024) |
| 05/31/2024 | 27 (p.2284) | Rule 26(f) Discovery Report/Case Management Plan by The Lutheran Church - Missouri Synod. (MacRae, Andrew) (Entered: 05/31/2024) |
| 05/31/2024 | 28 (p.2289) | Opposed MOTION for Leave to File Sur-Reply to Motion to Dismiss by The Lutheran Church - Missouri Synod. (MacRae, Andrew) (Entered: 05/31/2024) |
| 06/04/2024 | 29 (p.2300) | Response in Opposition to Motion, filed by Christopher Bannwolf, Donald Christian, Concordia University Texas, Inc., re 28 (p.2289) Opposed MOTION for Leave to File Sur-Reply to Motion to Dismiss filed by Plaintiff The Lutheran Church - Missouri Synod (Attachments: # 1 (p.15) Exhibit A)(Richards, Daniel) (Entered: 06/04/2024) |
| 06/12/2024 | | Text Order REFERRING 13 (p.1800) Motion to Dismiss entered by Judge Robert Pitman. IT IS ORDERED that Defendants' Motion to Dismiss is REFERRED to United States Magistrate Judge Dustin Howell for a report and recommendation pursuant |

| | | |
|---|---|---|
| | | to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72, and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas. (This is a text-only entry generated by the court. There is no document associated with this entry.) (jmlc) (Entered: 06/12/2024) |
| 06/12/2024 | | Text Order REFERRING 28 (p.2289) Motion for Leave to File entered by Judge Robert Pitman. IT IS ORDERED that Plaintiff's Motion for Leave, (Dkt. 28), is REFERRED to United States Magistrate Judge Dustin Howell for disposition pursuant to 28 U.S.C. § 636(b)(1)(A), Federal Rule of Civil Procedure 72, and Rule 1(c) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas. (This is a text-only entry generated by the court. There is no document associated with this entry.) (jmlc) (Entered: 06/12/2024) |
| 06/12/2024 | | MOTION REFERRED: referred 13 (p.1800) MOTION to Dismiss for Lack of Jurisdiction and Failure to Join Indispensable Parties, 28 (p.2289) Opposed MOTION for Leave to File Sur-Reply to Motion to Dismiss. Referral Judge: Dustin M. Howell. (pg) (Entered: 06/13/2024) |
| 06/14/2024 | | Text Order GRANTING 28 (p.2289) Motion for Leave to File entered by Judge Dustin M. Howell. (This is a text-only entry generated by the court. There is no document associated with this entry.) (DH) (Entered: 06/14/2024) |
| 06/14/2024 | 30 (p.2307) | Sur-reply to Motion, filed by The Lutheran Church - Missouri Synod, re 13 (p.1800) MOTION to Dismiss for Lack of Jurisdiction and 26 (p.2267) Defendants' Reply in Support of Motion to Dismiss and Remand. (pg) (Entered: 06/17/2024) |
| 08/09/2024 | 31 (p.2314) | ORDER REASSIGNING CASE. Case reassigned to Judge David A. Ezra for all proceedings. Judge Robert Pitman no longer assigned to case. Signed by Judge Robert Pitman. (pg) (Entered: 08/09/2024) |
| 08/13/2024 | 32 (p.2315) | Joint MOTION for Entry of Confidentiality and Protective Order by The Lutheran Church - Missouri Synod. (Attachments: # 1 (p.15) Proposed Order)(MacRae, Andrew) (Entered: 08/13/2024) |
| 08/14/2024 | 33 (p.2326) | CONFIDENTIALITY AND PROTECTIVE ORDER. Signed by Judge David A. Ezra. (pg) (Entered: 08/14/2024) |
| 08/23/2024 | 34 (p.2334) | NON-CONSENT to Trial by US Magistrate Judge by Christopher Bannwolf, Donald Christian, Concordia University Texas, Inc.. (Richards, Daniel) (Entered: 08/23/2024) |
| 08/23/2024 | 35 (p.2336) | ADR Report Filed - *JOINT ADR REPORT*; **Case not Settled** by Christopher Bannwolf, Donald Christian, Concordia University Texas, Inc.(Richards, Daniel) Modified on 8/23/2024 to add text (cnr). (Entered: 08/23/2024) |
| 08/23/2024 | 36 (p.2339) | NON-CONSENT to Trial by US Magistrate Judge by The Lutheran Church - Missouri Synod. (MacRae, Andrew) (Entered: 08/23/2024) |

| | | |
|---|---|---|
| 09/12/2024 | 37 (p.2340) | Unopposed MOTION for Leave to Exceed Page Limitation by Concordia University Texas, Inc.. (Attachments: # 1 (p.15) Motion for Protective Order, # 2 (p.400) Exhibit 1, # 3 (p.406) Exhibit 2, # 4 (p.412) Exhibit 3, # 5 (p.413) Exhibit 4, # 6 (p.414) Exhibit 5, # 7 (p.415) Exhibit 6, # 8 (p.420) Exhibit 7, # 9 (p.826) Exhibit 8, # 10 (p.1228) Exhibit 9, # 11 (p.1233) Exhibit 10, # 12 (p.1796) Proposed Order Proposed Protective Order, # 13 (p.1800) Proposed Order Proposed Order on Motion for Leave)(Richards, Daniel) (Entered: 09/12/2024) |
| 09/13/2024 | | Text Order REFERRING 37 (p.2340) Motion for Leave to File Excess Pages to U.S. Magistrate Judge Dustin Howell. Entered by Judge David A. Ezra. (This is a text-only entry generated by the court. There is no document associated with this entry.) (KClc) (Entered: 09/13/2024) |
| 09/13/2024 | | MOTION REFERRED: referred 37 (p.2340) Unopposed MOTION for Leave to Exceed Page Limitation . Referral Judge: Dustin M. Howell. (cnr) (Entered: 09/13/2024) |
| 09/15/2024 | 38 (p.2502) | MOTION for Confidentiality/Protective Order , MOTION to Quash by Alan Taylor, Nathaniel Hill, Thomas Zachman. (Attachments: # 1 (p.15) Exhibit, # 2 (p.400) Exhibit, # 3 (p.406) Exhibit, # 4 (p.412) Exhibit, # 5 (p.413) Exhibit, # 6 (p.414) Proposed Order)(Perez, Monica) (Entered: 09/15/2024) |
| 09/16/2024 | | Text Order GRANTING 37 (p.2340) Unopposed Motion for Leave to File Excess Pages entered by Judge Dustin M. Howell. Defendant's Motion for Protective Order shall not exceed 22 pages. (This is a text-only entry generated by the court. There is no document associated with this entry.) (nblc) (Entered: 09/16/2024) |
| 09/16/2024 | 39 (p.2549) | MOTION for a Protective Order by Christopher Bannwolf, Donald Christian, Concordia University Texas, Inc.. (Richards, Daniel R.) (Attachments: # 1 (p.15) Exhibit 1, # 2 (p.400) Exhibit 2, # 3 (p.406) Exhibit 3, # 4 (p.412) Exhibit 4, # 5 (p.413) Exhibit 5, # 6 (p.414) Exhibit 6, # 7 (p.415) Exhibit 7, # 8 (p.420) Exhibit 8, # 9 (p.826) Exhibit 9, # 10 (p.1228) Exhibit 10, # 11 (p.1233) Proposed Protective Order)(cnr) (Entered: 09/17/2024) |
| 09/18/2024 | | Text Order REFERRING 38 (p.2502) Motion for Protective Order; REFERRING 38 (p.2502) Motion to Quash to United States Magistrate Judge Dustin M. Howell. Entered by Judge David A. Ezra. (This is a text-only entry generated by the court. There is no document associated with this entry.) (KClc) (Entered: 09/18/2024) |
| 09/18/2024 | | Text Order REFERRING 39 (p.2549) Motion for Protective Order to United States Magistrate Judge Dustin M. Howell. Entered by Judge David A. Ezra. (This is a text-only entry generated by the court. There is no document associated with this entry.) (KClc) (Entered: 09/18/2024) |

| 09/18/2024 | | MOTION REFERRED: referred 38 (p.2502) MOTION for Confidentiality/Protective Order MOTION to Quash . Referral Judge: Dustin M. Howell. (cnr) (Entered: 09/18/2024) |
|---|---|---|
| 09/18/2024 | | MOTION REFERRED: referred 39 (p.2549) MOTION for Confidentiality/Protective Order. Referral Judge: Dustin M. Howell. (cnr) (Entered: 09/18/2024) |
| 09/19/2024 | 40 (p.2707) | Unopposed MOTION for Extension of Time to File Response/Reply as to 38 (p.2502) MOTION for Confidentiality/Protective Order MOTION to Quash , 39 (p.2549) MOTION for Confidentiality/Protective Order by The Lutheran Church - Missouri Synod. (Attachments: # 1 (p.15) Proposed Order)(MacRae, Andrew) (Entered: 09/19/2024) |
| 09/19/2024 | | Text Order REFERRING 40 (p.2707) Motion for Extension of Time to File Response/Reply re 40 (p.2707) Unopposed MOTION for Extension of Time to File Response/Reply as to 38 (p.2502) MOTION for Confidentiality/Protective Order MOTION to Quash , 39 (p.2549) MOTION for Confidentiality/Protective Order to United States Magistrate Judge Dustin M. Howell. Entered by Judge David A. Ezra. (This is a text-only entry generated by the court. There is no document associated with this entry.) (KClc) (Entered: 09/19/2024) |
| 09/19/2024 | | MOTION REFERRED: referred 40 (p.2707) Unopposed MOTION for Extension of Time to File Response/Reply as to 38 (p.2502) MOTION for Confidentiality/Protective Order MOTION to Quash , 39 (p.2549) MOTION for Confidentiality/Protective Order . Referral Judge: Dustin M. Howell. (cnr) (Entered: 09/19/2024) |
| 09/19/2024 | | Text Order GRANTING 40 (p.2707) Plaintiff's Unopposed Motion for Extension of Time re 38 (p.2502) and 39 (p.2549) . Plaintiff shall respond to the Motion to Quash and Motion for Protective Order, Dkt. 38, and the Motion for Protective Order, Dkt. 39, on or before October 11, 2024. Entered by Judge Dustin M. Howell. (This is a text-only entry generated by the court. There is no document associated with this entry.) (nblc) (Entered: 09/19/2024) |
| 09/25/2024 | | Text Order MOOTING 38 (p.2502) Motion for Protective Order; MOOTING 38 (p.2502) Motion to Quash entered by Judge Dustin M. Howell. In light of Plaintiff's Unopposed Motion for Extension of Time to File Response/Reply, Dkt. 40, these motions are MOOT. (This is a text-only entry generated by the court. There is no document associated with this entry.) (nblc) (Entered: 09/25/2024) |
| 09/26/2024 | 41 (p.2711) | ADVISORY TO THE COURT by The Lutheran Church - Missouri Synod *Notice of New Agreed Pleading Deadline of December 2, 2024.* (Levatino, Steven) (Entered: 09/26/2024) |
| 10/11/2024 | 42 (p.2714) | Response in Opposition to Motion, filed by The Lutheran Church - Missouri Synod, re 39 (p.2549) MOTION for |

| | | |
|---|---|---|
| | | Confidentiality/Protective Order filed by Defendant Christopher Bannwolf, Defendant Concordia University Texas, Inc., Defendant Donald Christian (Attachments: # 1 (p.15) Exhibit, # 2 (p.400) Exhibit, # 3 (p.406) Exhibit, # 4 (p.412) Exhibit, # 5 (p.413) Exhibit, # 6 (p.414) Exhibit)(MacRae, Andrew) (Entered: 10/11/2024) |
| 10/16/2024 | 43 (p.2784) | REPLY to Response to Motion, filed by Christopher Bannwolf, Donald Christian, Concordia University Texas, Inc., re 39 (p.2549) MOTION for Confidentiality/Protective Order filed by Defendant Christopher Bannwolf, Defendant Concordia University Texas, Inc., Defendant Donald Christian (Attachments: # 1 (p.15) Exhibit 1, # 2 (p.400) Exhibit 2)(Richards, Daniel) (Entered: 10/16/2024) |
| 10/22/2024 | 44 (p.2795) | MOTION to Compel by The Lutheran Church - Missouri Synod. (Attachments: # 1 (p.15) Exhibit CTX Response to 1st Interrogatories, # 2 (p.400) Exhibit CTX Response to Requests for Production, # 3 (p.406) Exhibit Letter from Steven Levatino to Dan Richards, # 4 (p.412) Exhibit CTX Amended Response to 1st Interogatories, # 5 (p.413) Exhibit CTX Amended Response to Requests for Production, # 6 (p.414) Exhibit Letter from Dan Richards to Steven Levatino, # 7 (p.415) Exhibit Email from Don Christian to Past CTX Board of Directors, # 8 (p.420) Exhibit Declaration of Don Christian)(Levatino, Steven) (Entered: 10/22/2024) |
| 10/23/2024 | | Text Order REFERRING 44 (p.2795) Motion to Compel to U.S. Magistrate Judge Dustin M. Howell. Entered by Judge David A. Ezra. (This is a text-only entry generated by the court. There is no document associated with this entry.) (KClc) (Entered: 10/23/2024) |
| 10/23/2024 | | DEFICIENCY NOTICE to Steven Levatino: re 44 (p.2795) MOTION to Compel . **A Proposed Order is required when a non-dispositive Motion is filed. DO NOT RE-FILE the entire document. Please file ONLY the Proposed Order. Use the "PROPOSED ORDER" event from the Other Documents/Other Filings menu/submenu and LINK the Proposed Order to your Motion**. (cnr) (Entered: 10/23/2024) |
| 10/23/2024 | | MOTION REFERRED: referred 44 (p.2795) MOTION to Compel . Referral Judge: Dustin M. Howell. (cnr) (Entered: 10/23/2024) |
| 10/23/2024 | 45 (p.2870) | Proposed Order to 44 (p.2795) MOTION to Compel by The Lutheran Church - Missouri Synod. (Levatino, Steven) (Entered: 10/23/2024) |
| 10/23/2024 | 46 (p.2877) | ORDER Setting Hearing on Defendants' 39 (p.2549) Motion for Protective Order and Plaintiff's 44 (p.2795) Motion to Compel filed in 1:23-cv-01042-DAE, and 23 Plaintiff's Motion for Confidentiality/Protective Order filed in 1:24-cv-00176-DAE. (Motions Hearing set for 11/14/2024 at 2:00 P.M. in Austin ( **In-Person**) before Judge Dustin M. Howell). Signed by Judge |

| | | Dustin M. Howell. (cnr) (Entered: 10/24/2024) |
|---|---|---|
| 10/29/2024 | 47 (p.2879) | Unopposed MOTION for Leave to Exceed Page Limitation by Christopher Bannwolf, Donald Christian, Concordia University Texas, Inc.. (Attachments: # 1 (p.15) Defendants' Response to Motion to Compel, # 2 (p.400) Exhibit 1, # 3 (p.406) Exhibit 2, # 4 (p.412) Exhibit 3, # 5 (p.413) Exhibit 4, # 6 (p.414) Exhibit 5, # 7 (p.415) Exhibit 6, # 8 (p.420) Proposed Order)(Richards, Daniel) (Entered: 10/29/2024) |
| 10/30/2024 | | Text Order REFERRING 47 (p.2879) Motion for Leave to File Excess Pages to U.S. Magistrate Judge Dustin M. Howell. Entered by Judge David A. Ezra. (This is a text-only entry generated by the court. There is no document associated with this entry.) (KClc) (Entered: 10/30/2024) |
| 10/30/2024 | | MOTION REFERRED: referred 47 (p.2879) Unopposed MOTION for Leave to Exceed Page Limitation . Referral Judge: Dustin M. Howell. (cnr) (Entered: 10/31/2024) |
| 11/01/2024 | | Text Order GRANTING 47 (p.2879) Unopposed Motion for Leave to File Excess Pages entered by Judge Dustin M. Howell. (This is a text-only entry generated by the court. There is no document associated with this entry.) (nblc) (Entered: 11/01/2024) |
| 11/01/2024 | 48 (p.2977) | Defendant Concordia University Texas' Response to Plaintiff's 44 (p.2795) Motion to Compel (Attachments: # 1 (p.15) Exhibit, # 2 (p.400) Exhibit, # 3 (p.406) Exhibit, # 4 (p.412) Exhibit, # 5 (p.413) Exhibit, # 6 (p.414) Exhibit). (cnr) (Entered: 11/01/2024) |
| 11/08/2024 | 49 (p.3071) | REPLY to Response to Motion, filed by The Lutheran Church - Missouri Synod, re 44 (p.2795) MOTION to Compel filed by Plaintiff The Lutheran Church - Missouri Synod (MacRae, Andrew) (Entered: 11/08/2024) |
| 11/12/2024 | 50 (p.3076) | ADVISORY TO THE COURT by Christopher Bannwolf, Donald Christian, Concordia University Texas, Inc. *on Pending Discovery Disputes*. (Richards, Daniel) (Entered: 11/12/2024) |
| 11/14/2024 | 51 | Minute Entry for proceedings held before Judge Dustin M. Howell: Motion ( 39 (p.2549) Motion for Protective Order, and 44 (p.2795) Motion to Compel) Hearing held on 11/14/2024 (Minute entry documents are not available electronically.). (Court Reporter: FTR GOLD - ERO.) Written Order Forthcoming. (cnr) Modified on 12/2/2024 to correct the motions heard (klw). (Main Document 51 replaced on 12/2/2024) (klw). (Entered: 11/15/2024) |
| 11/20/2024 | 52 (p.3081) | REPORT AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE: the undersigned **RECOMMENDS** that the District Judge **GRANT** Defendants' 13 (p.1800) Motion to Dismiss (2023 case) and **GRANT** CTX's 5 Motion to Remand (2024 case). The referral of these motions to the United States Magistrate Judge should now be canceled. The undersigned notes that should the District Judge accept these |

| | | |
|---|---|---|
| | | recommendations, the pending referred motions in this matter would be denied as **MOOT**. Signed by Judge Dustin M. Howell. (cnr) (Entered: 11/20/2024) |
| 11/20/2024 | | Motions No Longer Referred: 13 (p.1800) MOTION to Dismiss for Lack of Jurisdiction *and Failure to Join Indispensable Parties*. (cnr) (Entered: 11/20/2024) |
| 11/21/2024 | 53 (p.3100) | Unopposed MOTION for Extension of Time to File *Objection to Magistrate Judge Report and Recommendation* by The Lutheran Church - Missouri Synod. (Attachments: # 1 (p.15) Proposed Order)(MacRae, Andrew) (Entered: 11/21/2024) |
| 11/21/2024 | 54 (p.3105) | ADVISORY TO THE COURT by The Lutheran Church - Missouri Synod . (MacRae, Andrew) (Entered: 11/21/2024) |
| 11/22/2024 | 55 (p.3109) | ORDER GRANTING 53 (p.3100) Motion for Extension of Time to File. **IT IS THEREFORE ORDERED** that LCMS has until December 20, 2024 to file its objection to ask the district court to reconsider the Magistrate Judge's November 20, 2024 Report and Recommendation and the other parties have until January 13, 2025 to file a response. Signed by Judge David A. Ezra. (cnr) (Entered: 11/22/2024) |
| 12/20/2024 | 56 (p.3111) | NOTICE of Attorney Appearance by Kevin H. Dubose on behalf of The Lutheran Church - Missouri Synod. Attorney Kevin H. Dubose added to party The Lutheran Church - Missouri Synod(pty:pla) (Dubose, Kevin) (Entered: 12/20/2024) |
| 12/20/2024 | 57 (p.3114) | Unopposed MOTION for Leave to Exceed Page Limitation by The Lutheran Church - Missouri Synod. (Attachments: # 1 (p.15) Brief Objection to Magistrate's Report & Recommendation, # 2 (p.400) Proposed Order Order Granting Motion to Exceed Page Limit)(Levatino, Steven) (Entered: 12/20/2024) |
| 01/02/2025 | | Text Order GRANTING 57 (p.3114) Motion for Leave to File Excess Pages. Entered by Judge David A. Ezra. (This is a text-only entry generated by the court. There is no document associated with this entry.) (KClc) (Entered: 01/02/2025) |
| 01/02/2025 | 58 (p.3192) | Plaintiff's Objections to the 52 (p.3081) Magistrate's Report and Recommendation. (cnr) (Entered: 01/02/2025) |
| 01/08/2025 | 59 (p.3266) | RESPONSE to 58 (p.3192) Objection to Report and Recommendations by Concordia University Texas, Inc., Donald Christian, Christopher Bannwolf. (Richards, Daniel) (Entered: 01/08/2025) |
| 01/15/2025 | 60 (p.3288) | Memorandum in Support of 58 (p.3192) Objection to Report and Recommendations by The Lutheran Church - Missouri Synod. (MacRae, Andrew) (Entered: 01/15/2025) |
| 02/03/2025 | 61 (p.3299) | ORDER ADOPTING REPORT AND RECOMMENDATION. For the reasons above, the Court **ADOPTS** U.S. Magistrate Judge Dustin Howell's Report and Recommendation in full as the opinion of this Court (Dkt. # 52 (p.3081) ) (2023 case). |

| | | |
|---|---|---|
| | | Defendants Concordia University Texas, Donald Christian, and Christopher Bannwolf's Motion to Dismiss in case 1:23-cv-1042-DAE (Dkt. # 13 (p.1800) ) is **GRANTED WITHOUT PREJUDICE**. Plaintiff Concordia University Texas's Motion to Remand in related case 1:24-cv-176-DAE (Dkt. #5) is **GRANTED**. Further, the Court **REMANDS** this case to the 353rd District Court of Travis County, Texas for lack of subject-matter jurisdiction. The Clerk is **INSTRUCTED** to close both cases. Signed by Judge David A. Ezra. (cnr) (Entered: 02/03/2025) |
| 02/19/2025 | 62 (p.3326) | Transcript filed of Proceedings held on November 14, 2024, Proceedings Transcribed: Motions Hearing. Court Reporter/Transcriber: Arlinda Rodriguez, Telephone number: 512-391-8791. Parties are notified of their duty to review the transcript to ensure compliance with the FRCP 5.2(a)/FRCrP 49.1(a). A copy may be purchased from the court reporter or viewed at the clerk's office public terminal. If redaction is necessary, a Notice of Redaction Request must be filed within 21 days. If no such Notice is filed, the transcript will be made available via PACER without redaction after 90 calendar days. The clerk will mail a copy of this notice to parties not electronically noticed Redaction Request due 3/12/2025, Redacted Transcript Deadline set for 3/24/2025, Release of Transcript Restriction set for 5/20/2025, (Rodriguez, Arlinda) (Entered: 02/19/2025) |
| 02/21/2025 | 63 (p.3322) | Opposed Appeal of Order entered by District Judge 61 (p.3299) by The Lutheran Church - Missouri Synod. ( Filing fee $ 605 receipt number ATXWDC-19820438) (Levatino, Steven) (Entered: 02/21/2025) |
| 02/21/2025 | | NOTICE OF APPEAL following 63 (p.3322) Notice of Appeal (E-Filed) by The Lutheran Church - Missouri Synod. Filing fee $ 605, receipt number ATXWDC-19820438. Per 5th Circuit rules, the appellant has 14 days, from the filing of the Notice of Appeal, to order the transcript. To order a transcript, the appellant should fill out a (Transcript Order) and follow the instructions set out on the form. This form is available in the Clerk's Office or by clicking the hyperlink above. (cnr) (Entered: 02/21/2025) |
| 02/26/2025 | 64 (p.3324) | TRANSCRIPT REQUEST by The Lutheran Church - Missouri Synod. (MacRae, Andrew) (Entered: 02/26/2025) |

# Tab 2

# CONSTITUTION OF
# THE LUTHERAN CHURCH—MISSOURI SYNOD

### Preamble
### Reason for the Forming of a Synodical Union

1. The example of the apostolic church. Acts 15:1–31.
2. Our Lord's will that the diversities of gifts should be for the common profit. 1 Cor. 12:4–31.

## Article I  Name

The name of the synod organized under this constitution shall be: The Lutheran Church—Missouri Synod.

## Article II  Confession

The Synod, and every member of the Synod, accepts without reservation:

1. The Scriptures of the Old and the New Testament as the written Word of God and the only rule and norm of faith and of practice;
2. All the Symbolical Books of the Evangelical Lutheran Church as a true and unadulterated statement and exposition of the Word of God, to wit: the three Ecumenical Creeds (the Apostles' Creed, the Nicene Creed, the Athanasian Creed), the Unaltered Augsburg Confession, the Apology of the Augsburg Confession, the Smalcald Articles, the Large Catechism of Luther, the Small Catechism of Luther, and the Formula of Concord.

## Article III  Objectives

The Synod, under Scripture and the Lutheran Confessions, shall—

1. Conserve and promote the unity of the true faith (Eph. 4:3–6; 1 Cor. 1:10), work through its official structure toward fellowship with other Christian church bodies, and provide a united defense against schism, sectarianism (Rom. 16:17), and heresy;
2. Strengthen congregations and their members in giving bold witness by word and deed to the love and work of God, the Father, Son, and Holy Spirit, and extend that Gospel witness into all the world;
3. Recruit and train pastors, teachers, and other professional church workers and provide opportunity for their continuing growth;
4. Provide opportunities through which its members may express their Christian concern, love, and compassion in meeting human needs;
5. Aid congregations to develop processes of thorough Christian education and nurture and to establish agencies of Christian education such as elementary and secondary schools and to support synodical colleges, universities, and seminaries;
6. Aid congregations by providing a variety of resources and opportunities for recognizing, promoting, expressing, conserving, and defending their confessional unity in the true faith;

7. Encourage congregations to strive for uniformity in church practice, but also to develop an appreciation of a variety of responsible practices and customs which are in harmony with our common profession of faith;

8. Provide evangelical supervision, counsel, and care for pastors, teachers, and other professional church workers of the Synod in the performance of their official duties;

9. Provide protection for congregations, pastors, teachers, and other church workers in the performance of their official duties and the maintenance of their rights;

10. Aid in providing for the welfare of pastors, teachers, and other church workers, and their families in the event of illness, disability, retirement, special need, or death.

## Article IV  Powers

The Synod in convention is empowered to and has formed corporate entities which shall have legal powers:

1. To purchase, hold, administer, and sell property of every description in the interest of the Synod;

2. To accept, hold, administer, and, if deemed advisable, dispose of legacies, donations, commercial papers, and legal documents of every description in the interest of its work.

## Article V  Membership*

Membership in the Synod is held and may be acquired by congregations and individuals, ministers of religion—ordained and ministers of religion—

---

\* Should the congregations of the Synod decline to ratify the constitutional amendment of Res. 9-05 (see *Handbook* preface), Const. Art. V will continue to read:

### Article V Membership

Membership in the Synod is held and may be acquired by congregations, ministers of religion—ordained and ministers of religion—commissioned, such as teachers, directors of Christian education, directors of Christian outreach, directors of family life ministry, directors of parish music, deaconesses, parish assistants, and certified lay ministers of the Evangelical Lutheran Church who confess and accept the confessional basis of Article II.

**A. Voting Members**

All organized congregations that have joined the Synod hold voting membership. At the meetings of the districts of the Synod every congregation or parish is entitled to two votes, one of which is to be cast by the pastor and the other by the lay delegate. At the meetings of the Synod a number of congregations shall form a group which shall be represented by two voting delegates, one pastor and one lay delegate.

**B. Advisory Members**

Advisory members only are the following:

1. Pastors whose congregations do not hold membership in the Synod
2. Ministers not in charge of congregations
3. Professors at the Synod's educational institutions
4. Teachers of the Evangelical Lutheran Church
5. Directors of Christian education
6. Directors of Christian outreach
7. Directors of family life ministry
8. Directors of parish music
9. Deaconesses
10. Parish assistants
11. Certified lay ministers
12. Candidates for the office of the ministry, for that of a teacher of the Evangelical Lutheran Church, for director of Christian education, for director of Christian outreach, for director of family life ministry, for director of parish music, for deaconess, for certified lay minister, or for parish assistant

commissioned, of the Evangelical Lutheran Church who confess and accept the confessional basis of Article II.

## A. Voting Members

All organized congregations that have joined the Synod hold voting membership.

## B. Individual Members

Individual members of the Synod, who are non-voting except for those pastors exercising the vote of a member congregation or congregations, are the following:

1. Pastors, ordained ministers, called and installed to a member congregation
2. Pastors, ordained ministers, whose congregations do not hold membership in the Synod
3. Ordained ministers, not called and installed to a congregation, serving in a capacity recognized in the Bylaws of the Synod
4. Commissioned ministers equipped for service in an auxiliary office of ministry designated in, and serving in a capacity recognized by, the Bylaws of the Synod
5. Candidates for the office of the ministry, ordained ministers, or for an auxiliary office, commissioned ministers, having formerly been installed to a first call within the Synod
6. Emeriti of the office of the ministry, ordained ministers, or of an auxiliary office, commissioned ministers.

### Article VI   Conditions of Membership

Conditions for acquiring and holding membership in the Synod are the following:

1. Acceptance of the confessional basis of Article II.
2. Renunciation of unionism and syncretism of every description, such as:
   a. Serving congregations of mixed confession, as such, by ministers of the church;
   b. Taking part in the services and sacramental rites of heterodox congregations or of congregations of mixed confession;
   c. Participating in heterodox tract and missionary activities.
3. Regular call of pastors and any commissioned ministers and regular election of lay delegates by the congregations, as also the blamelessness of the life of such.*
4. Exclusive use of doctrinally pure agenda, hymnbooks, and catechisms in church and school.
5. A congregation shall be received into membership only after the Synod has convinced itself that the constitution of the congregation, which must be

---

\* Should the congregations of the Synod decline to ratify the constitutional amendment of Res. 9-05 (see *Handbook* preface), Const. Art. VI 3 will continue to read:

   3.   Regular call of pastors, teachers, directors of Christian education, directors of Christian outreach, directors of family life ministry, directors of parish music, deaconesses, certified lay ministers, and parish assistants and regular election of lay delegates by the congregations, as also the blamelessness of the life of such.

25-50130.1272

submitted for examination, contains nothing contrary to the Scriptures or the Confessions.

6. Ordained and commissioned ministers or candidates for these offices not coming from recognized orthodox church bodies must submit to a colloquium before being received.*

7. Congregations and individuals shall be received into membership at such time and manner, and according to such procedures, as shall be set forth in the bylaws to this Constitution.

## Article VII   Relation of the Synod to Its Members

1. In its relation to its members the Synod is not an ecclesiastical government exercising legislative or coercive powers, and with respect to the individual congregation's right of self-government it is but an advisory body. Accordingly, no resolution of the Synod imposing anything upon the individual congregation is of binding force if it is not in accordance with the Word of God or if it appears to be inexpedient as far as the condition of a congregation is concerned.

2. Membership of a congregation in the Synod gives the Synod no equity in the property of the congregation.

## Article VIII   Synodical Meetings

**A. Time and Legality of Meetings**

1. The Synod convenes every three years for its regular meeting.

2. For a legal convention a constitutional convocation of the meeting and the presence of at least one-fourth of the constitutionally elected voting representatives are necessary.

**B. Special Sessions of the Synod**

1. The Synod may under circumstances call a special session if two-thirds of the voting representatives present so decide.

2. In cases of urgent necessity a special session may be called by the President with the consent of two-thirds of the district presidents or by three-fourths of the district presidents without the consent of the President; however, all congregations and other members of the Synod must be notified 30 days in advance and told for what purpose this extra meeting is being convened.

**C. Resolutions at Synodical Meetings**

_____

* Should the congregations of the Synod decline to ratify the constitutional amendment of Res. 9-05 (see *Handbook* preface), Const. Art. VI 6 will continue to read:

6. Pastors, teachers, directors of Christian education, directors of Christian outreach, directors of family life ministry, directors of parish music, deaconesses, certified lay ministers, or candidates for these offices not coming from recognized orthodox church bodies must submit to a colloquium before being received.

25-50130.1273

All matters of doctrine and of conscience shall be decided only by the Word of God. All other matters shall be decided by a majority vote. In case of a tie vote the President may cast the deciding vote.

## Article IX  Representation*

The synodical meetings are composed of regularly elected and delegated representatives and of certain individual persons, as specified in the Bylaws, to wit:

1. Representatives of congregations, entitled to vote. A number of congregations shall form a group which shall be represented by two voting delegates, one a pastor and one a lay delegate.

2. Advisory representatives of such individual members as are ineligible to represent congregations as voting delegates and ineligible to represent other entities or offices in the Synod as advisory representatives.

3. Advisory representatives of boards, commissions, and educational institutions and such as by virtue of their office are required to attend the Synod.

## Article X  Officers



The officers of the Synod are:

1. A President
2. Vice-presidents, in line of succession, as prescribed by the Bylaws
3. A Secretary
4. A Board of Directors
5. Other officers, as specified in the Bylaws



1. The President, the vice-presidents, and the Secretary must be ministers of religion–ordained of The Lutheran Church—Missouri Synod and, like other officers and the members of the Board of Directors, members of voting congregations.

2. The time of service of all officers, boards, and commissions shall be fixed by the Bylaws of the Constitution of the Synod.

3. Any officer or any member of any board or commission ceases to be an officer of the Synod or a member of any board or commission as soon as he ceases to be a member of a congregation affiliated with the Synod.

---

\* Should the congregations of the Synod decline to ratify the constitutional amendment of Res. 9-05 (see *Handbook* preface), Const. Art. IX will continue to read:

The synodical meetings are composed of regularly elected and delegated representatives and of certain individual persons, as specified in the Bylaws, to wit:
1. Representatives of congregations, entitled to vote
2. Advisory representatives of the advisory members of the Synod
3. Advisory representatives of boards, commissions, and educational institutions and such as by virtue of their office are required to attend the Synod

15

25-50130.1274

## Article XI  Rights and Duties of Officers

### A. In General

1. The officers of the Synod must assume only such rights as have been expressly conferred upon them by the Synod, and in everything pertaining to their rights and the performance of their duties they are responsible to the Synod.
2. The Synod at all times has the right to call its officers to account and, if circumstances require it, to remove them from office in accordance with Christian procedure.
3. The Synod reserves the right to abolish any office it has established.
4. Conventions of the Synod and of the districts have the right, in extraordinary cases, to elect a chairman other than the regular presiding officer.

### B. Duties of the President

1. The President has the supervision regarding the doctrine and the administration of
   a. All officers of the Synod;
   b. All such as are employed by the Synod;
   c. The individual districts of the Synod;
   d. All district presidents.
2. It is the President's duty to see to it that all the aforementioned act in accordance with the Synod's Constitution, to admonish all who in any way depart from it, and, if such admonition is not heeded, to report such cases to the Synod.
3. The President has and always shall have the power to advise, admonish, and reprove. He shall conscientiously use all means at his command to promote and maintain unity of doctrine and practice in all the districts of the Synod.
4. The President shall see to it that the resolutions of the Synod are carried out.
5. When the Synod meets in convention the President shall give a report of his administration. He shall conduct the sessions of the convention so that all things are done in a Christian manner and in accord with the Constitution and Bylaws of the Synod.
6. It is the duty of the President, or an officer of the Synod appointed by the President, to be present at the meetings of the districts, to advise them, and to report at the next session of the Synod.
7. The President shall perform all additional duties assigned to him by the Bylaws or by special resolution of the Synod in convention.
8. When matters arise between meetings of the Synod in convention which are of such a nature that action thereon cannot be delayed until the next convention, the President is authorized to submit them to a written vote of the member congregations of the Synod only after full and complete information regarding the matter has been sent to member congregations by presidential letter and has been published in an official periodical of the Synod. If such matters are related to the business affairs of the Synod, such a vote shall be conducted only after the President has consulted with the synodical Board of Directors. In all cases at least one-fourth of the member congregations must register their vote.

16

### C. Duties of the Vice-Presidents

1. The vice-presidents shall upon request of the President represent him in all his functions.
2. In case of the disability, the deposition from office, or the death of the President, the vice-presidents, in the order of their rank of office, advance to the President's place, with full power, until the expiration of his term of office.

### D. Duties of the Secretary

The Secretary shall

1. Record the proceedings when the Synod meets in convention;
2. Perform such other work as the Synod may assign to him through the Bylaws or special resolutions of the Synod.

### E. Composition and Duties of the Board of Directors

1. The Board of Directors shall consist of not fewer than seven voting members, to wit: the President, the Secretary, one pastor, and four laymen. The First Vice-President shall be a nonvoting member.
2. The Board of Directors is the legal representative and custodian of all the property of The Lutheran Church—Missouri Synod, directly or by its delegation of such authority to an agency of the Synod. It shall exercise supervision over all property and business affairs of The Lutheran Church—Missouri Synod except in those areas where it has delegated such authority to an agency of the Synod or where the voting members of the Synod through the adoption of bylaws or by other convention action have assigned specific areas of responsibility to separate corporate or trust entities, and as to those the Board of Directors shall have general oversight responsibility as set forth in the Bylaws. For the purposes of this article, The Lutheran Church—Missouri Synod includes both the Synod formed by this Constitution and the Missouri corporation formed by the Synod.

## Article XII  Districts of the Synod and Their Regulation

1. The Synod is divided into districts, the geographical boundaries of which are determined by the Synod and are altered by it according to circumstances.
2. This Constitution is also the constitution of each district of the Synod; however, each district is at liberty to adopt such bylaws and pass such resolutions as it deems expedient for its conditions, provided that such bylaws and resolutions do not conflict with the Constitution and the Bylaws of the Synod.
3. The officers of the districts are:
   a. A district president
   b. District vice-presidents as the Bylaws prescribe
   c. As many circuit visitors as each district may determine upon
   d. A district secretary
   e. A district treasurer, who may be elected by the district convention or appointed in such manner as the district may prescribe

25-50130.1276

4. Additional officers, boards, and commissions are elected by the districts as they are required for the execution of the business of the districts.

5. The election and time of service of the district officers shall be determined by the Bylaws of the Constitution of the Synod.

6. All officers of the districts have the same rights and duties as those outlined in this Constitution for the officers of the Synod but only insofar as these apply to the district and only within the boundaries of their districts.

7. The district presidents shall, moreover, especially exercise supervision over the doctrine, life, and administration of office of the ordained and commissioned ministers of their district and acquaint themselves with the religious conditions of the congregations of their district. To this end they shall visit and, according as they deem it necessary, hold investigations in the congregations. Their assistants in this work are the circuit visitors, who therefore shall regularly make their reports to the district president.

8. District presidents are empowered to suspend from membership ordained and commissioned ministers for persistently adhering to false doctrine or for having given offense by an ungodly life, in accordance with such procedure as shall be set forth in the Bylaws of the Synod.

9. Furthermore, the district presidents shall

   a. See to it that all resolutions of the Synod which concern the districts are made known to the districts and are carried out by them;

   b. Submit an annual report of their administration to the President of the Synod and, in general, permit him to obtain all necessary insight into their official activities as district presidents;

   c. Perform, either in person or by proxy, the ecclesiastical ordination of the candidates for the ministry assigned to their districts, the commissioning of the candidates for the auxiliary offices assigned to their districts, and the installation of all ministers, ordained or commissioned, called to serve within their districts;*

   d. Sign all examination papers and certificates of ordination and, in general, all official papers and documents of their district.

10. The meetings of the districts of the Synod are composed of the following:

    **a. Voting Delegates**

    Every member congregation or multi-congregation parish is entitled to two votes, one of which is to be cast by its pastor and the other by the lay delegate elected and deputed by the congregation or parish.

    **b. Advisory Delegates**

    Advisory delegates are all commissioned ministers, and those ordained ministers not presently serving as voting representatives of congregations, who are members of the Synod within the district. In

---

* Should the congregations of the Synod decline to ratify the constitutional amendment of Res. 9-05 (see *Handbook* preface), Const. Art. XII c will continue to read:

   c. Perform, either in person or by proxy, the ecclesiastical ordination of the candidates for the ministry assigned to their districts and the installation of such, as well as the installation of the candidates for the office of schoolteacher and of all ministers and teachers called by the congregations in their districts;

25-50130.1277

addition, a congregation that is part of a multi-congregation parish, other than the congregation supplying the voting lay delegate, may elect and depute an advisory lay delegate.*

11. The districts, when legally incorporated, are represented before the State by a board of directors composed of the president, the secretary, and the treasurer of the district, which board, however, may be constituted otherwise.

12. The districts are independent in the administration of affairs which concern their district only, it being understood, however, that such administration shall always serve the interests of the Synod.

13. The regular sessions of the districts are held in the year immediately preceding the general convention of the Synod. Only the Synod has the right to make an exception to this rule.

14. For the legal holding of the sessions of the districts a constitutional convocation of such sessions and the presence of at least one-third of the voting members represented by at least one of their respective representatives (pastor or lay delegate) are required.

15. In cases of urgent necessity the district president is empowered to convene special sessions of his district; he must, however, previously have obtained consent of at least a majority of the voting members of the district after having informed them and the President of the Synod of the purpose of the intended special session.

## Article XIII  Expulsion from the Synod

1. Members who act contrary to the confession laid down in Article II and to the conditions of membership laid down in Article VI or persist in an

---

* Should the congregations of the Synod decline to ratify the constitutional amendment of Res. 9-05 (see *Handbook* preface), Const. Art. XII 10 will continue to read:

    10.    The meetings of the districts of the Synod are composed of the following:

**A. Voting Representatives**

    The pastors of such congregations as hold voting membership in the Synod and the lay delegates elected and deputed by these congregations shall be voting representatives.

**B. Advisory Members**

    Advisory members are:

        a.    Pastors whose congregations do not hold membership in the Synod
        b.    Ministers not in charge of congregations
        c.    Professors at the Synod's educational institutions
        d.    Teachers of the Evangelical Lutheran Church
        e.    Directors of Christian education
        f.    Directors of Christian outreach
        g.    Directors of family life ministry
        h.    Directors of parish music
        i.    Deaconesses
        j.    Parish assistants
        k.    Certified lay ministers
        l.    Candidates for the office of the ministry, for that of a teacher of the Evangelical Lutheran Church, for director of Christian education, for director of Christian outreach, for director of family life ministry, for director of parish music, for deaconess, for certified lay minister, or for parish assistant.

25-50130.1278

2.  offensive conduct, shall, after previous futile admonition, be expelled from the Synod.
2.  Expulsion shall be executed only after following such procedure as shall be set forth in the Bylaws of the Synod.
3.  If the member expelled is an ordained or commissioned minister serving\* a congregation of the Synod, such congregation, unless it has already done so, is held to depose him from office and to deal with him in accordance with the Word of God, notwithstanding an appeal. If it persistently refuses to do so, the respective district is to deal with it. If all negotiations and admonitions fail of their purpose, such congregation forfeits its membership in the Synod.
4.  Because of their expulsion those so expelled forfeit their membership and all share in the property of the Synod. The latter holds good also with respect to those who for any reason themselves sever their connection with the Synod.

## Article XIV  Bylaws

The Synod in convention may adopt bylaws that are consistent with and do not contradict the Constitution of the Synod, which controls and supersedes such bylaws and all other rules and regulations of the Synod. Bylaws, which may be adopted, revised, or eliminated by a simple majority vote of a national convention, are binding regulations for the Synod and its conduct and governance.

## Article XV  Changes in, and Amendments to, the Constitution

1.  Changes in the Constitution and amendments thereto may be made provided they do not conflict with the provisions laid down in Article II and in Article VI.
2.  All proposed changes and amendments must be submitted in writing to the Synod assembled in convention, and each proposed change shall be voted on separately. A two-thirds majority of all votes cast shall be necessary for adoption.
3.  After adoption by the convention such amendments shall be submitted to the congregations of the Synod by means of three announcements in the official periodical within three months after the close of the convention.
4.  Amendments to the Constitution of the Synod shall be submitted directly to each voting congregation of the Synod on an official ballot, and the congregations shall by official action express their affirmative or negative vote and indicate the same to the Secretary of the Synod on this official ballot. The proposed amendment shall become effective at the expiration of six months from the date on which the amendment is submitted for vote, provided a two-thirds majority of the votes cast within that period shall have favored the amendment. At the end of the six-month period the Secretary of the Synod shall announce the outcome of the voting by districts in the official periodical of the Synod.

---

\* Should the congregations of the Synod decline to ratify the constitutional amendment of Res. 9-05 (see *Handbook* preface), Const. Art. XIII will continue to read: "**If the member expelled is a pastor or teacher in...**"

25-50130.1279

# Tab 3

# BYLAWS

## 1. RELATIONSHIPS WITHIN AND THROUGH THE SYNOD

### 1.1  Purpose of the Synod

1.1.1   Committed to a common confession and mission, congregations of The Lutheran Church—Missouri Synod join with one another in the Synod to support one another and to work together in carrying out their commonly adopted objectives. The Synod is organized to work in support of and on behalf of congregations to assist them in carrying out their ministries as they seek to serve our Lord Jesus Christ, the members of His body, and the world which stands in need of the Word and the impact of His redeeming love.

(a)  The Synod functions in support of its member congregations by providing assistance as congregations conduct their ministries locally, as well as their ministries at large.

(b)  The Synod on behalf of its member congregations administers those ministries that can be accomplished more effectively in association with other member congregations through the Synod. In this way member congregations utilize the Synod to assist them in carrying out their functions of worship, witness, teaching and nurture, service, and support.

### 1.2  Definition of Terms

1.2.1   The following definitions are for use in understanding the terms as used in the Bylaws of The Lutheran Church—Missouri Synod:

(a)  *Agency*: An instrumentality other than a congregation or corporate Synod, whether or not separately incorporated, which the Synod in convention or its Board of Directors has caused or authorized to be formed to further the Synod's Objectives (Constitution Art. III).

(1)  Agencies include each board, commission, council, seminary, university, college, district, Concordia Plan Services, and each synodwide corporate entity.

(2)  The term "agency of the Synod" does not describe or imply the existence of principal and agency arrangements as defined under civil law.

(b)  *Chief executive*: The top staff administrator of a separately incorporated agency of the Synod, who may be referred to as president.

(c)  *Commission*: A group of persons, elected or appointed as prescribed in the Bylaws, rendering a precisely defined function of the Synod and responsible, as the case may be, to the Synod in convention, to the President of the Synod, or to the Board of Directors of the Synod. The commissions of the Synod are:

(1)  Commission on Constitutional Matters

(2)  Commission on Doctrinal Review

(3)  Commission on Handbook

(4)  Commission on Theology and Church Relations

(d)  ***Concordia Plan Services***: Concordia Plan Services is a controlled entity of The Lutheran Church—Missouri Synod created to manage the Concordia Plans.

(e)  ***Concordia Plans***: The Concordia Plans, while operating under the supervision of the Synod Board of Directors, are trust agencies whose assets are not the property of corporate Synod.

(f)  ***Corporate Synod***: The Lutheran Church—Missouri Synod, the Missouri nonprofit corporation, including its offices, boards, commissions, and departments.

(1)  "Corporate Synod" is not an agency of the Synod.

(2)  The Lutheran Church—Missouri Synod, in referencing the laws of the State of Missouri in these Bylaws and in the Synod's Articles of Incorporation, intends to acknowledge its responsibility to be subject to civil authority. In all such references, however, the Synod intends to retain all authority and autonomy allowed a church under the laws and Constitution of the United States and the State of Missouri.

(g)  ***Council***: An officially established group elected or appointed as an advisory body. The council of the Synod is the Council of Presidents.

(h)  ***District***: A division of the Synod as determined by a national convention of the Synod.

(i)  ***Ecclesiastical oversight***: The responsibility, primarily of the district president, to monitor; to make inquiry and receive a response thereto; to make suggestions; to bring concerns to the attention of a higher authority, namely the Synod status granting office, as relates specifically to the ecclesial relations of a recognized service organization operating within his district, and the impact and/or reflection of its work on the mission and ministry of the church.

(j)  ***Ecclesiastical supervision***: The responsibility, primarily of the President of the Synod and district presidents, to supervise on behalf of the Synod the doctrine, life, and administration of its members, officers, and agencies. Such supervision, subject to the provisions of the Synod's Constitution, Bylaws, and resolutions, includes visitation, evangelical encouragement and support, care, protection, counsel, advice, admonition, and, when necessary, appropriate disciplinary measures to assure that the Constitution, Bylaws, and resolutions of the Synod are followed and implemented. Thus, ecclesiastical supervision is also the presenting, interpreting, and applying of the collective will of the Synod's congregations. Ecclesiastical supervision does not include the responsibility to observe, monitor, control, or direct the day-to-day activities of individual members of the Synod, whether in the conduct of their work or in their private lives (cf. Bylaw 2.14.1 [a]). Further, those constitutional articles and bylaws pertaining to ecclesiastical supervision shall determine the full definition of ecclesiastical supervision.

(k)  ***Governing board***: A board that directs a separately incorporated agency of the Synod. Governing boards are such as a board of directors,

a board of trustees, a board of regents, a board of managers, or a board of governors.

(l) *May*: Permissive, expressing ability, liberty, or the possibility to act.

(m) *Member of the Synod*: See Constitution Art. V. Members of the Synod are of two classes: corporate members (congregations that have joined the Synod) and individual members (ministers of religion–ordained and ministers of religion–commissioned on the roster of the Synod).

(n) *Mission board*: An officially established group of persons elected and appointed as prescribed in the Bylaws, charged with developing and determining policies for a ministry function of the Synod as prescribed in the Bylaws. These policies shall establish boundaries, parameters, and principles that guide the respective mission office in determining present and future activities and programs. The mission board shall have oversight of the implementation of these policies. The President of the Synod shall be responsible for supervising the implementation of mission board policies in accordance with his responsibilities under Constitution Art. XI and Bylaws 3.3.1.1.1–3.3.1.3. The mission boards of the Synod are:

    (1)  Board for National Mission

    (2)  Board for International Mission

(o) *Officer*: Those positions identified in Constitution Art. X A or Art. XII 3 or Bylaw sections 3.3 and 3.4 unless qualified by a modifier.

(p) *Oversight*: For the purpose of these Bylaws, to monitor; to make inquiry and receive a response thereto; to make suggestions; to bring concerns to the attention of a higher authority.

(q) *Praesidium*: The President and the vice-presidents of the Synod.

(r) *Property of the Synod*: All assets, real or personal, tangible or intangible, whether situated in the United States or elsewhere, titled or held in the name of corporate Synod, its nominee, or an agency of the Synod. "Property of the Synod" does not include any assets held by member congregations, the Lutheran Church Extension Fund—Missouri Synod, or by an agency of the Synod in a fiduciary capacity (including, for purposes of example, the funds managed for the Concordia Plans by Concordia Plan Services and certain funds held by The Lutheran Church—Missouri Synod Foundation).

(s) *Region*: A division of the Synod for the purpose of regional elections.

(t) *Shall*: A word of command that must always be given an imperative or compulsory meaning.

(u) *Supervision*: For the purpose of these Bylaws (other than those pertaining to ecclesiastical supervision) to have authority over, to direct actions, to control activities.

(v) *Synod*: Refers collectively to the association of self-governing Lutheran congregations and all its agencies on the national and district levels. The Synod, as defined herein, is not a civil law entity.

(w) *Synodwide corporate entity*: A separate corporation established by the Synod for business and legal reasons. For the purposes of these

25-50130.1282

(d)  He shall carry out responsibilities with reference to the Committee for Convention Nominations as determined in the Bylaws.

(e)  He shall provide the Committee on Elections with copies of a manual of suggested election procedures.

(f)  He shall record the proceedings when the Synod meets in convention.

(g)  He shall announce daily the time and the place of committee meetings at conventions.

(h)  He shall officially notify individuals elected to office of their election.

(i)  He shall edit the proceedings of the Synod in convention and arrange for its distribution in harmony with the provisions of the Bylaws.

3.3.3.2    The Secretary shall perform such other work as pertains to his office or such other work as the Synod in convention, the President, or the Board of Directors of the Synod may assign to him.

(a)  He shall serve as a voting member and secretary of the Commission on Constitutional Matters.

(b)  He shall administer the Synod's dispute resolution and expulsion processes.

(c)  He shall serve as a voting member of the Board of Governors of Concordia Historical Institute.

(d)  He shall supervise the maintenance of the official roster of member congregations and ordained and commissioned ministers on the basis of information supplied by the district presidents.

(e)  He shall supervise the process for obtaining annual statistical information from all member congregations of the Synod.

(f)  He shall serve as editor of *The Lutheran Annual*.

(g)  He shall keep a file of all governing instruments of all agencies of the Synod.

3.3.3.3    In the event of the death, resignation, or permanent incapacity of the Secretary, the Board of Directors of the Synod shall appoint a successor for the unexpired term.

### Board of Directors

3.3.4    The Board of Directors of the Synod is the legal representative of the Synod and the custodian of all the property of the Synod. It shall be accountable to the Synod in convention for the discharge of its duties.

3.3.4.1    The Board of Directors shall consist of no more than 16 members, 15 of them voting, as follows:

1.  One layperson elected from each of the five designated geographical regions

2.  Two ministers of religion—ordained elected at-large by the Synod in convention

3.  One minister of religion—commissioned elected at-large by the Synod in convention

4.  Two laypersons elected at-large by the Synod in convention

25-50130.1374

Directors of the Synod, and monitor compliance with these standards and criteria;

(e) adopt standards for ensuring curricular fidelity to the doctrine and practice of the Synod, and monitor compliance with these standards and criteria;

(f) together with districts, congregations, local boards of regents, and national efforts, assist congregations and districts in student recruitment for both professional church work and lay higher education;

(g) serve as a resource for the development of lists of potential teaching and administrative personnel;

(h) assist the President of the Synod in monitoring and promoting the ongoing faithfulness of Concordia University System colleges and universities to Article II of the Constitution of the Synod; and

(i) have authority, after receiving the consent of the Board of Directors of the Synod by its two-thirds vote and also the consent of one of: the appropriate board of regents by its two-thirds vote, the Council of Presidents by its two-thirds vote or the Concordia University System Board of Directors by its two-thirds vote, to consolidate, relocate, separate, or divest a college or university.

3.6.6.5 The presidents and interim presidents of the Synod's educational institutions shall comprise the Concordia University System Advisory Council, which shall:

(a) in consultation with the Concordia University System Board of Directors ("the board"), be responsible for developing, executing, and assessing the long-term strategic direction and plan for Concordia University System, which focuses the mission of the institutions within the broad assignment of the Synod

(b) assist the board in defining standards of viability, integrity, and theological fidelity of the curricula (Bylaw 3.6.6.4 [d–e]) and in the development of policies and procedures as described in Bylaws 3.6.6.4 (a) and 3.6.6.6;

(c) coordinate collaborative development, by their respective institutions, of policies required by Bylaw 3.6.6.7;

(d) serve as a pool of experts to assist, upon the board's request, in evaluating institutional viability, and regarding the consolidation, relocation, separation, divestiture, or closure of a college or university;

(e) propose standards for ensuring curricular fidelity to the doctrine and practice of the Synod;

(f) contribute to the board's development of search criteria in the selection process for a president of Concordia University System;

(g) upon the board's request, contribute to campus transition reviews and recommendation of search criteria in the selection for a college/university president;

(h) together with districts, congregations, local boards of regents, and national efforts, assist congregations and districts in student recruitment for both professional church work and lay higher education; and

132

(2) Every vicar shall be assigned by the Council of Presidents, acting as the Board of Assignments.

(i) Controversies and disagreements among faculty members or other employees (other than those involving matters described in Bylaw 3.10.5.7.5) shall be submitted to the president of the seminary for mediation.

(1) If this proves unsuccessful, he shall report the matter to the board of regents for arbitration.

(2) After hearing the parties to the matter, the board will render its decision, which shall be final, without the right of appeal under the provisions of the dispute resolution process of the Synod.

(3) A record of the proceedings shall be filed with the President of the synod.

(j) Faculty members may request early retirement under the applicable provisions of the Concordia Retirement Plan.

(1) Upon retirement, faculty members who are ordained or commissioned ministers of religion are retained on the emeritus roster of the Synod on the basis of Bylaw 2.11.2.1 and may, by action of the board of regents, be retained on the roster of their faculty as "emeriti" (Bylaw 3.10.5.7).

(2) Service loads and the conditions of service after retirement shall be determined by the board of regents.

(k) Each seminary shall state policies regarding sabbaticals for faculty and leave-of-absence procedures for all employees within guidelines provided by the board of regents.

(l) Each board of regents, on recommendation of the president, shall adopt a comprehensive policy statement committing the school to the principles of Christian discipline, evangelical dealing, and good order governing the students individually and collectively.

(1) Each student shall be informed regarding the disciplinary policy and procedure and under what conditions and to whom an appeal from a disciplinary decision may be made.

(2) There shall be no right of appeal under the provisions of the dispute resolution process of the Synod.

### F. Concordia University System Boards of Regents

3.10.6    Each college and university of the Synod, with its president and faculty, shall be governed by a board of regents, subject to general policies set by the Synod, including those established by the Concordia University System.

3.10.6.1   In exercising its relationship to the Synod and to the Concordia University System as set forth elsewhere under Bylaw 3.6.6 and following, the board of regents of each institution shall consider as one of its primary duties the defining and fulfilling of the mission of the institution within the broad assignment of the Synod.

3.10.6.2   The board of regents of each college and university shall consist of no more than 18 members, all voting.

1. One ordained minister, one commissioned minister, and two laypersons shall be elected by the conventions of the Synod.

165

2. One ordained minister, one commissioned minister, and two laypersons shall be elected by the geographical district in which the institution is located. If any board is required by its governing documents to include one or more persons holding residence or church membership in a specific locality, the institution is responsible for ensuring (including by appointment, if necessary) that individual(s) meeting such requirements are included among those persons serving on such board, and no such geographic restriction shall apply to Synod-elected regents.

3. No fewer than four and no more than eight members shall be appointed as members by the board of regents according to a process determined by the individual institution.

4. The president of the district in which the college or university is located or a district vice-president as his standing representative shall serve as an *ex officio* member.

5. One member, who may be an ordained minister, a commissioned minister, or a layperson, shall be appointed by the Praesidium of the Synod after consultation with the President of the respective institution and the Board of Directors of the Synod.

6. College and university board of regents members may be elected or appointed to serve a maximum of three consecutive three-year terms and must hold membership in a member congregation of the Synod.

7. Not more than two of the elected members shall be members of the same congregation.

8. Persons elected or appointed to a board of regents should be knowledgeable regarding the region in which the institution is located and shall demonstrate familiarity and support for the doctrinal positions of the Synod and possess two or more of the following qualifications: theological acumen, an advanced academic degree, experience in higher education administration, administration of complex organizations, finance, law, investments, technology, human resources, facilities management, or fund development. Demonstrated familiarity and support of the institution is a desired quality in the candidate. When regents are elected at the national convention of the Synod or appointed by the board of regents, qualifications shall be reviewed and verified by the Secretary of Synod (or designee) and the President of the CUS (or designee). When regents are elected at district conventions, qualifications of all nominees, including floor nominees, shall be reviewed and verified by the chair and secretary of the district board of directors or their designees.

3.10.6.3   Vacancies that occur on a board of regents shall be filled in the following manner:

(a) If the vacancy occurs in a position that was previously filled by the board of regents, the board of regents shall be the appointing body.

(b) If the vacancy occurs in a position that was previously filled at a district convention, the district board of directors shall be the appointing body.

(c) If the vacancy occurs in a position that had been filled by a national convention of the Synod, the Board of Directors of Concordia University

System shall be the appointing body and shall follow the nomination procedure provided for filling vacancies in elected positions on boards and commissions of the Synod as outlined in Bylaw 3.2.5.

3.10.6.4   The board of regents of each institution shall become familiar with and develop an understanding of pertinent policies, standards, and guidelines of the Synod and the Board of Directors of Concordia University System.

(a)  It shall develop detailed policies and procedures for governance of the institution, including but not limited to

(1)  attention to specific ways that the institution is confessing Jesus Christ in full accord with the doctrinal position of the LCMS (Constitution Art. II) and fulfilling His mission in our world;

(2)  ensuring that all faculty receive appropriate formal, ongoing training in the doctrines of Holy Scripture as rightly taught in the Lutheran Confessions as they relate to their academic disciplines, consistent with the CUS Lutheran Identity Statement, to enable faculty to engage in responsible exercise of their academic freedom under the CUS Academic Freedom Policy in effect from time to time;

(3)  annual certification of the institution's financial viability;

(4)  creation, modification, and abolition of administrative positions;

(5)  processes for filling and vacating administrative positions;

(6)  a clear plan for succession of administration to ensure that the institution continues to function effectively in the case of incapacity or lengthy absence of the president and other executive officers;

(7)  handling faculty complaints and dispute resolution under an operating procedures manual approved by the Concordia University System Board; and

(8)  all subject matters for which Concordia University System requires policies to be developed (Bylaw 3.6.6.7).

(b)  It shall coordinate institutional planning with other Concordia University System schools and approve master plans for its college or university.

(c)  It shall review and approve academic programs recommended by the administration and faculty after assessment of system policies in accordance with Concordia University System standards and guidelines and institutional interests and capacities.

(d)  It shall review and approve the institutional budget.

(e)  It shall approve institutional fiscal arrangements, develop the financial resources necessary to operate the institution, and participate in its financial support.

(1)  Only the board of regents is authorized to establish a line of credit or to borrow for operating needs, subject to the policies of the Board of Directors of Concordia University System and the Board of Directors of the Synod.

(2)  All surplus institutional funds above an adequate working balance shall be deposited with the Concordia University System for investment. Earnings from such investments shall be credited to the depositing institution.

insolvency necessitating immediate closure after consultation with the Board of Directors of the Synod and the Board of Directors of the Concordia University System.

(8)  Recognizing that the authority of the board of regents resides in the board as a whole and delegating the application of its policies and execution of its resolutions to the president of the institution as its executive officer.

(9)  Establishing a comprehensive policy statement regarding student life and behavior that is consistent with the doctrine and practice of the Synod and that commits the institution to the principles of Christian discipline, an evangelical manner, and good order.

(10) Promoting the public relations of the institution and developing the understanding and cooperation of its constituency.

(11)  Requiring regular reports from the president of the institution as the executive officer of the board and through him from other officers and staff members in order to make certain that the work of the institution is carried out effectively.

3.10.6.5   Recognizing its fiduciary duty as a board, as well as the requirements of accrediting bodies that an institution's governing board be clearly defined and have ultimate authority and independence in the operation of the institution subject to appropriate pre-established policies and rules (e.g., Synod Bylaws), under no circumstances shall a board delegate its authority to, nor commingle its authority with, any other body that includes non-board members. Boards of regents may meet as a "committee of the whole" with advisory groups (e.g., a foundation board; the CUS board) to seek input, but no votes shall be taken at such meetings.

*Concordia University System Presidents*

3.10.6.6   The president of the institution shall be the executive officer of the board of regents. He shall serve as the spiritual, academic, and administrative head of the institution.

(a)  He shall represent the institution in its relations to the Synod and its officers and boards.

(b)  He shall supervise, direct, and administer the affairs of the institution and all its departments, pursuant to the rules and regulations of the Synod and its boards and agencies and the policies of the board of regents.

(c)  He shall bring to the attention of the board of regents matters that require consideration or decision and make pertinent recommendations.

(d)  He shall be the academic head of the faculty, preside at its meetings, and be an *ex officio* member of all standing committees of the faculty and its departments with the exception of the standing hearings committee or of another standing committee to which the functions of such a committee have been assigned.

(e)  He shall periodically visit or cause to be visited the classes of professors and instructors, and in general secure conformity in teaching efficiency and subject matter to the standards and policies

169

prescribed by the board of regents and by the Synod through the Board of Directors of Concordia University System.

(f) He shall advise and admonish in a fraternal spirit any member of the faculty found dilatory, neglectful, or exhibiting problems in his teaching. Should this action prove ineffective, he shall request selected members of the faculty privately to engage their colleague in further fraternal discussion. If this results in failure to correct or improve the situation, the president shall report the matter to the board of regents with his recommendation for action.

(g) He shall delegate or reassign one or more of his functions to a member of the faculty or staff, although standing administrative assignments shall be made by the board of regents upon his recommendation.

(h) He shall be responsible for the provision of spiritual care and nurture for every student.

(i) He shall carefully watch over the spiritual welfare, personal life, conduct, educational progress, and physical condition of the students and in general exercise such Christian discipline, instruction, and supervision as may be expected at a Christian educational institution.

(j) He shall be responsible for the employment, direction, and supervision of all employees of the institution.

(k) He shall be responsible for the business management of the school and for the proper operation and maintenance of grounds, buildings, and equipment.

(l) He shall make periodic and special financial reports to the board of regents.

(m) He shall represent the institution on the Concordia University System Advisory Council.

3.10.6.6.1  The president of each college or university shall serve a five-year renewable term of office under the terms set forth herewith under Bylaw 3.10.6.6.1 (c), beginning with the date of his assumption of his responsibilities as president.

(a) Each president shall relinquish academic tenure upon assumption of the presidency, and shall not be granted academic tenure during the time of presidential service.

(b) The president and board of regents shall develop mutually agreed upon institutional goals and priorities that give direction to the individual as he carries out the duties of the office of the presidency. The board of regents will annually evaluate presidential effectiveness based on these goals and priorities.

(c) Nine months prior to the end of each five-year term, the board of regents will conduct a formal review of the president's effectiveness in the current term of office. The president shall then be eligible for another five-year term by majority action of the board of regents, voting with a ballot containing only the current president's name.

(1) In addition to considering the evaluation report, the board of regents shall consult with the President of the Synod and the chairman of the Board of Directors of Concordia University System.

170

(2)  The regents may consult with other boards, commissions, and councils of the Synod as they deem wise.

(d)  In the event that a president's term is not renewed, the office of the president shall be considered vacant as of the end of the term of the incumbent.

3.10.6.6.2  The following process shall govern the selection of a college/university president.

(a)  When a vacancy or an impending vacancy in the office of president is known, the board of regents shall inform the campus constituencies, the Board of Directors of Concordia University System, the President of the Synod, an official periodical of the Synod, and other parties as appropriate. If a vacancy in a presidency occurs, the board of regents shall appoint an interim president, who shall meet the qualifications established for the office of president. He shall bear the title "interim president" and may not serve more than eighteen (18) months without the concurrence of the President of the Synod. Such interim appointee shall be ineligible to serve on a permanent basis without the concurrence of the President of the Synod.

(1)  The board of regents shall request that the Board of Directors of Concordia University System authorize the institution to publish a request for nominations for the position of president.

(2)  The board of regents shall request that the Board of Directors of Concordia University System schedule a transition review of the campus. The review is to provide a report on the state of the campus for use by the search committee, the board of regents, and the candidates.

(b)  The board of regents shall oversee the process of defining the institution's needs, describing the desired characteristics of the new president, and issuing a request for nominations.

(1)  A search committee shall be formed that represents the board of regents, the faculty, and the staff. Faculty members and staff members on the committee shall be members of LCMS congregations.

(2)  The search committee shall prepare a description of the needs of the institution based on listening forums, the findings of the transition review, and other relevant information. Before publishing a call for nominations, the President of Concordia University System shall convene an in-person conference involving the board of regents, the search committee, and the prior approval panel to discuss the qualifications that will be sought and the search criteria.

(3)  The search committee shall develop written criteria that will be utilized by the committee to screen the candidates and will be utilized by the board of regents to guide the presidential election.

(4)  A person designated by the board of regents shall act as its agent to issue a request for the nomination of candidates for the presidency of the institution. The request for nominations shall be submitted to the parties who are authorized to nominate. Candidates may be nominated by congregations of the Synod, the Board of Directors of Concordia University System, the board of

regents, and the faculty of the institution. The request for nominations shall state when the nominating period closes.

(5)  After the nomination period has closed, the agent of the board of regents shall contact each nominee to notify him of his nomination and to determine whether such nominee will allow his name to stand for election. Nominees who wish to be considered must furnish written consent, along with such documentation as the board of regents has requested from candidates in its call for nominations, to the agent by a date set by the board of regents, which date shall be not less than fifteen days after the last nominee is notified.

(6)  After the due date set by the board of regents for nominee responses, the agent of the board of regents shall forward the list of nominees who have agreed to let their names stand, together with all materials received from such candidates, to the President of Concordia University System to enable him to convene a prior approval panel consisting of the President of the Synod, the district president serving on the institution's board of regents, and the chair of the Board of Concordia University System. The names of the nominees shall not otherwise be disclosed outside the board of regents.

(7)  The prior approval panel shall meet to consider the nominees. The panel may choose to remove names from the list by its two-thirds majority vote. The panel shall complete its work within sixty (60) days after receipt of the list of nominees.

(8)  After the prior approval panel has completed its work, the President of Concordia University System shall transmit the finalized list back to the agent of the board of regents within 15 days and shall cause such list to be published in an official periodical of the Synod. The board of regents shall then announce the list of names of nominees who have received approval but shall not publicize the names of those not receiving approval. The announcement shall contain contact information to submit correspondence regarding the nominees and provide a reasonable deadline for receiving correspondence. The board of regents shall establish a procedure for processing correspondence regarding nominees.

(c)  The board of regents shall utilize the work of the search committee to continue its search process.

(1)  The search committee shall provide a report to the board of regents regarding the qualifications of the candidates with its observations and recommendations.

(2)  The board of regents shall provide the candidates with a report containing full disclosure of the condition of the institution.

(d)  The board of regents may suspend, terminate, or restart its search at any time, but it may only elect a president of the college or university from a slate it submitted that received prior approval as described above. The President of Concordia University System (or a designee) shall attend the board of regents meeting at which an election occurs as

172

a guest and advisor. The board of regents may require the president-elect to accept or decline within fifteen days.

(e) If the president-elect declines the position, the board of regents is responsible for resuming the effort to fill the vacancy. Candidates from the approved slate shall remain eligible to be elected until a president has been elected and accepted the position.

*Concordia University System Faculties*

3.10.6.7    The faculty of each college or university of the Synod shall consist of the president, the full-time faculty and the part-time faculty.

(a) Part-time or temporary faculty members are distinguished by an appropriate title.

(b) Part-time or temporary faculty members shall hold nonvoting membership on the faculty.

3.10.6.7.1    The Concordia University System Board of Directors shall maintain in its policies a list of subject matters that each educational institution must address in its own policies and procedures, to include faculty appointments, employment contracts, contract renewal, contract termination, faculty organization, modified service, sabbaticals, and dispute resolution.

3.10.6.7.2    Except as otherwise provided in these bylaws, the board of regents on recommendation of the president of the institution shall appoint all full-time members of the faculty. The terms and conditions of every appointment shall be stated in writing and be in the possession of both the institution and the prospective faculty member before the appointment is consummated. Limitations of academic freedom because of the religious and confessional nature and aims of the institution shall be stated in writing at the time of the appointment and conveyed to the person being appointed. Faculty members, full- and part-time, shall pledge to perform their duties in harmony with the Holy Scriptures as the inspired Word of God, the Lutheran Confessions, and the Synod's doctrinal statements.

3.10.6.7.3    All initial appointments to persons serving on theology faculties, or teaching classes in or cross-listed with the theology department, shall require prior approval by a majority vote of the President of the Synod (or his designee), the chairman of the Council of Presidents (or his designee), and a member of the Concordia University System board selected by the chair, and shall include a thorough theological review. The three voters shall be ordained. The process shall be facilitated by the president of Concordia University System. Initial appointment refers to the initial engagement of any person to teach one or more theology courses, regardless of assigned academic department, other than faculty who teach theology courses no more than one academic year in any three-year period.

3.10.6.7.4    A formal procedure shall be in place to carry out performance reviews for all faculty on a regular basis.

3.10.6.7.5    Other than honorable retirement, termination of faculty employment may only be the result of the following:

(a)  professional incompetency;

(b)  incapacity for the performance of duty;

(c)  insubordination;

173

# Tab 4

# AMENDED AND RESTATED
# ARTICLES OF INCORPORATION OF
# THE LUTHERAN CHURCH—MISSOURI SYNOD

### Article I  Name, Duration, Registered Office, and Agent

- a. The name of this corporation shall be "The Lutheran Church—Missouri Synod."
- b. The period of duration of this corporation is perpetual.
- c. The address of the registered office of this corporation is 1333 S. Kirkwood Road, St. Louis, Missouri 63122.
- d. The name of the registered agent of this corporation is CT Corporation System.

### Article II  Objectives

The objectives and purposes of this corporation are:

- a. To unite in a corporate body Evangelical Lutheran congregations that acknowledge and remain true to the *Book of Concord* of the year of our Lord 1580 as a true exhibition of sound Christian doctrine.
- b. To assist in the establishment of Evangelical Lutheran congregations and preaching stations.
- c. To assist, advise, and protect member congregations and ministers of religion–ordained and ministers of religion–commissioned of The Lutheran Church—Missouri Synod, to provide for their ecclesiastical supervision in matters of doctrine and practice and their administration of official duties, and to acknowledge and assert the protections granted by the First Amendment to the Constitution of the United States.
- d. To support the establishment and maintenance of theological seminaries, colleges, universities, and other institutions of learning to train ministers of religion–ordained, ministers of religion–commissioned, and laity for service in the Evangelical Lutheran Church.
- e. To spread the Gospel of Jesus Christ throughout the world by every means possible.
- f. To provide assistance and resources to the congregations, schools, Sunday schools, preaching stations, and agencies of the Synod for the dissemination of the Christian Gospel.
- g. To establish and conduct all such enterprises and endeavors and to exercise such further power as may be necessary or expedient to carry out the objectives stated in the Constitution of The Lutheran Church—Missouri Synod.

### Article III  Membership

Membership in this corporation is held and may be acquired by congregations, ministers of religion—ordained and ministers of religion—commissioned, as defined by the Constitution and Bylaws of this corporation, who confess and accept the

confessional basis of Article II of the Constitution of The Lutheran Church—Missouri Synod. The member congregations of The Lutheran Church—Missouri Synod shall be the voting members of this corporation. Congregations shall exercise their voting power through clergy and lay delegates representing the member congregations in such number as may be determined from time to time in accord with the Constitution and Bylaws of The Lutheran Church—Missouri Synod.

### Article IV  Meetings

This corporation shall have general meetings, called conventions, at least once every three years, or as often as may be determined by resolution of the Synod in convention. Special meetings may be called in such manner as may be provided by the Constitution or Bylaws of The Lutheran Church—Missouri Synod. All officers and agencies of the Synod, defined in such Constitution or Bylaws, shall be responsible to the Synod convention, which is the ultimate authority of this corporation.

### Article V  Officers

This corporation shall have a board of directors of such number and qualifications and who shall be elected in such manner and for such terms of office as shall be set forth in the Constitution or Bylaws of The Lutheran Church—Missouri Synod. In addition, this corporation shall have other officers having such qualifications and who shall be elected or appointed in such manner and for such terms of office as provided for in the Constitution or Bylaws of The Lutheran Church—Missouri Synod.

The management authority and duties of the Board of Directors of this corporation shall be limited to the extent such authority and duties are delegated by the Constitution and Bylaws of The Lutheran Church—Missouri Synod to other officers and agencies of the Synod. The management authority and duties of the Board of Directors and such other officers and agencies shall be defined in the Constitution and Bylaws, and each of them shall be responsible to The Lutheran Church—Missouri Synod for the proper and prudent fulfillment of the authority and duties so designated to them. In the case of any conflict or uncertainty in determining the authority and duties of the officers and agencies, the opinions of the Commission on Constitutional Matters of The Lutheran Church—Missouri Synod interpreting the Constitution and Bylaws of The Lutheran Church—Missouri Synod shall be binding, unless and until overruled by a convention of the Synod. In case of any conflict or uncertainty relative to the applicability of the laws of the State of Missouri, such issues shall be resolved in accord with the provisions in the Constitution and Bylaws of The Lutheran Church—Missouri Synod.

### Article VI  Property

This corporation shall have power to acquire by gift, grant, demise, devise, bequest, purchase, or otherwise, property of every kind and description, real, personal, or mixed; to hold and use such property and deal with, or dispose of, any or all such property by sale, exchange, or gift, when necessary or expedient to carry out the objects and purposes of this corporation; to receive, maintain, and administer endowments, legacies, pension funds, retirement funds, and such other general or trust funds as may be necessary for the operation of said corporation or for the accomplishment of its purposes; provided that all such property shall be acquired, dealt with, or disposed of

204

in a manner not in conflict with the laws of the State of Missouri or of the laws of any state in which said property is located.

### Article VII  Bylaws

This corporation shall have such constitution and bylaws as may be necessary to accomplish its purposes and shall have power to create such corporations, boards, offices, and other subordinate bodies as may be necessary to accomplish its general and special objectives and in such bylaws assign responsibilities to those bodies.

### Article VIII  Amendments *

Amendments to these Articles of Incorporation may be made at any time at a general or special meeting of this corporation by the affirmative vote of a two-thirds majority of the delegates present and voting or by a simple majority of all delegates, whichever is less, provided such amendments are not inconsistent with the Constitution or Bylaws of The Lutheran Church—Missouri Synod or the Constitution and laws of the United States or the State of Missouri.

---

\* The Articles of Incorporation of the Synod were approved July 3, 1894. They were amended in their entirety by the synodical convention of 1956. Article IV was amended by the 1962 synodical convention and Article V, paragraph 2, by the 1965 convention. Both of the amendments were approved by the Circuit Court of the City of St. Louis.

The Synod at its 1967 convention, on advice of counsel, resolved to accept the provisions of the Missouri "General Not-for-Profit Corporation Act" enacted in 1959. This act simplifies corporate procedure and makes it unnecessary to apply to the Circuit Court of the City of St. Louis for approval of amendments. Only two changes were needed. In Article I, sections b, c, and d were added, and the clause in Article VIII for court approval of amendments was deleted.

In 1981, Article IV was amended to reflect adoption of a triennial convention schedule and Article V, to reflect changes to the voting and non-voting membership of the Board of Directors.

In 1998 changes were made in Articles I and V deleting references to specific officers, incorporating the objectives of the Synod by reference in Article II, and clarifying Articles III and IV regarding congregations as the voting members of the Synod and the conventions of the Synod as its general meetings. The Constitution and Bylaws were referenced in Articles VII and VIII.

In 2004 a change was made to Article III by deleting references to specific categories of ministers of religion—commissioned and referring to definitions provided in the Constitution and Bylaws. A second change, adding a second paragraph to Article V, clarifies that limitations are placed upon the Board of Directors and other officers and agencies of the Synod by its Constitution and Bylaws.

In 2007, Article V was amended by adding a final sentence that directs all disputes regarding the applicability of the laws of the State of Missouri to provisions for resolution of such disputes in the Constitution and Bylaws.

In 2010, numerous changes were made, especially to Article II Objectives, as the entire document was amended and restated to accurately reflect the operations of the Synod.

# <u>Tab 5</u>

# To Call Concordia University Texas Leadership to Repentance

### RESOLUTION 7-03

**Reports R1, R14, R64 (*CW*, 1–3, 64–69, 173–79); Overture 7-18 (*CW*, 359); Report LR67 (*TB*, 1:30–34)**

WHEREAS, Concordia University Texas (CTX), since its founding in 1926 by The Lutheran Church—Missouri Synod (LCMS), has operated and been governed under the Constitution and Bylaws of the Synod; and

WHEREAS, On Nov. 8, 2022, a majority of the CTX Board of Regents (BOR) voted to take action unilaterally to modify the CTX bylaws and articles of incorporation (the "governing documents") in an attempt to make the BOR a self-appointing, self-perpetuating board, no longer subject to the Bylaws of the Synod; and

WHEREAS, This purported separation was in direct contradiction to the Constitution and Bylaws, which the officers of the Synod and its agencies are obligated to uphold and implement (See Bylaw 1.4.3 and 1.4.5); and

WHEREAS, The Fourth Commandment requires that we honor our authorities, the Seventh Commandment protects the property of all, and the Ninth and Tenth Commandments protect us from all evil desires which lead to the breaking of all the other commandments; and

WHEREAS, This purported separation has caused great offense and division within the Church body; and

WHEREAS, Many throughout the Synod recognize that this action, if allowed to stand, will deprive the Synod and its congregations of an institution to train and certify men and women for professional church work and to aid the church in its mission to vigorously make known the love of Christ to all students enrolled at the university; and

WHEREAS, The report, "Ecclesiastical Visitation of Concordia University Texas" (Report R64, *Workbook*, 173–79), makes it clear that CTX has undergone significant mission and theological drift away from LCMS doctrine and practice on many issues, including Diversity, Equity, and Inclusion (DEI), especially programs that relate to sex, gender, marriage, and family, leading the university away in significant mission drift from the biblical positions and practices of the LCMS; and

WHEREAS, The President of the Synod, Synod Board of Directors (BOD), and Concordia University System (CUS) BOD admonished the CTX BOR that it did not have authority unilaterally to modify its governing documents, and that its purported separation, action was illegitimate, null and void and contrary to the Bylaws; and

WHEREAS, The President of the Synod, the Synod BOD, and the CUS BOD engaged in extensive communications with the CTX BOR, including in-person meetings and multiple correspondence ("Walking Away: Concordia University Texas Holds to 'Ill-Advised Course,'" *Reporter*, June 2023), in an effort to persuade the CTX BOR to correct its illegitimate and wrongful purported separation and to restore CTX's governing documents to be compliant with the Bylaws; and

WHEREAS, The Synod BOD submitted to the Commission on Constitutional Matters (CCM) several questions regarding the CTX BOR Nov. 8, 2022, action, and its purported attempt to unilaterally change CTX's governing documents, both with respect to the process CTX followed and with respect to the action taken; and

WHEREAS, Upon receiving the questions from the Synod BOD, the CCM, pursuant to Bylaw 3.9.2.2 (b), invited input from the President of the Synod, the Synod BOD, the CUS BOD, the boards of regents of all CUS universities, the CUS President, and Synod legal counsel, providing ample time for all of these interested persons and entities to provide input regarding the questions presented by the Synod BOD; and

WHEREAS, The CTX BOR, accordingly, was given notice of the questions submitted by the Synod BOD to the CCM and was given ample time to provide input with respect to those questions before the CCM issued its opinion; and

WHEREAS, CCM Opinion 23-3006 ("University Board of Regents Unilateral Separation") concludes, in part, as follows:

- Bylaw 3.3.4.10 authorizes the Synod Board of Directors to obtain from any agency of the Synod all records and other information relative to the property of the Synod and to matters over which the Board of Directors has general oversight.

- That every board and every university of the Synod is an "agency" of the Synod as defined in Bylaw 1.2.1 (a).

- That every agency of the Synod is bound by the Constitution, Bylaws, and Resolutions of the Synod (Bylaw 1.4.5) and therefore any action taken by an agency which contradicts the Constitution, Bylaws, or resolutions of the Synod is null and void.

- That a Synod university which wishes to change its articles of incorporation or its bylaws is required to receive advance approval from the CCM under Bylaw 3.9.2.2.3 (a) and failure to do so makes any such change null and void and unable to be put into practice.

- That the boards of regents and individual members of the CUS universities have a fiduciary duty to the Synod under Bylaw 3.10.6.4 (i).

- That a board of regents of a CUS university does not have authority to unilaterally change its governance model from that described in Synod Bylaws or to unilaterally amend its articles or bylaws without prior approval.

- That any purported change to the bylaws or articles of incorporation of a CUS university made without the approval of the CCM is "null and void."

- That individual members of a CUS university board of regents each have a duty to comply with the Synod Constitution Bylaws, and resolutions.

and

WHEREAS, Bylaw 3.9.2.2 (c) states that an opinion rendered by the CCM "shall be binding on the question decided unless and until it is overruled by a convention of the Synod"; and

WHEREAS, On April 4, 2023, the CTX BOR took action to affirm its illegitimate and wrongful purported separation; and

WHEREAS, Following the issuance of CCM Op. 23-3006, in a letter dated May 9, 2023, the Synod BOD, pursuant to its authority under Bylaw 3.3.4.10, as referenced in the CCM Opinion, requested information from the CTX BOR relating to the Synod BOD oversight responsibility; and

WHEREAS, In a letter from its chairman dated May 17, 2023, the CTX BOR refused to provide the information requested by the Synod BOD, asserting that CTX is not subject to the Bylaws; and

WHEREAS, The CTX BOR, the CTX president and certain CTX administrators have steadfastly refused to accept the advice and admonition of the President of the Synod, Synod BOD, and CUS BOD, and have overtly and directly defied the final and binding CCM Op. 23-3006; and

WHEREAS, Neither the CTX BOR nor any of its members nor the CTX president and administration have sought to overrule CCM Op. 23-3006; therefore be it

*Resolved*, That the Synod in convention affirm CCM Op. 23-3006 in its entirety; and be it further

*Resolved*, That the Synod in convention affirmatively conclude that the CTX BOR members who voted in favor of the April 4, 2023, action that affirmed the CTX BOR's purported separation have acted in direct conflict with the Constitution and Bylaws, as well as CCM Op. 23-3006; and be it further

*Resolved*, That the Synod in convention affirmatively conclude that the CTX president and those CTX administrators who have advocated for and supported the purported separation have acted in direct conflict with the Constitution and Bylaws; and be it further

*Resolved*, That the Synod in convention encourage the appropriate ecclesiastical supervisors to investigate and to determine any appropriate disciplinary action that should be taken against the CTX president and any member of the CTX BOR who is a rostered church worker; and be it further

*Resolved*, That the Synod in convention encourage the President of the Synod, LCMS BOD, the CUS and its board, and the appropriate district presidents to take all appropriate actions to address this situation; and be it further

*Resolved*, That the Synod in convention call upon the CTX president, those CTX administrators who have advocated for and supported the purported separation, and the CTX BOR to submit to the governance of the Synod as laid out in the Constitution and Bylaws; and be it further

*Resolved*, That the Synod in convention call upon the CTX president, those CTX administrators who have advocated for and supported the purported separation, and the CTX BOR to repent for having broken the Fourth,

25-50130.1615

Seventh, Ninth, and Tenth Commandments, and to apologize publicly for the illegitimate and wrongful purported separation; and be it finally

*Resolved*, That the President of Synod stand prepared to grant holy absolution to those who repent and want to do better by rescinding their actions resulting in reconciliation and restoration.

**Action:** Adopted (5)

[Yes: 716; No:283]

25-50130.1616

# **Tab 6**

The Lutheran Church—Missouri Synod

# Board of Directors

# Policy Manual



Edition of 5/19/2023

4.18.1.4     **Synod**: See Bylaw 1.1.1 (v).

4.18.1.5     **Litigation**: Every proceeding before in a court, of record or involving any administrative agency, regulatory agency, or quasi-judicial agency, or other secular or governmental body, whether such court or agency be local, state, federal, or foreign, and including any arbitration proceeding.

4.18.1.6     **Claim**: A demand for relief and every circumstance where litigation is anticipated or reasonably likely to ensue, and includes investigations by law enforcement agencies, administrative agencies or any other investigation where litigation could result.

4.18.1.7     **Litigation brought against the Synod:** Shall include litigation in which Corporate Synod is named as a party or interested person, or in which a board, commission, committee, officer, volunteer, missionary, or employee of Corporate Synod is named as a party or interested person and is alleged to have been acting in their capacity as such or on behalf or for the benefit of Corporate Synod.

### 4.18.2     Engagement of Legal Counsel

#### *Purpose*

4.18.2.1     To identify the parties responsible for appointing legal counsel for The Lutheran Church—Missouri Synod

#### *Policy*

4.18.2.2     The Board has the power and duty under the LCMS Bylaws to engage legal counsel for the guidance of the Board and advice to the officers and agencies of the Synod.

4.18.2.3     The Board selects general counsel for the Synod for a three-year renewable period. Such selection generally takes place at the first Board meeting of the calendar year after each regular LCMS Convention with the engagement or renewal to begin at the beginning of the subsequent fiscal year (July). The Board may change this selection process if in the best interest of Synod.

4.18.2.4     Except for the Boards' reservation of the right to select special counsel for legal matters of synod-wide significance (BOD Policy 4.14.2), the Board otherwise delegates to the Chief Administrative Officer the authority to engage special counsel (BOD Policy 4.18).

4.18.2.5     If it is deemed appropriate in the judgment of the Executive Committee of the Board that a second opinion be obtained or that independent counsel represents the Synod in any case, the Executive Committee is authorized to engage such special counsel for that case.

4.18.2.6     All officers and executives shall work through the Chief Administrative Officer concerning the use of the Synod's general counsel or other legal counsel.

#### *Procedure*

4.18.2.7     The selection or renewal of general counsel shall follow a procedure developed by the Board of Directors.

### 4.18.3     Initiating Litigation

#### *Purpose*

4.18.3.1     The initiation of litigation, lawsuit, arbitration, or administrative proceeding must be approved by the LCMS Board of Directors.

# **Tab 7**

Exhibit 1

## DECLARATION OF REV. DR. JOHN W. SIAS

STATE OF MISSOURI       §

COUNTY OF ST. LOUIS     §

1.       My name is Rev. Dr. John W. Sias. I am over the age of eighteen (18) years and fully competent in all respects to make this Declaration. I have personal knowledge of the facts stated herein and they are true and correct.

2.       I graduated from the University of Illinois – Urbana-Champaign with a Bachelor of Science degree in computer engineering in 1997. I subsequently earned both a master's degree in 1999 and a doctorate in 2005 in electrical engineering. After completing my Ph.D, I earned a Master of Divinity in 2009 from Concordia Theological Seminary in Fort Wayne, Indiana, and was declared qualified for the pastoral ministry by the faculty of the same. Thereafter, I served as a pastor of Mount Calvary Lutheran Church in Colstrip, Montana, and eventually also Concordia Lutheran Church, Forsyth, Montana, and Trinity Lutheran Church, Hysham, Montana, until August 2016. I am an ordained, called church worker and corporate officer of The Lutheran Church—Missouri Synod, a Missouri nonprofit corporation ("LCMS, Inc.") and have been so since taking office as its elected Secretary on September 1, 2016.

3.       I have reviewed Concordia University Texas's ("CTX") Original Petition ("Petition") in Cause No. D-1-GN-24-000358; *Concordia University Texas v. The Lutheran Church—Missouri Synod, an unincorporated association of Lutheran congregations, and The Lutheran Church—Missouri Synod, a Missouri Corporation*; in the 353rd Judicial District Court, Travis County, Texas (the State Court Lawsuit").

3.       I have also reviewed Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction and Failure to Join Indispensable Parties (Doc. 13) in this case, and CTX's Motion to Remand filed in Case No. 1:24-cv-00176-RP (Doc. 5) seeking to remand the State Court Lawsuit.

4.       In the Petition, the Motion to Dismiss and the Motion to Remand, CTX asserts claims against LCMS, Inc., and a previously unknown and in fact CTX-created fictitious entity called "The Lutheran Church – Missouri Synod, an unincorporated association of Lutheran congregations," which appears to be CTX's attempt at recasting and transforming the ecclesiastical denomination named The Lutheran Church—Missouri Synod (the "Synod") into a separate civil law entity, alongside the actual civil law entity the Synod has definitively established for itself in LCMS, Inc., the eponymous Missouri nonprofit corporation. However, the Synod does not exist as a separate civil entity from LCMS, Inc., and in fact, according to the express ecclesiastical law of the Synod, the Synod is not a civil law entity.

5.       There is a single civil law entity called The Lutheran Church—Missouri Synod (previously defined herein as "LCMS, Inc."), which was incorporated in the State of Missouri more than 125 years ago as a civil law reflection of its ecclesiastical denomination known as

Synod. Contrary to CTX's allegations, the Synod is not and has not been, at any relevant time, an unincorporated association of Lutheran congregations under civil law.

6.     The Synod is the church body or religious denomination in which self-governed Lutheran congregations, principally in the United States, voluntarily profess and seek to maintain and live out a common faith in accordance with the church body's Constitution and Bylaws of the Synod, which define their shared religious beliefs and ecclesiastical polity.  Delegates of the Synod's member congregations have since 1847 met regularly in convention, along with representatives of individual members (ministers) and subordinate governing bodies formed by the Synod in accordance with the Constitution and Bylaws, to exercise the mind of the church on matters of its doctrine and religious practice and to exercise governance of the church body.

7.     The Synod, while acting in convention, has specifically declared that Synod refers to member congregations and its agencies and that Synod "is not a civil law entity." (Bylaw 1.2.1 (v).)  The Synod, instead of operating as a civil law entity, has created LCMS, Inc., the Missouri nonprofit corporation, to carry out its secular functions, including the ability to sue and be sued. The corporation LCMS, Inc., originally formed in 1894 as the "German Evangelical Synod of Missouri, Ohio, and other States," has had its governing documents amended by its member congregations from time to time, including to establish its present name, which is identical to that of the Synod. The Missouri nonprofit corporation LCMS, Inc., holds as its Constitution and Bylaws the selfsame Constitution and Bylaws of the Synod, the church body or ecclesial denomination. The members of the nonprofit corporation are the selfsame member congregations and individual ministers of the Synod. The officers and board of directors of the Synod are those of the nonprofit corporation, exercising functions, with regard to the one, ecclesial, and with regard to the other, legal. The Synod convention is the "ultimate authority of the corporation" just as it is the "legislative authority" of the ecclesial denomination. Any attempt to declare the member congregations of the Synod to constitute a purported unincorporated association would run roughshod over their long-standing, definitive, and exclusive exercise of their right to incorporate and represent themselves before the state, as to their common activities, as LCMS, Inc.

8.     Synod is not a civil law entity. It does not, therefore, have a registered agent anywhere, including Texas.  The Synod does not directly own any property.   All property of the Synod is owned by LCMS, Inc., or by other corporations to whom Synod or its Board of Directors (and that of LCMS, Inc.) has delegated specific authority to hold title to such property.  The Synod does not consist of, in itself and apart from its corporation LCMS, Inc., a legal form of association, which it explicitly disclaims—"The Synod…is not a civil law entity" (*see* Bylaw 1.2.1 (v)). The Synod does not do business in Texas, directly owns no assets in Texas (or elsewhere), does not enter into contracts, does not have any bank accounts and has at no relevant time done business in a civil sense.  The Synod incorporated LCMS, Inc., in 1894 in part to handle its civil law affairs and to exercise civil law functions as is contemplated under its Constitution or Bylaws.  Any business dealings of the Synod are done through LCMS, Inc., or by other corporations to whom the Synod or its Board of Directors (and that of LCMS, Inc.) has assigned specific authority.  With the exception of the State Court Lawsuit, the Synod has never, to my knowledge, information, and belief, sued or been sued in a civil court.  Whereas, on the other hand, the LCMS, Inc., has been a party to litigation on behalf of the Synod.  Where the Synod as an ecclesial body has interests at law, LCMS, Inc., is *the* entity that represents it before the law.

2

9. CTX argues that Synod's Board of Directors, not LCMS, Inc., is the legal representative of the Synod, selectively reciting and interpreting Synod's and LCMS's Const. Art. XI E 2, "The Board of Directors is the legal representative…of The Lutheran Church—Missouri Synod." CTX states that therefore "Synod's Board of Directors, not LCMS, Inc., is the legal representative of the Synod." This is a false dichotomy, as: (1) the Constitution and Board of Directors of the Synod are also the Constitution and Board of Directors of LCMS, Inc., (Art. of Inc. VII), and the one Board of Directors "shall have the powers and duties that have been accorded to it by the Articles of Incorporation, Constitution, Bylaws, and resolutions of the Synod, and the laws of the State of Missouri" (Bylaw 3.3.4.2); (2) Synod is not a civil law entity but has formed LCMS, Inc., to be its civil law entity (Art. of Inc.); and (3) Const. Art. XI E 2 continues that "For the purposes of this article, the Lutheran Church—Missouri Synod includes both the Synod formed by this Constitution and the Missouri corporation formed by the Synod." Thus, Const. Art. XI E 2 is read correctly to state that the one Board of Directors, which is of both the Synod and LCMS, Inc., is legal representative of the Synod precisely by directing the legal actions of LCMS, Inc., the Synod's civil law entity. There is thus no inconsistency between the statements that the LCMS, Inc., has the authority to prosecute suits on behalf of the Synod and that the Board of Directors (of both Synod and LCMS, Inc.) does so, doing so as it necessarily does by directing such actions of the Synod's civil law entity, LCMS, Inc.

10. The Synod speaks on matters of public importance to the church body in society pursuant to its First Amendment rights under the United States Constitution. At times, it joins with the other interested parties in filing amicus briefs on such important matters to assert the Synod's interests and rights as those recognized and to be protected by the First Amendment to the Constitution of the United States. To the extent that Synod must engage in the civil realm to assert those rights, it does so through LCMS, Inc., its eponymous civil law entity, one of the stated purposes of which is to "acknowledge and assert the protections granted by the First Amendment to the Constitution of the United States" (Art. of Inc. II c). Consistent with the LCMS, Inc.'s historical practice in participating as *amicus curiae* on behalf of Synod, and as is the case with the numerous other *amicus curiae* under which the Synod's rights have been asserted, with respect to the amicus brief cited by CTX in its Motion to Dismiss, LCMS, Inc., asserted those rights on behalf of Synod, utilizing legal counsel engaged by LCMS, Inc.

11. The member congregations of the Synod and of LCMS, Inc., have an ecclesial and civil legal existence apart from the ecclesial and legal existence of LCMS, Inc., and Synod. They have associated ecclesiastically as the Synod and formed LCMS, Inc., to be the Synod's civil law entity for the furtherance, before the law, of their common objectives, before the law in the civil realm.

12. The Synod does not take part in any civil law management decisions of, or own, by virtue of their membership, the property of, any of its member congregations, including those in Texas, since it has no authority under its Constitution or Bylaws to do so: "with respect to the individual congregation's right of self-government [Synod] is but an advisory body" and "membership of a congregation in the Synod gives the Synod no equity in the property of the congregation" (Const. Art. VII).

13.   I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on May 10, 2024.

_____

Rev. Dr. John W. Sias

# Tab 8

EXHIBIT 1

<u>DECLARATION OF REV. DR. JOHN W. SIAS</u>

STATE OF MISSOURI       §

COUNTY OF ST. LOUIS     §

**The Polity of The Lutheran Church—Missouri Synod
based on Doctrine and Historical Practice**

1.       My name is Rev. Dr. John W. Sias. I am over the age of eighteen (18) years and fully competent in all respects to make this Declaration. I have personal knowledge of the facts stated herein and they are true and correct.

2.       The original members[1] of The Lutheran Church—Missouri Synod ("the Synod")[2] fled a German state church that had forced—in the interest of the state—those holding incompatible beliefs to worship together as though they were unified in their beliefs. In America, they realized—through personal experience and interactions with others—the dangers of concentrating power to impose organizational regulations on congregations that should be free. Nonetheless, they understood their faith called them to common endeavor. Thus, at the founding of the Synod in 1847, the members established a unique polity—to which the Synod still adheres and diligently pursues, and which is the form of governance before the Court— based on two principal doctrinal convictions:

3.       First, the Scriptures are the Word of God, and the Lutheran Confessions[3] are a "true and unadulterated statement and exposition of the Word of God" (Const. Art. II). This Word of God, which is clear and gives light—and not the word of any man or men—should rule in the churches (Const. Art. VIII C). C.F.W. Walther, the Synod's founding president, describes the church as: "not of this world" (John 18:36); existing "to bear witness to the truth" (John 18:37); and free (Gal. 4:26) (Walther, "The Synod Has No Power But the Word of God," 1848 Synodical Address (the "Address")). A true and correct copy of the Address is attached as Exhibit A. He further describes the church as a kingdom in which Christ has all the power as King (John 18:37), *the* Good Shepherd (John 10:11, 14), the "One [who] is your Master, even Christ" (Matt. 23:8, 10), and the "head over all things to the church" (Eph. 1:22–23). The means of Christ's rule

---

[1] Membership in the Synod is held and may be acquired by congregations and individuals, ministers of religion—ordained ministers of religion—commissioned, of the Evangelical Lutheran Church who confess and accept the confessional basis of the Synod confession. (Const. Art. V) The congregations, represented by pastoral and lay delegates, are the voting members of the Synod (Const. Art. V A, IX).

[2] The present name, since 1947; at its founding, the church body was called "*Die deutsche evangelisch-lutherische Synode von Missouri, Ohio, und andern Staaten*" or "The German Evangelical Lutheran Synod of Missouri, Ohio, and Other States."

[3] These are: "All the Symbolical Books of the Evangelical Lutheran Church as a true and unadulterated statement and exposition of the Word of God, to wit: the three Ecumenical Creeds (the Apostles' Creed, the Nicene Creed, the Athanasian Creed), the Unaltered Augsburg Confession, the Apology of the Augsburg Confession, the Smalcald Articles, the Large Catechism of Luther, the Small Catechism of Luther, and the Formula of Concord." (Const. Art. II)

in the church—and in the Synod—is "the Word, accompanied and sealed by the Holy Sacraments (Matt. 28:18–20). *Id.*

4.      Second, the congregations, because they have the Word and the Sacraments, are the "rightful possessor[s] of all rights and powers that Christ has procured for and given to his church" (Walther, *Church and Office*, Church Thesis VII (the "Thesis")).  A true and correct copy of the Thesis is attached as Exhibit B.  They and not officers or institutions are the original possessors of spiritual authority in the church. The Synod's relationship to its congregations is therefore purely advisory (Const. Art. VII), intentionally having "only the power of Word [of God], and of convincing." (Walther, 1848 Synodical Address, op. cit.)

5.      Thus, the Synod is non-hierarchical and has no directive power over its member congregations, recognizing that they, not it, are the seat of church authority. Through the Synod, the congregations, the original possessors of spiritual authority, exercise their authority collectively (acting in convention by adopting regulations and resolutions) to direct the work the Synod and its agencies do as extensions of their own ministry, for them and on their behalf (Bylaws 1.3.3, 1.4.1).

6.      In an address at the 1896 Synod convention (the convention that ratified the Synod's Articles of Incorporation, their having been filed at the convention's prior direction in 1894), Francis Pieper, a foremost theologian and later president of the Synod, called church government a *doctrine*, rooted in the *doctrine of the church*, identifying as its means of government the Word of God, and as its master, Christ alone (Matt. 23:8). The church, while subject to civil authority in civil matters (Rom. 13:1), does not accept "any commandments from secular authorities in ecclesiastical matters." (Pieper thanks God for the "separation of church and state…which exists in this country.") The church also does not accept imposition of human rules from those in the church who presume to have any power other than that given by Christ to the congregation.  (F. Pieper, "*Kirche und Kirchenregiment*," in *Proceedings* (23), 1896).  A true and correct copy of the Proceedings is attached as Exhibit C.

7.      Toward the end of his address, Pieper asks, **"Why, then, have a Synod, if God's Word is enough?"** He answers that question by saying, **"Through the Synod, we want to be helpful to one another so that God's Word, and nothing other than God's Word, governs among us." "The purpose of our Synod community is stated in our Synod** *Handbook***, among other things: 'preservation and promotion of the unity of the pure confession' [and] 'supervision of the unity and purity of doctrine.'…The ecclesiastical institution of the Synod is not intended to establish a dominion alongside and beyond the Word of God, but rather the entire Synod institution is to serve the sole dominion of the Word of God."** (F. Pieper, op. cit.) (emphasis added).

8.      The Synod has thus established offices of ecclesiastical supervision to "conserve and promote the unity of the true faith" and "provide a united defense against schism, sectarianism (Rom. 16:17), and heresy" (Const. Art. III) among its congregations and agencies. The president is assigned (with various mechanisms) to exercise "supervision regarding the doctrine and administration" of the synodical enterprise, "to see that all the aforementioned act in accordance with the Synod's Constitution, to admonish all who in any way depart from it, and, if such admonition is not heeded, to report such cases to the Synod" (Const. Art. XI B 1–3). Bylaws elaborate further means of doctrinal regulation of Synod agencies. Special attention is given to the synodical institutions of higher education, in part because they produce pastors,

teachers, and other church workers for the service of member congregations (Const. Art. III 3, 5; Bylaws 3.3.1.1.1 (c), 3.3.1.2 (a), 3.6.6–3.6.6.1, 3.10.6–3.10.6.1, etc.).

9.      The Synod is unable to carry out its mission in the world while remaining strictly in a spiritual plane.  Actual practice of religion, including establishing higher education institutions to produce pastors, teachers and other church workers, involves acquiring and owning property, employing workers, and managing assets. Therefore, the Synod has established civil law entities (Const. Art. IV).

10.      Foremost among these is the entity now titled The Lutheran Church—Missouri Synod ("LCMS, Inc.") ("Inc." is not part of the official corporate name, which is shared identically with the name of the "Synod," "The Lutheran Church—Missouri Synod.")  This Missouri corporation, created in 1894, has a board of directors charged to supervise and oversee property, business, and legal affairs.  A true and correct copy of the 1894 Articles of Incorporation are attached as Exhibit D.  LCMS, Inc. was created "with the view to fully carrying out the original objects of [Synod's] creation [in 1847] and the more readily to continue and perpetuate its labors" (1894 Art. of Inc, Preface); to "unite in a corporate body the members…who remain true to and acknowledge as a true exhibition of sound Christian doctrine the Book of Concord…; to receive, acquire, hold, manage and control the real and personal property and franchises which may hereafter be acquired by this corporation and such as have heretofore been obtained and are now held by different educational corporations, under its direction and for its advancement; and to continue and perpetuate the good work of disseminating the Gospel throughout the world" (1894 Art. of Inc., Art. II). *Id.*

11.      Through LCMS, Inc., and other civil law structures established for particular purposes (such as Concordia Plan Services, which administers worker benefit plans), the Synod keeps the tangible means of its common work subject to its doctrine and the decisions of its congregations. It also explicitly "acknowledge[s] its responsibility to be subject to civil authority [through its civil law entities]… [, and] intends to retain all authority and autonomy allowed a church under the laws and Constitution of the United States and the State of Missouri" (Bylaw 1.2.1 (f)(2)).

12.      In addition to the convention of its membership, which is the supreme authority of the Synod, subject only to the Word of God, the Synod has its own judicatory body for interpreting the Constitution, Bylaws, and resolutions of the Synod, whose decisions are binding (Bylaw 3.9.2.2).  This serves as the Synod's internal means of dealing with "any conflict or uncertainty in determining the authority and duties of officers and agencies[4]" within the overall governance of the Synod (Art. of Inc. V).

13.      The polity as here described is a matter of the ecclesiastical autonomy of the Synod to facilitate ecclesiastical governance through religiously informed conscience.

---

[4] An "agency" is an instrumentality other than a congregation or corporate Synod, whether or not separately incorporated, which the Synod in convention or its Board of Directors has caused or authorized to be formed to further the Synod's Objectives (Constitution Art. III).

(1) Agencies include each board, commission, council, seminary, university, college, district, Concordia Plan Services, and each synodwide corporate entity.

(2) The term "agency of the Synod" does not describe or imply the existence of principal and agency arrangements as defined under civil law. (Bylaw 1.2.1)

14.     The Synod has no bank accounts, owns no real property and has no civil law interests. LCMS, Inc., is the incorporation of the Synod and it is LCMS, Inc. that is responsible for temporal matters that may relate to the functioning of the Synod in the civil law realm. LCMS, Inc. owns property, both real and personal, and engages in all types of other civil law interests.

15.     I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on December 20, 2024.

_____

The Rev. Dr. John W. Sias

# Tab 9

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| THE LUTHERAN CHURCH-MISSOURI SYNOD, *Plaintiff* | § § § § | |
| v. | § § | No. 1:23-CV-01042-DAE |
| DONALD CHRISTIAN, ET AL., *Defendants* | § § § | |
| | | |
| CONCORDIA UNIVERSITY TEXAS, *Plaintiff* | § § § § | |
| v. | § § | No. 1:24-CV-00176-DAE |
| THE LUTHERAN CHURCH-MISSOURI SYNOD, ET AL., *Defendants* | § § § § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

TO:  THE HONORABLE DAVID A. EZRA
     UNITED STATES SENIOR DISTRICT JUDGE

Before the Court are Defendants Concordia University Texas ("CTX"), Donald Christian ("Christian"), and Christopher Bannwolf's ("Bannwolf") motion to dismiss for lack of subject-matter jurisdiction and failure to join indispensable parties, Dkt. 13 in case 1:23-cv-01042-DAE ("the 2023 case"), and Plaintiff CTX's motion to remand, Dkt. 5 in related case 1:24-cv-00176-DAE ("the 2024 case").[1] After the

---

[1] Docket entries 10, 13, and 17 in case 1:24-cv-00176-DAE are duplicates of docket entries 23, 26, and 30 in case 1:23-cv-01042-DAE, respectively.

25-50130.3081

District Judge granted the parties' agreed motion to consolidate these cases for the determination of the motions at issue here, Dkt. 18 (2023 case), the Judge referred the motions for a report and recommendation by the undersigned.[2] Having considered the parties' motions and all related briefing, the undersigned recommends that the District Judge grant both motions.

## I.    BACKGROUND

The Lutheran Church – Missouri Synod ("the Synod") is a religious denomination governed by its constitution and bylaws. *See* Dkts. 11-1 (constitution), 11-2 (bylaws) (2023 case). The eponymous Lutheran Church – Missouri Synod ("LCMS") is a Missouri nonprofit corporation that, according to LCMS, is the Synod's "civil law reflection." Dkt. 10, at 6-7 (2023 case). Referred to as "Corporate Synod" in the Synod's bylaws, LCMS acknowledges therein its "responsibility to be subject to civil authority." Dkt. 11-2 (2023 case).

CTX is a Lutheran university in Austin, Texas, founded by affiliates of the Synod's predecessor organization. Dkt. 13, at 3 (2023 case).[3] LCMS states that since CTX's inception, the Synod and LCMS have supported CTX with financial resources. Dkt. 11, at 9 (2023 case). In particular, LCMS alleges that it has deeded property in trust to CTX and provided funding. *Id.* LCMS also states that it conditionally waived its reversionary interest in the CTX main campus property to allow CTX to purchase

---

[2] This case was reassigned to Senior District Judge David A. Ezra on August 9, 2024. Dkt. 31.

[3] The parties do not dispute that CTX is a resident of Texas. Dkt. 11, at 1 (2023 case) (admitting that CTX is a Texas non-profit corporation); Dkt. 13, at 3 (2023 case).

new campus property—an interest LCMS asserts it possesses, and that CTX has failed to recognize, in the new property. *Id.*

The Synod's bylaws refer to CTX as the Synod's "agency," which is defined as "[a]n instrumentality … which the Synod in convention or its Board of Directors has caused or authorized to be formed to further the Synod's objectives."[4] As such, LCMS contends that CTX is subject to the Synod's bylaws and constitution and that CTX's board of regents governs and operates the university as a fiduciary of the Synod. Dkts. 11, at 7, 12; 11-2, at 148 (2023 case).

In its 2023 suit, LCMS alleges that after taking a series of steps to support CTX's eventual separation from the Synod—including changing the purpose of CTX as a corporation and applying for CTX's own 501(c)(3) status—the CTX board of regents amended various governing documents to "fundamentally change [CTX's] standing with the Synod." Dkt. 11, at 12 (2023 case). LCMS asserts that these purported amendments were made in violation of Synod bylaws, under which the amendments would have required the approval of the Synod's board of directors. *Id.*; Dkt. 11-2, at 112 (2023 case); *see, e.g.*, Dkt. 11-13, at 4 (2023 case) (adding language to the CTX bylaws stating that CTX is "aligned with, but not subject to the authority of or governance by the Lutheran Church – Missouri Synod"). According to LCMS, the amendments inhibit the Synod's ability to participate in CTX's governance and "make it clear that the CTX [board of regents] now only recognizes its own governance

---

[4] LCMS emphasizes that as an agency of the Synod, CTX is not "a civil law agent in a civil law principal-agent relationship, but rather an instrumentality formed or authorized by the Synod to be formed to accomplish the Synod's objectives[.]" Dkt. 11, at 4 n.4 (2023 case).

authority and no authority of the Synod" or its bylaws. Dkt. 11, at 16 (2023 case). Specifically, LCMS asserts that the amendments take away the Synod's ability to elect or appoint any CTX regent and "remove [the Synod's] mechanisms of ecclesiastical supervision" over CTX. *Id.* at 16-18.

LCMS further alleges that these actions were "orchestrated" by CTX president Christian and CTX board chairman Bannwolf, who are named as defendants in the 2023 suit. *Id.* at 18. Additionally, LCMS sues John Does 1-12, who LCMS states are "unknown individuals who serve or served at the relevant time as [CTX regents] and unlawfully" voted in favor of the amendments at issue. *Id.* at 2. Through the 2023 suit, LCMS seeks a declaratory judgment voiding the amendments at issue, along with other forms of declaratory relief. *Id.* at 23-24. It also brings claims of breach of contract against CTX (in the alternative, promissory estoppel) and breach of fiduciary duty against all defendants. *Id.* at 24-30. Finally, it claims that CTX and Donald Christian violated the Texas Business Organizations Code, and that Christian tortiously interfered with the contract between CTX and LCMS. *Id.* at 30-33.

In January 2024, approximately four months after LCMS filed its 2023 suit, CTX sued LCMS and the Synod in Travis County, Texas. In the 2024 suit, CTX seeks declaratory judgment that the CTX board of regents had authority to make the amendments to CTX's governing documents, that the Synod and LCMS do not have the authority to elect regents to CTX's board, that CTX did not breach any fiduciary duty owed to the Synod or LCMS, and that neither the Synod nor LCMS is entitled

25-50130.3084

to any reversionary interest in CTX's new campus property or to damages associated with the loss of that property interest. Dkt. 1-1 (2024 case).

LCMS removed CTX's 2024 suit to federal court. *See* Dkt. 1 (2024 case). CTX now moves to remand. Dkt. 5 (2024 case). Arguing that the Synod is both a non-diverse (Texas) defendant capable of being sued and a proper party to this case, CTX asserts that it would be improper for this Court to exercise jurisdiction over any claim. *Id.* at 10-11. CTX also moves to dismiss LCMS's 2023 suit against it for lack of subject-matter jurisdiction and failure to join indispensable parties. Dkt. 13 (2023 case). It states that the Synod is the real party in interest, the real party in controversy, and an indispensable party that must be joined, and that the Synod's joinder as a Texas entity defeats this Court's diversity jurisdiction. *Id.* at 10-20. LCMS responds that the Synod is not a "legal entity" capable of being sued. Dkt. 10, at 2 (2024 case). As such, LCMS argues, the Synod is not a proper party to either suit, and this Court may exercise jurisdiction over both suits as between citizens of Texas (CTX and other defendants) and a citizen of Missouri (LCMS). *Id.*

## II.    MOTION TO DISMISS

### A.    Legal Standards

To establish Article III standing, a plaintiff must demonstrate that she has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). "Standing is an issue upon which the party invoking federal jurisdiction, the plaintiff, bears the burden of

5

persuasion." *Friends of the Earth, Inc. v. Crown Cent. Petroleum Corp.*, 95 F.3d 358, 361-62 (5th Cir. 1996); *see also Tex. Cable & Telecomms. Ass'n v. Hudson*, 265 F. App'x 210, 216 (5th Cir. 2008) ("The burden of establishing the elements of standing is on the party seeking jurisdiction in the federal courts.") (citing *Lujan*, 504 U.S. at 561). In addition to these constitutional limitations, courts impose "prudential limitations on justiciability includ[ing] that a plaintiff generally may not rest [its] claim to relief on the legal rights of third parties even if [it] has alleged injury sufficient to satisfy article III." *Ensley v. Cody Resources, Inc.*, 171 F.3d 315, 319 (5th Cir. 1999). "The real party in interest is the person holding the substantive right sought to be enforced …. Conversely, a party not possessing a right under substantive law is not the real party in interest with respect to that right and may not assert it." *Farrell Const. Co. v. Jefferson Par., La.*, 896 F.2d 136, 140 (5th Cir. 1990) (citing *United States v. 936.71 Acres of Land*, 418 F.2d 551, 556 (5th Cir. 1969); *Lubbock Feed Lots, Inc. v. Iowa Beef Processors*, 630 F.2d 250, 256-57 (5th Cir. 1980)); Fed. R. Civ. P. 17(a) ("An action must be prosecuted in the name of the real party in interest."). "A federal court sitting in diversity must look to state law to determine which party holds the substantive right." *Farrell*, 896 F.2d at 140.

## B.    Discussion

In their motion to dismiss the 2023 case, Defendants CTX, Christian, and Bannwolf (collectively, "Defendants"), argue that the Synod is a citizen of Texas as well as a real party in interest, real party in controversy, and an indispensable party. Dkt. 13, at 14-21 (2023 case). Fundamentally, Defendants argue that this case cannot

25-50130.3086

proceed without the Synod, and this Court should either dismiss the action or join the Synod—a move that would defeat this Court's diversity jurisdiction. *Id.* LCMS responds that the Synod is not a Texas citizen and—paradoxically, given its repeated assertions that the Synod created LCMS—that the Synod is not actually an entity separate from LCMS. *See* Dkt. 10, at 19 (2024 case). Therefore, according to LCMS, the Synod is not a proper party to this suit, and this Court should *not* dismiss the case or join Synod. *Id.* at 3.

The undersigned begins with Defendants' argument that this action should be dismissed for failure to prosecute in the name of the real party in interest. Fed. R. Civ. P. 17(a). While LCMS asserts claims for relief on behalf of itself and the Synod, the Synod holds the substantive rights at issue here. *See, e.g.*, Dkt. 11, at 23 (2023 case) (demonstrating that LCMS brings claims "on behalf of itself and the Synod"). In its complaint, LCMS asks this Court to award declaratory relief restoring all its "rights, title, and interest related to CTX." Dkt. 11, at 34 (2023 case). Yet, in its response to the motion to dismiss, LCMS states that the Synod is not a legal entity "separate" from LCMS, and in fact LCMS was created to carry out the Synod's secular functions. Dkt. 10, at 6 (2024 case). To the extent LCMS asserts rights with respect to any Defendant, those rights are the Synod's. *Id.* at 8-9 ("In short, where Synod as an ecclesiastical body … has interests at law, LCMS, Inc. is the legal entity formed by Synod that represents Synod before the law."); *cf. S. Cent. Jurisdictional Conference of United Methodist Church v. S. Methodist Univ.*, 674 S.W.3d 334, 383-84 (Tex. App—Dallas 2023, pet. granted) (permitting a church conference to bring

certain claims on its own behalf, as opposed to permitting a *separate entity* to bring claims on behalf of a religious denomination).

LCMS cannot show that it possesses rights with respect to Defendants that are independent of the Synod. *See Friends of the Earth*, 95 F.3d at 361-62 (imposing the burden to show standing on the party invoking federal jurisdiction). For example, even if LCMS held title to the real property at issue in this case, it would belong to the Synod: the Synod's bylaws acknowledge that LCMS (as "Corporate Synod") may hold title to certain property, but that property is considered property of the Synod. *See* Dkt. 11-2, at 3 (defining "property of the Synod" as "[a]ll assets, real or personal, tangible or intangible, whether situated in the United States or elsewhere, titled or held in the name of corporate Synod, its nominee, or an agency of the Synod"); *Id.* at 148 (showing that ownership of university property is vested in the Synod).

Further, to the extent the Synod's governing documents constitute a contract between CTX and the Synod, LCMS does not show why it is a party to that contract. *See* Dkt. 11, at 24 (2023 case). In addition to its claims for declaratory relief, LCMS brings a breach-of-contract claim against CTX. While the analogy to corporations is an odd fit here given that the Synod is an unincorporated association,[5] under Texas law, "a corporation's governing documents … are a contract both between the members or shareholders themselves and between the corporation on one side and the individuals or shareholders on the other." *S. Methodist Univ.*, 674 S.W.3d at 363. LCMS does not show that it is CTX's corporate parent or that LCMS is merely a

---

[5] *See infra* Part III(B).

25-50130.3088

"member" or "shareholder" of the Synod. The same reasoning applies to LCMS's tortious-interference-with-contract claim against Christian, which relies on the existence of a contract between LCMS and CTX. *See* Dkt. 11, at 33 (2024 case) (setting out tortious interference with contract claim). Relatedly, LCMS fails to demonstrate why any Defendant owes fiduciary duties to LCMS as opposed to the Synod. *See* Dkt. 11, at 28-29 (2023 case). And as for LCMS's Texas Business Organizations Code claims, it similarly fails to show why duties any Defendant owes under that Code flow to LCMS as opposed to the Synod. *See id.* at 30-32.

The undersigned notes that if permitted to sue in only LCMS's name, the Synod would be positioned to invoke the subject-matter jurisdiction of the federal courts in every state except Missouri, regardless of the citizenship of the Synod's members. Finally, this Court's dismissal of the 2023 case would not foreclose LCMS and the Synod from seeking relief in state courts. For the foregoing reasons, the undersigned recommends that the District Judge grant Defendants' motion to dismiss, Dkt. 13 (2023 case).[6]

---

[6] Rule 17(a)(3) provides that this Court "may not dismiss" this action for failure to comply with its requirements "until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action." Fed. R. Civ. P. 17(a)(3). The Fifth Circuit has recognized that the purpose of this provision is to "'prevent forfeiture when determination of the proper party to sue is difficult or when an understandable mistake has been made.'" *Wieburg v. GTE Sw. Inc.*, 272 F.3d 302, 308 (5th Cir. 2001) (quoting Fed. R. Civ. P. 17(a) advisory committee's note to 1966 amendment). The district court retains discretion to dismiss the action where there was no such understandable mistake. *See id.*

9

### III. MOTION TO REMAND

#### A. Legal Standards

Federal courts are courts of limited jurisdiction possessing "only that power authorized by Constitution and statute." *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). "It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Energy Mgmt. Servs., LLC v. City of Alexandria*, 739 F.3d 255, 258-59 (5th Cir. 2014) (quoting *Kokkonen*, 511 U.S. at 377).

A defendant may remove any civil action from state court to a district court of the United States that has original jurisdiction. 28 U.S.C. § 1441(a). District courts have original jurisdiction over all civil actions that are between citizens of different states and involve an amount in controversy more than $75,000, exclusive of interest and costs. 28 U.S.C. § 1332(a).[7] Diversity jurisdiction "requires complete diversity— if any plaintiff is a citizen of the same State as any defendant, then diversity jurisdiction does not exist." *Flagg v. Stryker Corp.*, 819 F.3d 132, 136 (5th Cir. 2016) (citing *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267 (1806)). "A civil action otherwise removable solely on the basis of [diversity jurisdiction] may not be removed if any of

---

[7] In removals based on diversity jurisdiction under 28 U.S.C. § 1332(a), "the sum demanded in good faith in the initial pleading shall be deemed to be the amount in controversy." 28 U.S.C. § 1446(c)(2). CTX does not dispute that the amount-in-controversy requirement is met. *See* Dkt. 1, at 3-4 (2024 case).

the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b)(2).[8]

However, "the improper joinder doctrine constitutes a narrow exception to the rule of complete diversity." *Cuevas v. BAC Home Loans Servicing, LP*, 648 F.3d 242, 249 (5th Cir. 2011). To establish improper joinder, the removing party has the "heavy" burden, *id.*, to demonstrate either: "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004). Only the doctrine's second prong is before the Court here.

Under the second prong of the improper-joinder doctrine, a defendant must establish "that there is no possibility of recovery by the plaintiff against an in-state defendant," which stated differently means "that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Id*. A court evaluates the reasonable basis of recovery under state law by "conduct[ing] a Rule 12(b)(6)-type analysis" or "pierc[ing] the pleadings and conduct[ing] a summary inquiry" where plaintiff has "misstated or omitted discrete facts that would determine the propriety of joinder." *Id*.; *see also Int'l Energy Ventures*

---

[8] In its notice of removal, LCMS argues that this Court has jurisdiction over the 2024 case because it implicates federal questions. Dkt. 1, at 2 (2024 case). However, because CTX's state-court complaint does not present a federal claim, this case may not be removed based on federal-question jurisdiction. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) ("The presence or absence of federal-question jurisdiction is governed by the well-pleaded complaint rule, which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint. The rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." (internal citations omitted)).

11

*Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 207 (5th Cir. 2016) (stating that a court may use either analysis, but it must use one and only one). If there is a reasonable basis for recovery under state law for any of CTX's claims against the non-diverse defendant, this Court must remand. *See Smallwood*, 385 F.3d at 573.

In conducting a 12(b)(6)-type analysis, federal pleading standards apply. *Int'l Energy Ventures*, 818 F.3d at 207. Accordingly, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although "detailed factual allegations" are not necessary, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The statements in the complaint must be sufficiently detailed to "give the defendant fair notice of what the … claim is and the grounds upon which it rests." *Id.*

The party seeking removal "bears the burden of establishing that federal jurisdiction exists and that removal was proper." *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002). Any doubts as to the propriety of removal are construed in favor of remand. *Smith v. Bank of Am. Corp.*, 605 F. App'x 311, 314 (5th Cir. 2015). A district court is required to remand the case to state court if, at any time before final judgment, it determines that it lacks subject-matter jurisdiction. 28 U.S.C. § 1447(c).

## B.     Discussion

In support of its motion to remand, CTX argues that the Synod has capacity to sue and be sued, and that because the Synod is a non-diverse party to the removed 2024 suit, this Court may not exercise diversity jurisdiction over that suit. Dkt. 5, at 2 (2024 case). LCMS responds that because the Synod is not capable of being sued, it is improperly joined in this suit. Dkt. 10, at 21 (2024 case).

First, LCMS cannot show that the Synod is not a citizen of Texas for the purposes of diversity jurisdiction. Neither party offers any evidence other than that contained in the Synod's governing documents regarding its citizenship.[9] The Synod's bylaws define the Synod as "the association of self-governing Lutheran congregations and all its agencies on the national and district levels." Dkt. 11-2, at 3 (2023 case). There is no evidence that the Synod is incorporated. Therefore, the undersigned finds that the Synod is an unincorporated association. As such, it is a citizen of every state in which its members reside. *Americold Realty Tr. v. Conagra Foods, Inc.*, 577 U.S. 378, 381 (2016) (adhering to its "oft-repeated" rule that diversity jurisdiction in a suit involving an unincorporated entity depends on the citizenship of the entity's members). Because, by its own admission, the Synod has members (i.e., member congregations and individuals) in Texas, the Synod is a Texas citizen. *See, e.g.*, Dkt. 11, at 16 (2023 case) (referring to the "Texas District" of the Synod); *see also* Dkt. 11-1, at 7 (2023 case) (describing the Synod's division into districts). And because the

---

[9] The undersigned notes that if LCMS's implication that the Synod is not an unincorporated association because it is not a "civil law entity" were accepted, the Synod would not be subject to suit anywhere.

13

Synod is a Texas citizen, this Court should exercise jurisdiction over the 2024 case only if there is "no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Smallwood*, 385 F.3d at 573.

As described above, the undersigned next evaluates whether there is any possibility of recovery by CTX against the Synod as an in-state defendant. *See id*. A 12(b)(6)-type analysis is appropriate to determine whether the Synod was improperly joined. *See id*. Among other claims, CTX brings an action for declaratory judgment that "[n]either Synod nor LCMS have or are entitled to any property interest, including a reversionary interest, in and to CTX's campus property." Dkt. 1-1, at 7 (2024 case).

The undersigned finds that CTX has plausibly stated a claim for declaratory judgment against the Synod regarding its alleged reversionary interest in CTX's new campus property. Under Texas law, "[i]f resolution of a dispute does not require a determination of which party owned title at a particular time, the dispute may properly be raised in a declaratory judgment action, if the requirements of the Texas Declaratory Judgments Act are satisfied." *Meekins v. Wisnoski*, 404 S.W.3d 690, 695 (Tex. App.—Houston [14th Dist.] 2013, no pet.).[10] A declaratory judgment is available

---

[10] This dispute is properly brought as a declaratory-judgment action, not a trespass-to-try-title action. Under the Texas Property Code, a trespass-to-try-title action "is the method of determining title to lands, tenements, or other real property." Tex. Prop. Code § 22.001(a). However, because this dispute involves a nonpossessory interest in real property, a declaratory judgment action is appropriate. *See Lance v. Robinson*, 543 S.W.3d 723, 735-36 (Tex. 2018) ("The trespass-to-try-title statute … only applies when the claimant is seeking to establish or obtain the claimant's ownership or possessory right in the land at issue."); *El Dorado Land Co. v. City of McKinney*, 395 S.W.3d 798, 803 (Tex. 2013) ("Simply put, both the possibility of reverter and the right of reentry are future interests in real property."); *see also*

under Texas law when (1) there is a justiciable controversy that is (2) real and substantial and (3) capable of resolution by the declaration sought. *Sw. Elec. Power Co. v. Lynch*, 595 S.W.3d 678, 683-86 (Tex. 2020). There is a real and substantial justiciable controversy here, since the parties genuinely dispute LCMS and/or the Synod's reversionary interest in CTX's new campus property, which may be affected by the recent purported bylaw amendments. *See id.*; Dkt. 11, at 21 (2023 case) (alleging that "CTX is attempting to walk away with a historic property of the Synod without any say from its former religious denomination"). A declaration clarifying LCMS and the Synod's interest, if any, in CTX's new campus property would resolve the conflict. *See id.*

The Synod has capacity to sue and be sued under Texas law. Whether an entity has capacity to be sued depends on whether or not it is a corporation. *See* Fed. R. Civ. P. 17(b). While a corporation's capacity to be sued is based on the law under which it was organized, the capacity of *all other non-individual parties* is determined by the law of the state where the court is located, subject to exceptions not at issue here. *Id.* The parties to this case do not argue that the Synod is a corporation subject to Rule 17(b)(2). However, the parties dispute whether the Synod is an entity separate from LCMS. *See* Dkts. 5, at 13 (2024 case) (arguing that the Synod's governing documents explicitly differentiate between the Synod and LCMS); 10, at 6 (2024 case) (stating that LCMS "is a legally formed Missouri nonprofit corporation, and the Synod is its

---

*I-10 Colony*, 393 S.W.3d at 475 ("[I]n other words, if the determination only *prospectively* implicates title, then the dispute does not have to be brought as a trespass-to-try-title action.").

ecclesiastical body and not a separate legal entity"). Regardless of its organizational relationship to LCMS, the Synod is a non-corporation, non-individual "party" to the 2024 suit, and as such, whether it may be sued depends on Texas law.[11]

LCMS does not show that under Texas law, the Synod may not be sued. The Texas Business Organizations Code permits suits against "nonprofit association[s]," defined as "unincorporated organization[s], other than one[s] created by a trust, consisting of three or more members joined by mutual consent for a common, nonprofit purpose." Tex. Bus. Orgs. Code § 252.007 (permitting suit); § 252.001 (defining "nonprofit association"). The undersigned finds that the Synod qualifies as a "nonprofit association" under these criteria. There is no evidence that the Synod is incorporated or that it was created by trust. As illustrated by its constitution, the Synod was formed for a "common, nonprofit purpose." *See* Dkt. 11-1, at 1-2 (2023 case) (describing the Synod's objectives). Therefore, as an unincorporated, nonprofit association, the Synod may be sued. *Id.* § 252.007 ("A nonprofit association, in its name, may institute, defend, intervene, or participate in a judicial … proceeding[.]").

The Synod's status as a religious denomination does not bar CTX's suit. Initially, Texas courts have permitted suits against churches classified as unincorporated associations. *See, e.g.*, *Episcopal Diocese of Fort Worth v. Episcopal Church*, 602 S.W.3d 417, 430 (Tex. 2020); *see also* Tex. Bus. Orgs. Code § 2.002

---

[11] LCMS repeatedly asserts that the Synod may not be sued because it is "not a civil law entity" according to its bylaws. *See, e.g.*, Dkt. 10, at 6 (2024 case). However, LCMS fails to cite any authority demonstrating that the Synod is not subject to Rule 17(b) for the purposes of determining which law applies here. Further, LCMS cites no authority—other than its own bylaws—for the proposition that as a so-called non- "civil law entity," the Synod may not be sued.

16

(stating that the purpose of a nonprofit entity may include "religious" purposes). While churches have a "fundamental right under the First Amendment to decide … matters of church governance as well as those of faith and doctrine," the First Amendment does not bar all claims against religious bodies. *In re Lubbock*, 624 S.W.3d 506, 513 (Tex. 2021). Courts may exercise jurisdiction over a controversy involving a church if they can "apply neutral principles of law that will not require inquiry into religious doctrine, interference with the free-exercise rights of believers, or meddling in church government." *Id.* (citing *Westbrook v. Penley*, 231 S.W.3d 389, 398-400 (Tex. 2007)). In determining whether this "ecclesiastical abstention" doctrine applies, courts look to the plaintiff's claims to determine whether the controversy requires engagement with ecclesiastical matters or is merely "a civil-law controversy in which the church happens to be involved." *Id.* at 514; *see also Shannon v. Mem'l Drive Presbyterian Church U.S.*, 476 S.W.3d 612, 622 (Tex. App.—Houston [14th Dist.] 2015, pet. denied) (holding that to determine whether the ecclesiastical abstention doctrine applies, "courts must look to the substance and effect of a plaintiff's complaint to determine its ecclesiastical implication").

CTX's action regarding the Synod's interest in CTX's new campus property is a pure civil-law controversy. *See In re Lubbock*, 624 S.W.3d at 513. First, the events leading to the campus property dispute—involving LCMS's voluntary waiver of its reversionary interest and CTX's alleged refusal to recognize that interest—occurred around 2006 or 2007, more than 10 years prior to CTX's purported bylaw amendments. Dkts. 1-1, at 4 (2024 case); 11, at 9 (2023 case). More importantly, the

property dispute does not involve any change to CTX's governing documents and does not require any inquiry into religious doctrine. *See In re Lubbock*, 624 S.W.3d at 513. Finally, the undersigned notes that the Texas courts have exercised jurisdiction over suits against churches involving pure property disputes. *See, e.g.*, *Masterson v. Diocese of Nw. Tex.*, 422 S.W.3d 594, 608 (Tex. 2013) (holding that the trial court had jurisdiction over a property dispute involving a church).

Therefore, because CTX has plausibly stated a state-law claim against the Synod and the Synod's Texas citizenship defeats this Court's diversity jurisdiction, the undersigned recommends that the District Judge grant the motion to remand, Dkt. 5 (2024 case).

## IV.     RECOMMENDATION

In accordance with the foregoing discussion, the undersigned **RECOMMENDS** that the District Judge **GRANT** Defendants' motion to dismiss, Dkt. 13 (2023 case) and **GRANT** CTX's motion to remand, Dkt. 5 (2024 case).

The referral of these motions to the United States Magistrate Judge should now be canceled. The undersigned notes that should the District Judge accept these recommendations, the pending referred motions in this matter would be denied as **MOOT**. Dkts. 39 (2023 case); 44 (2023 case); 23 (2024 case).

## V.     WARNINGS

The parties may file objections to this report and recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Judge need not consider frivolous,

conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this report within fourteen days after the party is served with a copy of the report shall bar that party from *de novo* review by the District Judge of the proposed findings and recommendations in the report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Judge. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

    **SIGNED** November 20, 2024.

_____
DUSTIN M. HOWELL
UNITED STATES MAGISTRATE JUDGE

25-50130.3099

# Tab 10

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| THE LUTHERAN CHURCH MISSOURI SYNOD, *Plaintiff* | § § § § | No. 1:23-cv-01042-DAE |
| v. | § § | |
| DONALD CHRISTIAN, ET AL., *Defendants* | § § § § | |
| | § | |
| CONCORDIA UNIVERSITY TEXAS, *Plaintiff* | § § § § § | No. 1:24-cv-00176-DAE |
| v. | § § | |
| THE LUTHERAN CHURCH MISSOURI SYNOD, ET AL., *Defendants* | § § § § | |

## ORDER ADOPTING REPORT AND RECOMMENDATION

Before the Court is a Report and Recommendation

("Recommendation") filed by United States Magistrate Judge Dustin M. Howell.

(Dkt. # 52.)  On April 3, 2024, Defendants Concordia University Texas ("CTX"),

Donald Christian ("Christian"), and Christopher Bannwolf ("Bannwolf") filed a

Motion to Dismiss in case 1:23-cv-1042-DAE (the "2023 case").  (Dkt. # 13)

(2023 case).  On April 3, 2024, Plaintiff CTX filed a Motion to Remand in the

1

related case 1:24-cv-176-DAE (the "2024 case").  (Dkt. # 5) (2024 case).  The

parties timely filed their respective responses to each motion.

On November 20, 2024, Judge Howell submitted a Report and

Recommendation recommending that the Court grant both motions.  (Dkt. # 52)

(2023 case).[1]  On January 2, 2025, Lutheran Church – Missouri Synod ("LCMS")

filed Objections to the Recommendation.  (Dkt. # 58) (2023 case).  On January 8,

2025, CTX filed its response to the Objections.  (Dkt. # 59) (2023 case).

The Court finds this matter suitable for disposition without a hearing.

After reviewing the Recommendation and the information contained in the record,

the Court **ADOPTS** the Recommendation.  The Motion to Dismiss and Motion to

Remand are **GRANTED.**

## BACKGROUND

The Court agrees with Judge Howell's recitation of the facts and

incorporates them in full:

The parties include the Lutheran Church – Missouri Synod ("the

Synod"), which is a religious denomination governed by its constitution and

bylaws.  (See Dkts. ## 11-1 (constitution), 11-2 (bylaws)) (2023 case).  The

eponymous Lutheran Church – Missouri Synod ("LCMS") is a Missouri nonprofit

---

[1] For purposes of this Order, the Court will primarily cite to the docket entries in
the 2023 case, based on the parties' agreed motion to consolidate these cases for
the determination of the motions at issue here.  (Dkt. # 18) (2023 case).

25-50130.3300

corporation that, according to LCMS, is the Synod's "civil law reflection" and referred to as "Corporate Synod" in the Synod's bylaws.  (Dkt. # 10 at 6–7) (2023 case).  CTX is a Lutheran university in Austin, Texas, founded by affiliates of the Synod's predecessor organization.  (Dkt. # 13 at 3) (2023 case).

This lawsuit involves disputes regarding CTX's November 2022 amendment to its Articles of Incorporation and Bylaws to provide for corporate self-governance separate from the LCMS and/or Synod and a reversionary interest in the university real property comprising the CTX main campus.  (Dkt. # 1 at 6, 15) (2023 case).

On August 1, 2023, LCMS filed a federal lawsuit against CTX asserting claims for declaratory judgment, breach of contract, breach of fiduciary duties, and violations of the Texas Business Organization Code.  (Dkt. # 1) (2023 case).  On February 29, 2024, LCMS filed its Amended Complaint.  (Dkt. # 11) (2023 case).

In January 2024, approximately four months after LCMS filed its 2023 suit, CTX sued LCMS and the Synod in Travis County, Texas.  (Dkt. # 1-1) (2024 case).  In the 2024 suit, CTX seeks declaratory judgment that: the CTX board of regents had authority to make the amendments to CTX's governing documents, that the Synod and LCMS do not have the authority to elect regents to CTX's board, that CTX did not breach any fiduciary duty owed to the Synod or

3

LCMS, and that neither the Synod nor LCMS is entitled to any reversionary interest in CTX's new campus property or to damages associated with the loss of that property interest.  (Id.)  The 2024 case was thereafter removed to federal court on February 21, 2024.  (Dkt. # 1) (2024 case).

CTX moves to dismiss LCMS's 2023 suit against it for lack of subject-matter jurisdiction and failure to join indispensable parties.  (Dkt. # 13) (2023 case).  CTX also moves to remand the 2024 case.  (Dkt. # 5) (2024 case). The motions center on the same arguments: that the Synod is both a non-diverse (Texas) defendant capable of being sued and a proper party to this case and therefore, it would be improper for this Court to exercise jurisdiction over any claim.  (Dkt. # 52 at 5) (2023 case).

## APPLICABLE LAW

I.     Review of Report and Recommendation

The Court must conduct a de novo review of any of the Magistrate Judge's conclusions to which a party has specifically objected.  See 28 U.S.C. § 636(b)(1)(C) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.").  The objections must specifically identify those findings or recommendations that the party wishes to have the district court consider. Thomas v. Arn, 474 U.S. 140, 151 (1985).  A district court need not consider

4

"[f]rivolous, conclusive, or general objections." Battle v. U.S. Parole Comm'n, 834 F.2d 419, 421 (5th Cir. 1987). "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). Findings to which no specific objections are made do not require de novo review; the Court need only determine whether the Recommendation is clearly erroneous or contrary to law. United States v. Wilson, 864 F.2d 1219, 1221 (5th Cir. 1989).

II.    Motion to Dismiss

Federal courts are courts of limited jurisdiction, possessing "only that power authorized by Constitution and statute." Gunn v. Minton, 568 U.S. 251, 256 (2013) (quoting Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994)). "It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." Energy Mgmt. Servs., LLC v. City of Alexandria, 739 F.3d 255, 258-59 (5th Cir. 2014) (quoting Kokkonen, 511 U.S. at 377).

In considering a motion to dismiss for lack of subject matter jurisdiction, "a court may evaluate (1) the complaint alone, (2) the complaint supplemented by undisputed facts evidenced in the record, or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."

5

<u>Den Norske Stats Oljeselskap As v. HeereMac Vof</u>, 241 F.3d 420, 424 (5th Cir. 2001) (citation omitted).

DISCUSSION

I.    <u>Whether the Synod is an Unincorporated Association Under Texas Law</u>

The Recommendation concludes that the Synod is an unincorporated association under Texas law. (Dkt. # 52 at 8, 13, 16) (2023 case). LCMS objects to this finding on the basis that the Magistrate Judge misinterprets and misapplies the law arising under Chapter 252 of the Texas Business Organizations Code, which is Texas's codification of the Uniform Unincorporated Nonprofit Association Act ("TUUNAA"). (Dkt. # 58 at 4) (2023 case). LCMS also argues the Recommendation violates Texas' "internal affairs doctrine" as formalized in the Texas Organizations Code in mandatory, non-discretionary terms. (<u>Id.</u> at 3.) Finally, LCMS argues the Recommendation violates the First Amendment and Church Autonomy Doctrine. (<u>Id.</u> at 20.) The Court addresses each objection in turn.

A.    <u>Texas Law Objection</u>

LCMS claims that the formation of LCMS as a nonprofit corporation precludes the existence of Synod as a separate unincorporated association. (<u>Id.</u> at 13.) According to LCMS, TUUNAA is not intended to, and does not, create a

6

parallel "unincorporated nonprofit association" where a group has already "chosen to incorporate." (Id. at 6.)

The issue of a "parallel" entity in a church-type dispute has been recognized amongst some Fifth Circuit district courts, albeit briefly. For instance, in Turner v. Church of Jesus Christ of Latter-Day Saints, the church and its "separate" corporate entities similarly argued that the LDS Church was not a proper party defendant, and as such could not be considered for purposes of determining diversity jurisdiction. No. 3:95-CV-1354-P, 1996 WL 34447787, at *1 (N.D. Tex. Feb. 22, 1996). As LCMS argues here, the defendants claimed that once a church decides to incorporate, "there is simply no remaining 'unincorporated association' amenable to suit." Id. at *3. The Turner court concluded that because there is no clear, controlling substantive law regarding the citizenship or capacity of the noncorporate form of a church, and because the court must resolve such uncertainties in favor of plaintiffs, the plaintiffs' motion to remand was granted. Id. at *4. Application of the fraudulent joinder standard on its face demonstrated that the church and its corporate entities failed to meet their burden. Id.

In Hebert v. Thorton, that court also considered the issue of whether the LDS Church, as a secular organization, separate and distinct from the incorporated aspect of the church corporation, could be deemed an "unincorporated

7

association" for purposes of establishing diversity jurisdiction. No. CIV.A. 12-0607, 2014 WL 896795, at *5 (E.D. La. Mar. 6, 2014). The court concluded that the addition of the LDS Church was clearly an attempt of fraudulent joinder as the church corporation admitted on the record that it was the plaintiff's employer, and that LDS is a non-diverse, spiritual organization without assets, money, or a representative for which it would use during trial. Id. at *7. However, this case did not apply the TUUNAA and instead applied Louisiana law.

In a Texas Supreme Court case, the church there argued the inverse of what LCMS and the Synod contend here. There, the church complained that the lower courts erred in abating, and subsequently dismissing, its action against a private company "because that lawsuit belonged to [the church] rather than to a similarly-named, nonprofit corporation." Christi Bay Temple v. GuideOne Specialty Mut. Ins. Co., 330 S.W.3d 251, 252 (Tex. 2010). The church submitted that it brought its suit as an unincorporated religious association because that is how it has always operated. Id. at 252–53. The insurance company argued, as LCMS and the Synod argue here, that "the church ceased to exist as an [unincorporated] association in 1980 when the non-profit corporation, bearing the same name and a similar affiliation with the Pentecostal Church of God, was created." Id. at 253. The defendant claimed that "upon becoming a corporation the church lost the capacity to litigate as an unincorporated association." Id. The

8

Texas Court found that there was no evidence that the church lacked capacity, including any evidence that the church transferred any property or assets to the non-profit or conducted any activity or ministry as a non-profit corporation.  Id.

The Court concludes it is not against Texas law to recognize the Synod as an unincorporated association.  Indeed, the Texas Supreme Court has also recognized that churches may be deemed an unincorporated association pursuant to the TUUNAA, even where the church creates a corporation for the purposes of acquiring property.  See Episcopal Diocese of Fort Worth v. Episcopal Church, 602 S.W.3d 417, 421, 430 (Tex. 2020).  Here, unlike Hebert, the Synod does have a "legal representative" capable of representing the Synod as an unincorporated association, as dictated in the Synod's Bylaws.  (See Dkt. # 11-2 at 95) ("The Board of Directors of the Synod is the legal representative of the Synod and the custodian of all the property of the Synod.").

LCMS spends a considerable amount of its objections discussing the underlying intent and general purposes of the TUUNAA.  (See Dkt. # 58 at 6–13.) According to LCMS, "step one of TUUNAA is to determine if the alleged 'unincorporated nonprofit association' is already incorporated.  If so, there is no step two."  (Id. at 13.)  The Court does not read TUUNAA as implementing such a requirement.  When construing a Texas statute, the Fifth Circuit abides by the same rules of statutory construction applied by Texas courts.  Wright v. Ford Motor

9

Co., 508 F.3d 263, 269 (5th Cir. 2007). "[I]t is a cardinal rule in Texas that a court construes a statute, 'first by looking to the plain and common meaning of the statute's words.'" Fitzgerald v. Advanced Spine Fixation Sys., Inc., 996 S.W.2d 864, 865 (Tex. 1999) (quoting Liberty Mut. Ins. Co. v. Garrison Contractors, 966 S.W.2d 482, 484 (Tex. 1998)). According to Texas courts, "[i]f the statutory language is unambiguous, the judge's inquiry is at an end." Gonzalez v. Guilbot, 315 S.W.3d 533, 540 (Tex.2010). Clear text is assumed to be determinative of legislative intent. Entergy Gulf States, Inc. v. Summers, 282 S.W.3d 433, 437 (Tex. 2009).

Applying those principles, the plain language of the Texas Business Organization Code states that a "[n]onprofit association" means an unincorporated organization, other than one created by a trust, consisting of three or more members joined by mutual consent for a common, nonprofit purpose. Tex. Bus. Orgs. Code § 252.001. This definition may include religious organizations, such as a church. See Tex. Bus. Orgs. Code § 2.002 (stating that the purpose of a nonprofit entity may include "religious" purposes). LCMS is a Missouri nonprofit corporation. (Dkt. # 11-2 at 2) (2023 case). The Synod is not. While LCMS may act *on behalf* of the Synod, it is *not* the Synod itself. In other words, the two entities are not one and the same. (See id. at § 1.2.1(f)&(v)) (defining "Synod" and "Corporate Synod" separately). Therefore, it is an appropriate application of

10

unambiguous Texas law that the Synod may be classified as an unincorporated nonprofit association as the Synod is an organization existing for a common, nonprofit purpose.  (See Dkt. # 12-2 at 3) (the Synod defining itself as an association).

Next, the Court concludes the Recommendation does not violate the internal affairs doctrine.  Rule 17(b) provides that—with certain exceptions not applicable here—the determination of whether a party, other than a corporation or an individual, has the capacity to sue or be sued "shall be determined by the law of the state in which the district court is held[.]"  Fed. R. Civ. P. 17(b).  Texas law expressly permits unincorporated associations, including religious non-profits, to sue or be sued.  See Tex. R. Civ. P. 28 ("Any . . . unincorporated association . . . may sue or be sued in its . . . common name for the purpose of enforcing for or against it a substantive right"); see also Tex. Bus. Orgs. Code § 252.007 ("A nonprofit association, in its name, may institute, defend, intervene, or participate in a judicial . . . proceeding[.]").  The Court need not look to Missouri law, where LCMS is incorporated, to determine whether the Synod has the capacity to be sued.  The lawsuits are in the Western District of Texas; therefore, Texas law applies.

Therefore, the Court **OVERRULES** LCMS's objection under Texas law and the internal affairs doctrine.

B.    First Amendment Objection

11

LCMS argues the finding that the Synod "is an unincorporated nonprofit association civil law entity answerable to the secular authority of man" violates the First Amendment and Church Autonomy Doctrine. (Dkt. # 58 at 20) (2023 case). LCMS maintains that the Synod does not exist as a civil entity because it says so in the Synod's constitution and bylaws. (Dkt. # 23 at 6) (2023 case).

The First Amendment forbids government intrusion in "matters of church government" and secures church autonomy for internal management decisions that are essential to the institution's central mission. Our Lady of Guadalupe Sch. v. Morrissey-Berru, 591 U.S. 732, 746 (2020). However, "[t]he First Amendment does not categorically insulate religious relationships from judicial scrutiny, for to do so would necessarily extend constitutional protection to the secular components of these relationships." McRaney v. N. Am. Mission Bd. of the S. Baptist Convention, Inc., 966 F.3d 346, 348 (5th Cir. 2020) (internal quotations omitted).

"A court may exercise jurisdiction over a controversy if it can apply neutral principles of law that will not require inquiry into religious doctrine, interference with the free-exercise rights of believers, or meddling in church government." In re Lubbock, 624 S.W.3d 506, 513 (Tex. 2021). Under the neutral-principles methodology, "courts decide non-ecclesiastical issues such as

25-50130.3310

property ownership based on the same neutral principles of law applicable to other entities, while deferring to religious entities' decisions on ecclesiastical and church polity questions." Id. (citing Masterson v. Diocese of Nw. Tex., 422 S.W.3d 594, 596 (Tex. 2013)). "[C]ourts should consider not only whether a neutral principle exists without regard to religion, but also whether the application of neutral principles would impose civil liability upon a church for complying with its own internal rules and regulations or resolving a religious matter." In re Lubbock, 624 S.W.3d at 513.

The Supreme Court has previously declined to answer the difficult question as to the degree to which the First Amendment permits civil authorities to question a religious body's own understanding of its structure and the relationship between associated entities. Roman Cath. Archdiocese of San Juan, Puerto Rico v. Acevedo Feliciano, 589 U.S. 57, 67 (2020) (Alito, J., concurring). Asserting a violation of the religious autonomy doctrine, the church in Acevedo Feliciano claimed, "the Free Exercise and Establishment Clauses of the First Amendment require courts to defer to 'the Church's own views on how the Church is structured.'" Id. at 62. The church argued that courts must follow the church's lead in recognizing the separate legal personalities involved. Id. Had the church been recognized as a "legal personality", the church would have been required to make payments of benefits for a pension plan for employees of its Catholic school.

13

Id. at 59.  Concluding that the Court of First Instance lacked jurisdiction to issue the payment and seizure orders, the Supreme Court did not reach the First Amendment argument.  Id. at 63.  Thus, there is no clear case law requiring courts to defer to a church's unilateral decision that it is not a civil entity.

LCMS contends that if adopted, the "[R]ecommendation would completely rewrite and restructure the chosen polity and governance of a religious organization."  (Dkt. # 58 at 20) (2023 case).  According to LCMS, Synod's chosen polity and governance structure compartmentalizes the ecclesiastical and spiritual matters of the global congregations for the Synod's purview while, on the other hand, creates LCMS to engage and interact with civil secular society on all other matters, including this lawsuit.  (Id. at 24.)

CTX responds that this is not a case in which the nature of claims and relief sought would require judicial interference in how churches conducted internal matters from religious employment to doctrinal compliance.  (Dkt. # 59 at 16) (2023 case).  CTX further claims that LCMS does not provide a single case in which the Church Autonomy Doctrine has barred the application of neutral principles of law to questions of capacity.  (Id. at 17.)

LCMS relies on Serbian E. Orthodox Diocese for U. S. of Am. & Canada v. Milivojevich, 426 U.S. 696, 713 (1976) to support its First Amendment objection.  In Milivojevich, the Supreme Court held that "civil courts are bound to

14

accept the *decisions of the highest judicatories* of a religious organization of hierarchical polity on matters of discipline, faith, internal organization, or ecclesiastical rule, custom, or law." Id. at 713, 725 (emphasis added). In other words, the holding specifically addressed that when ecclesiastical tribunals are created to decide disputes over the government and direction of subordinate bodies, civil courts accept their decisions as binding upon them. Id. at 725. There, the dispute centered over control of the Serbian Eastern Orthodox Diocese and the reorganization of the church. Id. at 699, 708. Thus, there is at least clear law that a church's final adjudication on an ecclesiastical decision is binding on civil courts.

The Court agrees that the purpose of the Magistrate Judge's inquiry into the corporate status, or lack thereof, of the Synod was to externally determine whether it has the capacity to be sued. The Recommendation does not alter or reorganize the Synod's internal governance. The lawsuits at issue involve a dispute regarding the Synod's interest in CTX's new campus property, which is a pure civil-law controversy. (Dkt. # 52 at 17) (2023 case). The campus property dispute revolves around LCMS's alleged voluntary waiver of its reversionary interest and CTX's alleged refusal to recognize that interest. (Id.) Thus, the resolution of the property dispute will not involve any change to the Synod's governing documents, nor will it require any inquiry into religious doctrine. (Id. at 18.) The substance and nature of the property claims are not so inextricably

15

intertwined with matters of doctrine or church governance so as to apply

ecclesiastical abstention.  In re Lubbock, 624 S.W.3d at 514.

LCMS also asserts that although it relied extensively on the

Declaration of Rev. Dr. John Sias, who serves as Secretary for LCMS in its

Response to Motion to Dismiss (Dkt. # 23-1) (2023 case), the Magistrate Judge did

not mention it in his Recommendation.  (Dkt. # 58 at 29) (2023 case).  LCMS cites

Dr. Sias's declaration as support for its arguments that Synod does not exist as a

separate civil entity from LCMS and to explain the ecclesiastical meanings in the

governance documents.  (Id.)  In reviewing not only the Synod's constitution and

bylaws, but also the LCMS Board of Director's Policy Manual ("LCMS Policy

Manual"), the Court finds that even LCMS recognizes the Synod's capacity to be

sued.  For instance, in the LCMS Policy Manual, Section 4.18.4–Responding to

Litigation provides the following:

- The LCMS Board of Directors recognizes that any response to litigation brought against the **_Synod or Corporate Synod_** [LCMS] may impact the Synod, its agencies, and members. Cooperation in such responses is therefore a necessity.  (Id. at § 4.18.4.2)
- The Chief Administrative Officer, in consultation with the **_Synod's general counsel_** and when necessary the Executive Committee of the Board, shall select legal counsel **_to represent the Synod in each case of litigation brought against the Synod or an agency of Corporate Synod._** General counsel shall supervise all responses to litigation brought against the Synod, including without limitation all filings, discovery, and negotiating settlements.

16

25-50130.3314

(Dkt. # 13-5 at 62) (2023 case).  LCMS itself recognizes that litigation may be brought against either the Synod or LCMS (Corporate Synod).  As such, a finding that the Synod has the capacity to be sued does not violate the Synod's decision regarding polity and governance.

Therefore, the Court **OVERRULES** LCMS's objection to the Magistrate Judge's finding that the Synod is an unincorporated association and has the capacity to sue or be sued in Texas.  However, the inquiry does not end here in deciding whether to adopt the Recommendation.  The Court next addresses whether the Synod holds the substantive rights at issue here to be deemed a real party in interest, real party in controversy, and an indispensable party for Rule 17(a) purposes.

II.    <u>Whether the Synod Holds the Substantive Rights</u>

The Recommendation concludes that the Synod holds the substantive rights at issue here and LCMS cannot show that it possesses rights with respect to Defendants that are independent of the Synod.  (Dkt. # 52 at 8) (2023 case).  Therefore, the Magistrate Judge recommended the 2023 action should be dismissed for failure to prosecute in the name of the real party in interest.  (Id. at 9.)

Federal Rule of Civil Procedure 17(a) requires that an action "be prosecuted in the name of the real party in interest," which is defined as the party "holding the substantive right sought be enforced," although "not necessarily the

25-50130.3315

[party that] will ultimately benefit from the recovery." In re Signal Intern., LLC, 579 F.3d 478, 487 (5th Cir.2009) (quoting Farrell Constr. Co. v. Jefferson Parish, La., 896 F.2d 136, 140 (5th Cir.1990)).  "The purpose of this requirement 'is to assure a defendant that a judgment will be final and that res judicata will protect it from having to twice defend an action, once against an ultimate beneficiary of a right and then against the actual holder of the substantive right.'" Id. (quoting Farrell, 896 F.2d at 142).

LCMS objects to the finding that the Synod holds the substantive rights at issue here on the basis that it is a purely ecclesiastical religious entity, and it incorporated LCMS as its civil law entity to assert and respond to all civil law claims.  (Dkt. # 58 at 27) (2023 case).  However, LCMS does not object to the reasoning behind the Magistrate Judge's finding.

In the Recommendation, the Magistrate Judge concludes that even if LCMS held title to the real property at issue in this case, it would belong to the Synod.  (Dkt. # 52 at 8) (2023 case).  The Synod's bylaws acknowledge that LCMS (as "Corporate Synod") may hold title to certain property, but that property is considered property of the Synod.  (See Dkt. # 11-2 at 3) (2023 case) (defining "property of the Synod" as "[a]ll assets, real or personal, tangible or intangible, whether situated in the United States or elsewhere, titled or held in the name of corporate Synod, its nominee, or an agency of the Synod").  Indeed, in the LCMS

18

Policy Manual, Section 6.3.3–Property of Synod held by Colleges, Universities,

and Seminaries as defined in Bylaw 1.2.1(r), LCMS asserts "Each institution of

higher education of the Synod shall hold title to properties presently owned or at

any time hereafter acquired by it subject to a reversionary interest or possibility of

**reverter in favor of the Synod** in such form and stating such conditions as shall be

established by the Board of Directors of the Synod." (Dkt. # 13-5 at 80) (2023

case). Resolution 4-04 also provides: "The Synod owns the properties of all

agencies of the Synod, including its institutions of higher education, regardless of

how such properties are titled (Bylaw 3.51 i)." (Dkt. # 13-6 at 1) (2023 case).

Thus, the relief sought in these lawsuits would necessarily include a declaration

clarifying either LCMS and/or the Synod's interest, if any, in CTX's new campus

property. (Dkt. # 52 at 15) (2023 case).

   The Magistrate Judge further reasoned that LCMS fails to

demonstrate that it is a party to any contract between CTX and the Synod, why any

Defendant owes fiduciary duties to LCMS as opposed to the Synod, or why duties

any Defendant owes under that Code flow to LCMS as opposed to the Synod. (Id.

at 8–9.)

   With respect to the contract and fiduciary claims, the Amended

Complaint makes clear that the Synod is the party that would benefit from a

declaration to enforce its rights against CTX. (See Dkt. # 11 at 32) (2023 case)

("[U]ntil and unless this Court affords LCMS the declaratory relief requested herein, the unlawful CTX Amendments have caused, and will continue to cause, *loss to Synod* for the CTX Amendments purportedly and ***wrongfully strip Synod of all its rights*** under the CTX governance documents.")  (emphasis added).

Therefore, the Court **OVERRULES** LCMS's objection to the finding that the Synod holds the substantive rights in the lawsuits.

III.    <u>Whether the Synod is a Citizen of Texas for Diversity Jurisdiction</u>

A defendant may remove a civil action from state court to federal court if the federal court has original jurisdiction over the case.  28 U.S.C. § 1441(a).  District courts have original jurisdiction over actions between citizens of different states where the amount in controversy exceeds $75,000, exclusive of interest and costs.  28 U.S.C. § 1332(a).  Diversity jurisdiction requires complete diversity—meaning that no plaintiff may share citizenship with any defendant. <u>Flagg v. Stryker Corp.</u>, 819 F.3d 132, 136 (5th Cir. 2016).

Because the Magistrate Judge found that the Synod is an unincorporated association it is a citizen of every state in which its members reside.  (Dkt. # 52 at 13) (2023 case).  LCMS objects to the diversity finding on the general basis (again) that the Synod is not an unincorporated association.  (Dkt. # 58 at 29) (2023 case).  As discussed above, the Court concludes that the Synod is

25-50130.3318

classified as an unincorporated association under Texas law.  Accordingly, this objection is **OVERRULED**.

The Recommendation found that LCMS could not show that the Synod is not a citizen of Texas for the purposes of diversity jurisdiction.  (Dkt. # 52 at 13) (2023 case).  In the Fifth Circuit, it is well-settled that an unincorporated association is deemed a citizen of every state in which its members reside.  Hummel v. Townsend, 883 F.2d 367, 369 (5th Cir. 1989).  Here, the Synod admits it has members (i.e., member congregations and individuals) in Texas.  (Dkt. # 11 at 16) (2023 case).  LCMS does not specifically object to this finding.  Therefore, the Court finds the Recommendation that the Synod is a Texas citizen is not clearly erroneous or contrary to law.

IV.    Whether the Improper Joinder Doctrine Applies

When removal is premised on diversity jurisdiction, the presence of an improperly joined non-diverse defendant will not defeat jurisdiction.  Salazar v. Allstate Tex. Lloyd's, Inc., 455 F.3d 571, 574 (5th Cir. 2006).  A defendant establishes improper joinder by demonstrating the plaintiff's inability to state a viable claim against the non-diverse defendant.  Smallwood v. Ill. Cent. R.R. Co., 385 F.3d 568, 573 (5th Cir. 2004) (en banc).  "Ordinarily, if a plaintiff can survive a Rule 12(b)(6) challenge, there is no improper joinder," though the Court may "pierce the pleadings and conduct a summary inquiry" where plaintiff has

25-50130.3319

"misstated or omitted discrete facts that would determine the propriety of joinder." Id. Any doubts as to the propriety of removal are resolved in favor of remand. Smith v. Bank of Am. Corp., 605 F. App'x 311, 314 (5th Cir. 2015).

In conducting a 12(b)(6)-type analysis, the Magistrate Judge found that CTX has plausibly stated a claim for declaratory judgment against the Synod regarding its alleged reversionary interest in CTX's new campus property. (Dkt. # 52 at 14) (2023 case). LCMS does not object to this finding.

Applying Texas law, the Magistrate Judge reasoned that a declaratory judgment is available when (1) there is a justiciable controversy that is (2) real and substantial and (3) capable of resolution by the declaration sought. Sw. Elec. Power Co. v. Lynch, 595 S.W.3d 678, 683-86 (Tex. 2020). Moreover, the Magistrate Judge concluded that Synod's status as a religious denomination does not bar CTX's suit. (Dkt. # 52 at 16) (2023 case). The Court finds this analysis is not clearly erroneous or contrary to law.

In sum, the Recommendation provides that (1) the Synod is an indispensable party that must be joined, (2) the Synod's joinder as a Texas entity defeats this Court's diversity jurisdiction, and (2) CTX has plausibly stated a state-law claim against the Synod. Accordingly, the magistrate recommends that the Court grant the motion to dismiss, (Dkt. # 13) (2023 case) and motion to remand (Dkt. # 5) (2024 case).

22

Case 1:23-cv-01042-DAE   Document 61   Filed 02/06/25   Page 23

## CONCLUSION

For the reasons above, the Court **ADOPTS** U.S. Magistrate Judge Dustin M. Howell's Report and Recommendation in full as the opinion of this Court.  (Dkt. # 52) (2023 case).  Defendants Concordia University Texas, Donald Christian, and Christopher Bannwolf's Motion to Dismiss in case 1:23-cv-1042-DAE (Dkt. # 13) is **GRANTED WITHOUT PREJUDICE**.

Plaintiff Concordia University Texas's Motion to Remand in related case 1:24-cv-176-DAE (Dkt. # 5) is **GRANTED**.  Further, the Court **REMANDS** this case to the 353rd District Court of Travis County, Texas for lack of subject-matter jurisdiction**.**

The Clerk is **INSTRUCTED** to close both cases.

**IT IS SO ORDERED.**

**SIGNED**: Austin, Texas, February 3, 2025.

_____

David Alan Ezra
Senior United States District Judge

23

# Tab 11

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

THE LUTHERAN CHURCH – MISSOURI
SYNOD, a Missouri nonprofit corporation,

*Plaintiff,*

v.

DONALD CHRISTIAN, CHRISTOPHER
BANNWOLF, CONCORDIA UNIVERSITY
TEXAS, INC., & JOHN DOES 1-12,

*Defendants.*

No. 1:23-cv-1042-DAE

## NOTICE OF APPEAL

PLEASE TAKE NOTICE that Plaintiff The Lutheran Church – Missouri Synod, a Missouri

nonprofit corporation, hereby appeals to the United States Court of Appeal for the Fifth Circuit

from this Court's February 3, 2025 Order, ECF No. 61, adopting the Report and Recommendation

of the Magistrate Judge and all earlier and interlocutory orders and rulings, including the

November 20, 2024 Report and Recommendation of the United States Magistrate Judge, ECF No.

52 .

Respectfully submitted this 21st day of February, 2025.

Respectfully submitted,

By: */s/ Steven Levatino*

Andrew F. MacRae
State Bar No. 00784510
MacRae Law Firm PLLC
3267 Bee Cave Road
Suite 107, PMB 276
Austin, Texas 78746
T: 512-565-7798
andrew@macraelaw.co

Steven C. Levatino
State Bar No. 12245250
Levatino|Pace PLLC
1101 S. Capital of Texas Hwy.
Bldg. K, Suite 125
Austin, Texas 78746
T: 512-637-1581
 steven@lpfirm.com

Gregg R. Kronenberger
State Bar No. 24039998
KRONENBERGER LAW FIRM, PLLC
1101 S. Capital of Texas Hwy.
Bldg. K, Suite 125
Austin, Texas 78746
T: 512-777-4141
F: 512-402-3313
gregg@gkronenberger.com

Kevin Dubose
State Bar No. 06150500
Alexander Dubose & Jefferson LLP
1844 Harvard Street
Houston, Texas 77008
T: 713-523-2358
F: 713-522-4553
kdubose@adjtlaw.com

*Attorneys for The Lutheran Church –
Missouri Synod, a Missouri nonprofit corporation*


## CERTIFICATE OF SERVICE

On February 21, 2025, I electronically submitted the foregoing **NOTICE OF APPEAL** to the clerk of the court for the U.S. District Court, Western District of Texas, using the electronic case filing system of the Court. I hereby certify that I have served counsel of record for all parties through the Court's ECF system.

*/s/ Steven Levatino*
Steven Levatino

25-50130.3323

## CERTIFICATE OF SERVICE

I hereby certify that on April 28, 2025, I electronically filed the foregoing with the Clerk of Court for the U.S. Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system. All counsel of record are registered CM/ECF users, and will be served by the court's electronic filing system.

*/s/Daniel H. Blomberg*
Daniel H. Blomberg