No. 25-50130

# IN THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

THE LUTHERAN CHURCH - MISSOURI SYNOD, A MISSOURI NONPROFIT CORPORATION,
*Plaintiff-Appellant,*

v.

DONALD CHRISTIAN, *et al.*,
*Defendants-Appellees.*

Appeal from the United States District Court for the Western District of Texas, Hon. David A. Ezra, No. 1:23-CV-01042

## BRIEF FOR THE STATE OF MISSOURI AS AMICUS CURIAE, IN SUPPORT OF PLAINTIFF-APPELLANT

**ANDREW T. BAILEY**
*Attorney General*

Joshua M. Divine, 69875MO
*Solicitor General*
Maria A. Lanahan, 65956MO
*Principal Deputy Solicitor General*
815 Olive Street, Suite 200
St. Louis, Missouri 63101
Phone: 314-340-4978
Josh.Divine@ago.mo.gov
Maria.Lanahan@ago.mo.gov

*Counsel for Amicus Curiae*

## CERTIFICATE OF INTERESTED PERSONS

Under this Court's Rule 28.2.1 and Federal Rules of Appellate Procedure 26.1(a) and 29(a)(4)(A), governmental parties are not required to supply a certificate of interested persons.

/s/ Maria A. Lanahan
Maria A. Lanahan
*Counsel for Amicus Curiae*

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ..........................................i

TABLE OF CONTENTS ..............................................................ii

STATEMENT OF INTEREST AND INTRODUCTION ..........................1

ARGUMENT ..........................................................................2

   I.  Missouri law fosters religious activity by giving religious entities options to organize. ..............................................4

   II.  The district court's ruling violates the Full Faith and Credit Clause and Commerce Clause by depriving the Church of the benefits of incorporating in Missouri. ................................5

      A.  By incorporating in Missouri, the Church chose the rules that would apply to its internal governance; Full Faith and Credit requires this choice be respected. ...........................6

      B.  Holding that the Church is an unincorporated nonprofit in Texas when it chose to incorporate in Missouri is an interpretation that causes Texas law to violate the Commerce Clause. ...................................................8

   III. The district court's ruling should be reversed because it violates the Church's First Amendment rights—something Missouri also has an interest in preserving. ................................10

   IV. The district court's ruling should be reversed because it causes constitutional avoidance problems by treating churches differently than other nonprofits in violation of the Equal Protection Clause of the Fourteenth Amendment. ..............13

CONCLUSION ......................................................................16

CERTIFICATE OF SERVICE ..................................................18

CERTIFICATE OF COMPLIANCE ............................................18

# TABLE OF AUTHORITIES

**Cases**                                                          Page(s)

*Atherton v. F.D.I.C.*,
    519 U.S. 213 (1997) ................................................................. 9

*CTS Corp. v. Dynamics Corp. of Am.*,
    481 U.S. 69 (1987) .............................................................. 9, 10

*EBS Solutions, Inc. v. Hegar*,
    601 S.W.3d 744 (Tex. 2020) .................................... 8, 10, 13

*Estin v. Estin*,
    334 U.S. 541 (1948) ................................................................. 7

*Hosanna-Tabor Evangelical Lutheran Church & Sch. v. E.E.O.C.*,
    565 U.S. 171 (2012) ........................................................ 4, 12

*In re Lubbock*,
    624 S.W.3d 506 (Tex. 2021) ............................................... 12

*Order of United Commercial Travelers of Am. v. Wolfe*,
    331 U.S. 586 (1947) ..................................................... 6, 7, 8

*Serbian E. Orthodox Diocese for the United States of Am. & Canada v. Milivojevich*,
    426 U.S. 696 (1976) ............................................................. 12

*State ex rel. Auto. Club Inter-Ins. Exch. v. Gaertner*,
    636 S.W.2d 68 (Mo. 1982) ..................................................... 4

*Sun Oil Co. v. Wortman*,
    486 U.S. 717 (1988) ................................................................. 7

*Supreme Council of Royal Arcanum v. Green*,
    237 U.S. 531 (1915) ................................................................. 6

*Tandon v. Newsom*,
    593 U.S. 61 (2021) .......................................................... 13, 14

## Statutes and Constitutional Provisions

Mo. Rev. Stat. § 355.001 ................................................................. 3, 8

Mo. Rev. Stat. § 355.211 ..................................................................... 10

Mo. Rev. Stat. § 355.236 ..................................................................... 11

Mo. Rev. Stat. § 355.416 ..................................................................... 11

Mo. Rev. Stat. § 355.426 ..................................................................... 11

Mo. Rev. Stat. § 355.561 ..................................................................... 11

Mo. Rev. Stat. § 355.582 ....................................................................... 7

Mo. Rev. Stat. § 355.611 ..................................................................... 11

Mo. Rev. Stat. § 355.676 ..................................................................... 11

Mo. Rev. Stat. § 355.726 ..................................................................... 11

Mo. Rev. Stat. § 355.846 ..................................................................... 11

Mo. Rev. Stat. § 355.881 ....................................................................... 8

Tex. Bus. Orgs. Code § 252.001 ...................................................... 8, 12

U.S. Const. Am. XIV, § 1 ................................................................... 13

## Rules

Fed. R. App. P. 26 ................................................................................. i

Fed. R. App. P. 29 ..................................................................... i, 1, 18

Fed. R. App. P. 32 ............................................................................. 18

Fifth Circuit Local Rule 28 .................................................................. i

## STATEMENT OF INTEREST AND INTRODUCTION

Missouri files this amicus brief as of right under Rule 29(a)(2) in support of Appellant the Lutheran Church – Missouri Synod (LCMS). LCMS has been incorporated under Missouri law since 1894.[1]  Missouri has a strong interest in courts recognizing entities organized under its laws as having their internal affairs governed by Missouri law.  Missouri also has a strong interest in maintaining laws that foster the ability of religious entities to organize themselves in ways that enable them to pursue their religious missions or activities.  The district court's order threatens this interest.

The decision below is a national outlier because the district court decided to implement its own understanding of how LCMS—a religious organization—is structured rather than accepting the religious organization's own interpretation of how it operates.  It is also troubling because it disregards the importance to Missouri of having organizational decisions of Missouri-incorporated entities respected.  The Court should speedily reverse the district court's decision.

---

[1] Missouri Secretary of State, *Missouri Online Business Filing*, https://bsd.sos.mo.gov/BusinessEntity/BusinessEntityDetail.aspx?ID=429768&page=beSearch

# ARGUMENT

This is not a case about just one church. This is a case about whether Missouri can protect church entities incorporated under its laws from being subjected to conflicting laws in as many states as they have a presence in. The answer to that question is yes.

The basic rule applied all across the United States is that a corporation's internal affairs are governed by only one set of laws—the law of the state of incorporation. In this case, the Church is subject to Missouri's laws because it chose to incorporate there. Respecting Missouri's right to protect the Church is required by the Full Faith and Credit Clause and the Commerce Clause. In fact, it is so fundamental that many states have embedded the requirement in their own statutes.

What happened in this case undermines that rule and imposes special disfavor on religious institutions. The district court's order causes a church—because it has a religious body and a civil body—to be subject to more than one set of laws governing its internal affairs. In fact, taken to its logical conclusion, it subjects a church's internal affairs to as many sets of laws as there are states in which that church has a presence. This treats churches worse than other nonprofits simply because they are

churches. It is also contrary to the whole purpose of Missouri's comprehensive statutory scheme governing nonprofits. The whole point of those statutes is to make sure that all Missouri nonprofits—including churches—are governed by Missouri corporate laws. *See* § 355.001 *et seq.*

The Church exercised its religious freedom by deciding to separate its civil law reflection—LCMS—from its wholly religious entity—the Synod. The Synod is a religious entity that owns no property and has no civil legal status. LCMS is a civil entity organized as a Missouri nonprofit that enters into contracts, owns property, and can sue and be sued. Despite case law preventing courts from getting involved in matters of church governance (including church structure), the district court decided that the Synod could and must be sued in order for this (and, by the court's reasoning, any) lawsuit to move forward. This violated the Church's ability to decide for itself that the Synod—its religious entity—does not interact with the civil legal system. It also undermines the stability of Missouri's laws allowing religious entities to organize to accomplish their missions.

For these four reasons—(1) Full Faith and Credit, (2) Commerce Clause, (3) First Amendment religious protections, and (4) Equal

Protection—and because the district court's holding adversely affects Missouri's ability to help create and regulate stable nonprofits, this Court should reverse.

## I.    Missouri law fosters religious activity by giving religious entities options to organize.

It is generally not the business of government how religious entities choose to organize. Those are ecclesiastical decisions reserved to the religious organizations themselves. *Hosanna-Tabor Evangelical Lutheran Church & Sch. v. E.E.O.C.*, 565 U.S. 171, 184 (2012). Yet because many religious entities cannot organize without legal vehicles to do so, Missouri and other States provide legal vehicles through which they can incorporate or associate.

This is especially necessary for entities in Missouri because, absent these laws, a religious entity would have "no legal entity distinct from its membership" and would be unable to access courts. *State ex rel. Auto. Club Inter-Ins. Exch. v. Gaertner*, 636 S.W.2d 68, 70 (Mo. 1982). Thus for religious entities in Missouri to do things like hold property, it is imperative that Missouri's laws about associations and organizations be respected and upheld.

Because of the diversity of ecclesiastical beliefs, religious entities organize themselves under the laws of the various States in many different ways. Some do not incorporate at all. Others incorporate to accomplish discrete religious functions. Some lodge corporate structure diffusely. Others centralize organizational authority.

The district court's decision undermines that interest by disregarding the way LCMS chose to organize under Missouri law. In effect, the district court's decision holds that a religious entity cannot sue because of its religion, despite Missouri laws designed to enable religious entities to organize as needed.

## II. The district court's ruling violates the Full Faith and Credit Clause and Commerce Clause by depriving the Church of the benefits of incorporating in Missouri.

By choosing to incorporate in Missouri, the Church chose its domicile and the rules that would apply to its internal governance. The district court's failure to respect the Church's choice wrongly deprives it of the benefits of those choices, with real-world effects like depriving it of a federal forum. The district court's incorrect decision also prevents Missouri from exclusively regulating the nonprofit entities its law allows to be created. This is a violation of the Full Faith and Credit Clause that

will lead to more trouble down the road if this Court does not stop the error in its tracks.

### A. By incorporating in Missouri, the Church chose the rules that would apply to its internal governance; Full Faith and Credit requires this choice be respected.

The Full Faith and Credit Clause of the U.S. Constitution requires that states respect that a corporation's internal affairs be governed by the state of incorporation. Organizations choose carefully the jurisdiction in which they incorporate, and rightly so. Texas law provides that "the law of the state or other jurisdiction in which" a foreign corporation is incorporated "governs the formation and internal affairs of the entity." Tex. Bus. Orgs. § 1.102. This is the case in all states because the Full Faith and Credit Clause "requires controlling effect to be given to the law of the state of incorporation in interpreting and determining the enforceability of the rights and obligations of members contained in the constitution and by-laws" of business entities. *See Order of United Commercial Travelers of Am. v. Wolfe*, 331 U.S. 586, 614 (1947). In fact, Full Faith and Credit requires this even when events surrounding the controversy occurred in the forum state, not the state of incorporation. *See id.* at 613 (citing *Supreme Council of the Royal Arcanum v. Green*,

237 U.S. 531 (1915)).  Because of this Full Faith and Credit requirement, Missouri unsurprisingly has a law similar to Texas's:  that a certificate permitting a foreign corporation to do business in Missouri "does not authorize [Missouri] to regulate the organization or internal affairs of [that] foreign corporation."  *See* Mo. Rev. Stat. § 351.582.3.

This deferral to the law of the state of incorporation about internal affairs is the once-comity that is now required by Full Faith and Credit. The Full Faith and Credit Clause "made conflicts [of law] principles enforceable as a matter of constitutional command rather than leaving enforcement to the vagaries of the forum's view of comity."  *See Sun Oil Co. v. Wortman*, 486 U.S. 717, 723 n.1 (1988); *see also Estin v. Estin*, 334 U.S. 541, 546 (1948) (stating that the Full Faith and Credit Clause "substituted a command for the earlier principles of comity and *thus* basically altered the status of the States as independent sovereigns").

Here, the district court's interpretation of Texas law runs afoul of the Full Faith and Credit Clause's requirement that "controlling effect … be given to the law of the state of incorporation" with respect to an entity's internal affairs.  *Wolfe*, 331 U.S. at 614.  The district court wrongly determined that the Synod in Texas was a Texas unincorporated

7

nonprofit, subjecting the Church to Texas laws in addition to Missouri laws. *Compare* Tex. Bus. Orgs. Code § 252.001 *et seq.* (governing unincorporated nonprofits) *with* Mo. Rev. Stat. § 355.001 *et seq.* (governing Missouri incorporated nonprofits). This fails to give the "requi[site] controlling effect … to the law of the state of incorporation" because Texas and Missouri have different laws. *See Wolfe*, 331 U.S. at 614; *compare* Tex. Bus. Orgs. Code §§ 252.001–.018 *with* Mo. Rev. Stat. §§ 355.001–.881.

Further, Texas's laws should be interpreted in a way that avoids constitutional problems, not in a way that creates them. *See EBS Solutions, Inc. v. Hegar*, 601 S.W.3d 744, 754 (Tex. 2020) ("[I]f a statute is susceptible to two interpretations—one constitutional and the other unconstitutional—then the constitutional interpretation will prevail."). For these reasons, this Court should reverse.

### B.    Holding that the Church is an unincorporated nonprofit in Texas when it chose to incorporate in Missouri is an interpretation that causes Texas law to violate the Commerce Clause.

States like Missouri have an "interest in promoting stable relationships among parties involved in the corporations [they] charter[], as well as in ensuring that investors in such corporations have an

effective voice in corporate affairs." *CTS Corp. v. Dynamics Corp. of Am.*, 481 U.S. 69, 91 (1987). An interpretation of state law creating an "impermissible risk of inconsistent regulation" of corporations' internal affairs "by different States" runs afoul of the Commerce Clause. *Id.* at 88–89. That is what happened here. The district court interpreted Texas law in a way subjecting the Church to two sets of state laws regarding its internal affairs: Texas and Missouri. If this ruling were extended, churches with congregations in every state could be subject to fifty sets of laws regarding their internal affairs. And when a corporation's internal affairs are subject to more than even one state's laws, this causes confusion and inaction because the church's internal actions could be at the same time lawful (under one state's laws) and unlawful (under another's). As the U.S. Supreme Court has noted, a rule like the one applied by the district court means "a corporation could be faced with conflicting demands." *See Atherton v. F.D.I.C.*, 519 U.S. 213, 224 (1997).

This Court should reverse the district court's interpretation of the Texas law because it creates a high risk of inconsistent regulation of a corporation's internal affairs, which violates the Commerce Clause and undermines Missouri's ability to use its laws to promote stable

organizations. *See CTS*, 481 U.S. at 88–89. Texas's laws should be interpreted to avoid constitutional problems. *EBS*, 601 S.W.3d at 754.

### III. The district court's ruling should be reversed because it violates the Church's First Amendment rights—something Missouri also has an interest in preserving.

Separately, the district court's ruling should be reversed because it violates the Church's First Amendment Rights—something Missouri and its statutes are interested in preserving. LCMS discusses its religious First Amendment right at length in its brief—the right of a church to decide how it operates—which relates to religious free exercise and preventing an establishment of religion. App. Br. 20. The district court's ruling infringes on the Church's First Amendment religious liberties by purporting to know better than the Church how it is run. App. Br. 20–35.

In this country, churches—not the government (including courts)—decide how they are run. App. Br. 22–23. Missouri's laws governing religious nonprofits reinforce this by implementing strong protections for religious entities. For instance, § 355.211.1 of the Missouri Revised Statutes exempts churches from requirement that members be terminated only by fair and reasonable procedure carried out in good

faith. Section 355.426.3(4) gives directors of religious nonprofits the freedom to rely on information from religious authorities in discharging their duties as director. Section 355.826.5 permits churches to exempt themselves in certain instances from the requirement that nonprofits allow members to inspect and copy records. And § 355.416.2 permits religious nonprofits to approve transactions despite conflicts of interest in certain circumstances.

Other Missouri laws exempting Missouri incorporated nonprofit churches from general incorporated nonprofit rules include treating incorporated churches as exempt from certain dissolution requirements, Mo. Rev. Stat. § 355.676.3, exempting churches from certain laws governing amendments to articles of incorporation, *id.* §§ 355.561.1(1), .611.1, allowing churches to exempt themselves from certain laws regarding financial statements, *id.* § 355.846, exempting them from certain laws requiring special meetings, *id.* § 355.236.1(2), and exempting them from laws permitting the attorney general to dissolve a corporation for misapplying or wasting corporate assets or being unable to carry out its purposes, *id.* § 355.726.1(1)(c)–(d). In short, Missouri

incorporated nonprofit churches have *all the rights* of secular incorporated nonprofits, but are subject to fewer state controls.

Missouri's nonprofit statute mirrors constitutional requirements, *see supra; Hosanna-Tabor*, 565 U.S. at 184, but the Texas statute applied below does not expressly include them, *see* Tex. Bus. Orgs. Code §§ 252.001–.018; *e.g., id.* §§ 252.010 (inspection and copying), .017(b) (applying chapters 1, 4, & 10). The Church's choice of polity is an "inherently ecclesiastical" decision, outside the realm of civil courts. *In re Lubbock*, 624 S.W.3d 506, 518 (Tex. 2021). The same is true regarding "internal organization" and whether the church has "compl[ied] with [its own] church laws and regulations." *Serbian E. Orthodox Diocese for the United States of Am. & Canada v. Milivojevich*, 426 U.S. 696, 713 (1976). Thus, as described in the Appellant's Brief, the district court violated the Church's First Amendment rights when it interpreted the church's internal governance documents, especially in a way that contradicted how the Church interpreted them. When the district court violated the Church's First Amendment rights to decide how it is governed, it also contravened Missouri law, which backs up those rights in statute in a way the Texas statute does not. This Court should reverse.

**IV.** **The district court's ruling should be reversed because it causes constitutional avoidance problems by treating churches differently than other nonprofits in violation of the Equal Protection Clause of the Fourteenth Amendment.**

Under the doctrine of constitutional avoidance, courts avoid interpreting statutes in a way that makes them unconstitutional. *EBS*, 601 S.W.3d at 754. The Church referenced constitutional avoidance in its brief, arguing that the district court's holding would raise a whole host of constitutional problems. Missouri is illustrating just one more of those problems here—violation of the Equal Protection Clause.

The district court's ruling should be reversed because it reads Texas law in a way that treats churches differently than other incorporated entities, in violation of the Equal Protection Clause of the Fourteenth Amendment. The Equal Protection Clause states: "No State shall … deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Am. XIV, § 1. Discrimination on the basis of religion— including treating religious entities differently than other entities— violates the Fourteenth Amendment and the First Amendment unless the discriminatory act satisfies strict scrutiny. *See Tandon v. Newsom*, 593 U.S. 61, 62–63 (2021).

Here, the district court's interpretation of the Texas law treats religious nonprofits differently—and specifically worse—than non-religious nonprofits without satisfying strict scrutiny. For churches (like the Church) that have a presence in many states and that differentiate between their civil entity and their religious body, their internal affairs could be subject to as many states' laws as there are states in which they have congregations. But the same would not be true for secular nonprofits with a presence in many states. While those secular nonprofits may have a presence in Texas, the district court would not treat them as Texas unincorporated nonprofits because they lack an ecclesiastical entity that does not interact with the civil law. In other words, the *only reason* for subjecting the foreign church nonprofit to another whole set of laws (and not the foreign secular nonprofit) is because the church is a religious entity. There is no compelling governmental interest in this. *Compare id.* And even if there were, this is not a narrowly tailored solution. *See id.* ("[N]arrow tailoring requires the government to show that measures less restrictive of the First Amendment activity could not address its interest."). Thus, this interpretation of Texas law fails strict scrutiny.

Similarly, the district court's interpretation of the Texas law deprives foreign religious nonprofits of a federal forum when it would not deprive foreign secular nonprofits of a federal forum, solely on the basis of religion. Again, there is no compelling governmental interest in doing this, and even if there were, this interpretation of the Texas law is not narrowly tailored to that compelling governmental interest. The district court's holding unconstitutionally treats Missouri foreign religious nonprofits worse than foreign secular nonprofits by subjecting Missouri foreign religious nonprofits to the laws of as many states as they are incorporated in and by depriving them of a federal forum. For these reasons, this Court should reverse.

## CONCLUSION

For the reasons stated above, the district court's decision undermines Missouri's interests in creating a stable set of rules governing nonprofits, including nonprofit churches. It also deprives Missouri nonprofit churches of a federal forum. This Court should reverse.

May 5, 2025                    Respectfully submitted,

                               **ANDREW T. BAILEY**,
                               Attorney General

                               Joshua M. Divine, 69875MO
                                 *Solicitor General*

                               /s/ *Maria A. Lanahan*
                               Maria A. Lanahan, 65956MO
                                 *Principal Deputy Solicitor General*
                               Office of the Attorney General
                               815 Olive Street, Suite 200
                               St. Louis, MO 63101
                               Phone: (314) 340-4978
                               Josh.Divine@ago.mo.gov
                               Maria.Lanahan@ago.mo.gov

                               *Counsel for Amicus Curiae*

17

## CERTIFICATE OF SERVICE

I, Maria A. Lanahan, hereby certify that the foregoing brief has been filed with the Clerk of Court using the Court's electronic filing system, which sent notification of such filing to all counsel of record.

Dated: May 5, 2025                    */s/ Maria A. Lanahan*
                                       Maria A. Lanahan
                                       *Counsel for Amicus Curiae*

## CERTIFICATE OF COMPLIANCE

This brief complies with the word limitations of Fed. R. App. P. 29(a)(5) and 32(a)(7)(B)(i) because, excluding the parts of the document exempted by Fed. R. App. P. 32, it contains 2,927 words. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in proportionally spaced typeface, including serifs, using Microsoft Word 2016, in Century Schoolbook 14-point font.

Dated: May 5, 2025                    */s/ Maria A. Lanahan*
                                       Maria A. Lanahan
                                       *Counsel for Amicus Curiae*